# United States Court of Appeals
# for the Federal Circuit

REALTIME TRACKER, INC.,

Plaintiff-Appellant,

v.

RELX, INC.,

Defendant-Appellee.

*Appeal from the United States District Court for the
Southern District of New York Case No. 1:21-cv-8815,
Judge Paul A. Engelmayer.*

**OPENING BRIEF FOR PLAINTIFF-APPELLANT**

ROBERT K. GOETHALS
LEICHTMAN LAW PLLC
185 Madison Avenue, 15th Floor
New York, New York 10016
(212) 419-5210
rgoethals@leichtmanlaw.com

*Counsel for the Plaintiff-Appellant*

# CERTIFICATE OF INTEREST

Counsel for Appellant certifies that the following information in compliance with Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rules 26.1 and 47.4:

1. The full name of every party represented by us is:  **Realtime Tracker, Inc.**

2. The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by us is:  **None.**

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the following:

   Realtime Tracker, Inc.:  **None.**

4. The names of all law firms and the partners and associates that appeared for Realtime Tracker before the United States District Court or are expected to appear in this Court are:

   Robert K. Goethals
   David Leichtman
   Leichtman Law PLLC
   185 Madison Avenue, 15th Floor
   New York, NY  10016

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  See Fed. Cir. R. 47.4(a)(5) and 47.5(b):  **None.**

June 30, 2023                                    /s/  *Robert K. Goethals*
                                                          Robert K. Goethals

                                                *Counsel for Plaintiff-Appellant*
                                                *Realtime Tracker, Inc.*

# TABLE OF CONTENTS

**Page Nos.**

I.    STATEMENT OF RELATED CASES............................................................1

II.   JURISDICTIONAL STATEMENT..................................................2

III.  STATEMENT OF THE ISSUES ....................................................3

    A.    Whether the District Court erred in determining at the
        Rule 12(b)(6) stage that the asserted claims of U.S. Patent No.
        8,229,810 ("the '810 patent") are directed to patent ineligible
        subject matter under 35 U.S.C. § 101 where the First Amended
        Complaint contained plausible factual allegations that the claims
        are directed to specific asserted improvements in computer
        capabilities and not to an abstract idea...................................................3

    B.    Whether the District Court erred in dismissing Plaintiff-Appellant's
        First Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6)
        where the Court ignored the allegations in the First Amended
        Complaint which specifically pled the inventive concepts of the
        claimed inventions, when finding the asserted claims of the
        '810 patent are drawn to patent ineligible subject matter under
        35 U.S.C. § 101. ...................................................................................3

    C.    Whether the District Court erred in dismissing Plaintiff-Appellant's
        First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) by
        failing to accept all the plausible factual allegations in the First
        Amended Complaint as true and in failing to construe them in the
        light most favorable to Plaintiff-Appellant when finding the asserted
        claims of the '810 patent are drawn to patent ineligible subject matter
        under 35 U.S.C. § 101. .........................................................................3

    D.    Whether the District Court erred in dismissing Plaintiff-Appellant's
        First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6)
        by ignoring the plausible factual allegations contained in the First
        Amended Complaint which asserted inventive concepts, and in
        failing to accept those allegations as true and draw all reasonable

inferences in favor of Plaintiff-Appellant, as settled law requires, in finding the asserted claims of the '810 patent are drawn to patent ineligible subject matter under 35 U.S.C. § 101. ...................................3

E.    Whether the District Court erred in dismissing Plaintiff-Appellant's First Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) by only considering asserted Claim 29 of the '810 patent and not the remaining asserted claims, and their additional grounds of patentability, when finding the asserted claims of the '810 patent are drawn to patent ineligible subject matter under 35 U.S.C. § 101. ........4

IV.    STATEMENT OF THE CASE ......................................................5

A.    Procedural History...............................................................5

B.    The Claimed Inventions Of The '810 Patent ......................6

1.    Summary Of The Inventions.......................................6

2.    The Problems Encountered By Service Professionals And The Deficiencies Of The Prior Art.....................9

3.    The Problems Solved By The Claimed Inventions Of The '810 Patent.................................12

4.    The Detailed Description Of The Claimed Inventions Of The '810 Patent.................................13

5.    The Asserted Claims .................................................18

6.    The Notice Of Allowance And The Examiner's Findings Regarding The Patentability Of The Claimed Inventions ........22

C.    The Novel Invention And Inventive Concept Allegations Of The First Amended Complaint.......................................24

V.    SUMMARY OF THE ARGUMENT ..............................................26

VI.    ARGUMENT..............................................................................29

A.      Standard of Review. ...........................................................................29

B.      The District Court erred by failing to accept as true the plausible factual allegations in the First Amended Complaint that the invention in the '810 patent was directed to a specific improvement to computer technology capability under *Alice* step one..........................................30

C.      The District Court also erred by failing to accept as true the plausible factual allegations in the First Amended Complaint that the invention in the '810 Patent contains an inventive concept...............................48

D.      The District Court erred in its findings under both Alice step one and Alice step two by failing to consider all the asserted independent and dependent claims of the '810 Patent. ..................................................52

VII.  CONCLUSION AND RELIEF SOUGHT .....................................................53

iv

# TABLE OF AUTHORITIES

**Page Nos.**

**Cases**

*Aatrix Software Inc. v. Green Shades Software Inc.*,
  882 F.3d 1121 (Fed. Cir. 2016) .............................................. 29, 30, 31

*Aatrix Software Inc. v. Green Shades Software Inc.*,
  890 F.3d 1354 (Fed. Cir. 2018) ........................................ 31

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) .................................................................32

*CardioNet, LLC v. InfoBionic, Inc.*,
  955 F.3d 1358 .............................................. 33, 35, 40, 43, 44, 47, 53

*Coop Entertainment, Inc. v. Kollective Tech. Inc.*,
  50 F. 4th 127 (Fed. Cir. 2022) ................................................. 29, 30, 48

*Core Wireless Licensing v. LG Elec. Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018) .......................................... 32, 34, 39, 44, 46, 47

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (2016) ................................... 32, 33, 34, 39, 42, 43, 44, 46, 47, 48

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ......................................................47

*McRO Inc. v. Bandai Namco Games Am Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ................................................. 32, 33, 35, 44, 48

*Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. SCC.*,
  568 F.3d 374 (2d. Cir. 2009) .................................................................29

*Realtime Data, LLC v. Reduxio Sys.*,
  831 Fed. App. 492 (Fed. Cir. 2020) ................................................53

*Visual Memory v. NVIDIA*,
  867 F.3d 1253, 1260 (Fed. Cir. 2017) ....................................... 35, 39

**Statutes**

28 U.S.C. § 1331 .................................................................2

28 U.S.C. § 1338 .................................................................2

28 U.S.C. § 1295 .................................................................2

35 U.S.C. § 101 ................................................... 2, 3, 4, 5, 26, 30, 32, 36, 40

v

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................... 2, 3, 4, 5, 6, 29, 40

## I.    **STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Rules 28(a)(4) and 47.5, counsel for Plaintiff-Appellant Realtime Tracker, Inc. ("Realtime") states:  (a) No other appeal in or from the same civil action in the trial court was previously before this or any other appellate court; and (b) no other case known to counsel to be pending in this or any other court will directly affect or be directly affected by this Court's decision in this appeal.

## II.    <u>JURISDICTIONAL STATEMENT</u>

This action arose under the patent laws of the United States, 35 U.S.C. §101 et seq.  Thus, the district court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a). This Court has jurisdiction pursuant to 28 U.S.C. §1295.  Realtime seeks review of the district court's March 7, 2023 Final Order and Judgment dismissing Realtime's First Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), based on a determination of ineligible subject matter pursuant to 35 U.S.C. §101.  Realtime filed its notice of appeal on April 3, 2023.

## III.  STATEMENT OF THE ISSUES

**A.**     Whether the District Court erred in determining at the Rule 12(b)(6) stage that the asserted claims of U.S. Patent No. 8,229,810 ("the '810 patent") are directed to patent ineligible subject matter under 35 U.S.C. § 101 where the First Amended Complaint contained plausible factual allegations that the claims are directed to specific asserted improvements in computer capabilities and not to an abstract idea.

**B.**     Whether the District Court erred in dismissing Plaintiff-Appellant's First Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) where the Court ignored the allegations in the First Amended Complaint which specifically pled the inventive concepts of the claimed inventions, when finding the asserted claims of the '810 patent are drawn to patent ineligible subject matter under 35 U.S.C. § 101.

**C.**     Whether the District Court erred in dismissing Plaintiff-Appellant's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) by failing to accept all the plausible factual allegations in the First Amended Complaint as true and in failing to construe them in the light most favorable to Plaintiff-Appellant when finding the asserted claims of the '810 patent are drawn to patent ineligible subject matter under 35 U.S.C. § 101.

**D.**     Whether the District Court erred in dismissing Plaintiff-Appellant's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) by ignoring the

plausible factual allegations contained in the First Amended Complaint which asserted inventive concepts, and in failing to accept those allegations as true and draw all reasonable inferences in favor of Plaintiff-Appellant, as settled law requires, in finding the asserted claims of the '810 patent are drawn to patent ineligible subject matter under 35 U.S.C. § 101.

**E.** Whether the District Court erred in dismissing Plaintiff-Appellant's First Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) by only considering asserted Claim 29 of the '810 patent and not the remaining asserted claims, and their additional grounds of patentability, when finding the asserted claims of the '810 patent are drawn to patent ineligible subject matter under 35 U.S.C. § 101.

## IV. <u>STATEMENT OF THE CASE</u>

### A.  Procedural History

On November 2, 2021, Plaintiff-Appellant Realtime sued Defendant-Appellee RELX, Inc. d/b/a LexisNexis ("RELX") for infringement of at least independent Claims 1 (and its dependent Claims 2-8, 32), 18 (and its dependent Claims 19-24), 26 (and its dependent Claims 33 and 35), 28 (and its dependent Claim 37), 29 (and its dependent Claims 34 and 38) and 31(and its dependent Claim 40) of the '810 patent.  Appx56, Appx64.  On March 28, 2022, RELX filed a motion to dismiss the Complaint under Fed. R. Civ. Pro. 12(b)(6).  Appx106.  On March 29, 2022, the District Court entered an order that if Realtime chooses to amend its Complaint it must file an Amended Complaint by April 18, 2022.  Appx137.  On April 18, 2022, Realtime filed its First Amended Complaint for patent infringement alleging infringement of  at least independent Claims 1 (and its dependent Claims 2-8, 32), 18 (and its dependent Claims 18-24), 26 (and its dependent Claims 33 and 35), 28 (and its dependent Claim 37), 29 (and its dependent Claims 34 and 38) and 31(and its dependent Claim 40) of the '810 patent.  Appx139, 153, 158.

On May 9, 2022, RELX again filed a motion to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for patent infringement based on non-infringement and based on ineligible patent subject matter under 35 U.S.C. §101.  Appx196.  Realtime was not provided any further

5

opportunity to amend its complaint and thus filed its opposition to RELX's motion to dismiss the First Amended Complaint on May 30, 2022. Appx137, 232. No oral argument was granted and the District Court issued its Opinion and Order dismissing the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on March 7, 2023 ("March 7 Order"). Appx1. In the March 7 Order, the district court granted RELX's 12(b)(6) Motion holding the '810 patent invalid as lacking patent eligible subject matter and declined to reach the issue of whether the First Amended Complaint sufficiently alleged infringement. Appx37. The district court entered its final judgment on March 7, 2023. Realtime appeals from the district court's March 7, 2023 Order and Final Judgment.

### B.     The Claimed Inventions Of The '810 Patent

#### 1.     <u>Summary Of The Inventions</u>

The inventors of the '810 patent are practicing attorneys, and have been members in good standing of the bar in New York for 30 years. Appx141, ¶9. They recognized in 2004 that practitioners were not capturing their daily billable time on a task-by-task contemporaneous real time basis, along with the burdens and pressures of being required to account accurately and in detail and document their daily client obligations and legal tasks. Appx145, ¶16. This resulted in the inability to accurately and precisely account for time spent on a client's legal tasks and the loss of significant time spent, never to be captured. Appx179,1:35-52. In addition,

client's expected detail and backup and proof for all time spent yet there wasn't a means to automatically track all time spent by specific individual, contemporaneously with the task performed on real time. *Id.* The inventors endeavored to discover and create a solution to the myriad of problems faced by practicing professionals and to remedy the lack of an existing solution in the industry. Appx145, ¶16. The '810 patent is directed to a computer method, system and apparatus for generating and tracking time expended by service professionals in providing services to their clients on a realtime basis, on a document- by- document, service-by-service and telephone call-by-telephone call basis, including while the individual performs multiple, in seriatim or simultaneous tasks, tracked by personal code and client identifier for purposes of generating a daily billing report for an individual service-related professional. Appx293, 2:35-59.

The manner in which the claimed inventions may generate, track and record time is through the use of software that generates a timekeeper entry box on the computer screen used by the professional for each task, document, email, telephone call, research session or other service conducted or worked on by the service professional. Appx293, 2:26-30. The timekeeper entry box may include a field of entry for pertinent data points about the documents and tasks performed by the individual. Appx293, 2:35-38.

The information or data points included in the timekeeper entry box may either be extracted whereby the computer automatically extracts the information from the task, document, email, telephone call, research session or other service being performed by the professional or can be input by the professional into the timekeeper entry box as he or she is performing the task, document, email, research session or other service. Appx293, 2:35-46. The realtime time computation feature of the timekeeper entry box will automatically start upon creation of a task, document, email, telephone call, research session or other service (Appx293, 2:58-61), and will end upon closing of the document, upon sending or closing the email, ending the telephone call, research session or other service. Appx293, 2:62-65. The timekeeper entry box may also include command buttons which the billing professional can use to control the automatic time computation function including starting and ending the automatic timer and buttons to pause, erase, end, maximize and minimize. Appx293-294, 2:66-3: 5-12. The software of the invention enables the computer to generate a daily report based on the billable services performed by the attorney. Appx294, 3:15-18. The report that is generated is specific to the attorney's billable services for that date and compiles all information stored from the timekeeper entry boxes generated on that date. Appx294, 3:18-24.

## 2.    The Problems Encountered By Service Professionals And The Deficiencies Of The Prior Art

The '810 patent explains that, at the time of the invention, ". . .virtually one hundred percent of the documents that are generated and stored in professional offices are computer generated." Appx293, 1:25-27. As explained by the '810 Patent, service professionals bill time to clients by recording and billing each professional's time spent working on the client's projects or legal work by a specific individual's hourly billing rate. Appx293, 1:29-34. "Moreover, in an increasingly cost conscious environment, clients have justifiably mandated strict guidelines and specific support for all time billed down to the minute." Appx293, 1:35-37. "This has increased the burden on professionals such as attorneys to keep a running track record of every hour, every minute, of their billable time and to provide adequate justification for such billable time on a daily basis." Appx293, 1:37-41. "The patent explains that "[m]any attorneys and other billing professionals do not record time expended for rendering professional services contemporaneous with the task or service performed." Appx293, 1:41-44. "This results in time being lost and never billed due to the inability to remember the task performed or the amount of time spent in performing the task. Appx293, 1:44-46. "The absence of a computer system which monitors billable time for every document generated and/or task undertaken during the course of a given day contemporaneous with the service being performed has proven to be an insurmountable burden for many professionals who

have a difficult time administratively logging their time on a daily basis." Appx293, 1:46-52.

In light of these problems and burdens, the '810 patent described the need for the claimed inventions. "The need for a realtime computer generated time and billing system for the individual professional is thus essential in today's working environment." Appx293, 1:27-29. "This is particularly true for attorneys and other service-related professionals who bill clients based on an hourly rate for time spent on a particular matter where hourly rates vary for each professional, and thus, it is essential to bill each professional's time on an individual basis." Appx293, 1:29-34.

The '810 patent recognized that while there were attempts in the prior art "to improve time and billing systems, none addressed the need for a timekeeping tracking computer system, method and apparatus on a document- by- document, task-by-task, realtime basis for the purpose of generating a daily billing report for an individual service-related professional." Appx293, 1:53-59. The '810 patent explains why the claimed inventions solved existing problems in the industry not even addressed by the existing prior art. Appx293, 1:52-2:1-18.

The '810 patent discusses the '742 patent which was directed to portable time and expense logging with an input recognizer such as speech recognizer or handwriting recognizer for professionals who cannot type or are unable to use a computer. Appx293, 1:59-67. The '810 patent further discusses the '128 patent

directed to an internet-based litigation management system that allows third parties to monitor the progress and expense of litigation. Appx293, 2:1-7. Additionally, the '810 patent addresses the '989 patent which is addressed to tracking time for cost budgeting. Appx293, 2:8-18. For each of these prior art references, the '810 patent describes how they are not directed to and do not address the problems in the industry and the need for tracking of billable time for an individual professional on a document by document, task by task, real time basis by individual professional. Appx293, 1:52-2:1-18.

In summary, the '810 patent identified at least the following problems in the industry to which the claimed inventions are directed:

(i)     The lack of and need for a reliable, workable and accurate method, system and apparatus to record and capture a professional's daily time spent on a task- y-task basis during a day calculated contemporaneously in real time and tracked for each professional by personal code and client identified on a task-by-task basis.

(ii)     The lack of and need for a reliable, workable and accurate method, system and apparatus to record and capture a professional's daily time spent by task during a day calculated contemporaneously in real time captured *in seriatim* as the professional progresses from spending time drafting a document on one client matter, to drafting an email on another client matter, to reviewing and editing an email on still another client matter to receiving and participating on a telephone or

videoconference on still another client matter, all time tracked in real time for each professional by personal code and client identifier on a task-by-task basis.

(iii)    The lack of and need for a reliable, workable and accurate method, system and apparatus to record and capture a professional's daily time spent on a task-by-task basis during a day calculated contemporaneously in real time for simultaneous tasks being performed such as drafting an email on one client matter, editing a document on another client matter, performing an internet search or legal research on still another client matter and speaking to a client or colleague on the telephone or by videoconference on yet another client matter, all time tracked in realtime for each professional by personal code and client identifier on a task-by-task basis.

Appx293.

The claimed inventions of the '810 patent solved each of the above problems in the prior art.

### 3.    The Problems Solved By The Claimed Inventions Of The '810 Patent

The claimed inventions of the '810 patent solved at least the following problems not addressed by the prior art as shown below:

(i)    The recording of a professional's daily time calculated contemporaneously in real time on a task-by-task basis, *i.e.*, document- by document, service-by-service or telephone call-by-telephone call, by personal code

and client identifier;

(ii)    The recording of a professional's daily time calculated contemporaneously in realtime on a task-by-task basis via a timekeeper entry box for each task that automatically tracks time from when the claimed invention detects initiation of the task, *i.e.*, opening of a document or commencement of a service or telephone call, to completion of the task, by personal code and client identifier; and

(iii)    The real time recording of a professional's daily time for each and every task performed by the professional *in seriatim* or simultaneously, tracked by a timekeeper entry box including a personal code and client identifier generated for each task.

Appx293.

### 4.    The Detailed Description Of The Claimed Inventions Of The '810 Patent

As the '810 patent explains, "In one embodiment the present invention may be implemented in software as an application program tangibly embodied on a program storage device." Appx294, 4:40-43. "The application program may be uploaded to and executed by a computer device comprising any suitable architecture such as shown in Figure 1." Appx294, 43-45. FIGURE 3 is an embodiment of the Timekeeper Entry Box™ of the claimed inventions "generated by the software program of the invention for interfacing with an Internet-based document, here e-mail generated by a professional." Appx295, 5:61-64. The Timekeeper Entry

13

Box™ "is generated contemporaneous with the professional's generation of e-mail,"

and in this embodiment, "requires a professional to enter Client Identifier and

Personal Code." Appx295, 5:64-6:1. The Timekeeper Entry Box™ automatically

generates start time, end time and total time. Appx295, 6:1-3.

Figure 3 is shown below:



FIG. 3

Appx285.

FIGURE 4 is an embodiment of a Timekeeper Entry Box™ generated

contemporaneously with a professional's opening of a Microsoft Word® LAN-based

document. Appx296, 7:1-3; Appx286. FIGURE 5 is another embodiment of the

timekeeper entry box which can accept user input of data points and can

automatically extract data points from the document itself. Appx296, 7:9-17;

Appx287. FIGURES 6 and 7 are further embodiments of the timekeeper entry box

that automatically extract information from the document, service, telephone call or

task. Appx296, 7:52-59. As explained in the '810 patent:

> FIGS. 6 and 7 are further embodiments of the
> Timekeeper Entry Box™. The Timekeeper Entry Box™
> can be configured to require a professional's input of
> information in each of the fields contained therein,
> automatically extract information relating to a document,
> session or task for incorporation into the box and/or
> require a professional's input for certain information and
> automatically extract other information for incorporation
> in the box.

*Id*.

FIGURE 8, reproduced below, is an exemplary embodiment of the

flow scheme of the invention:



FIG. 8

Appx296, 8:9-10; Appx290.

FIGURE 9, reproduced below, is an exemplary embodiment of the claimed inventions generating timekeeper entry boxes for multiple tasks performed simultaneously be a professional, including an email, new LAN document, editing an existing LAN document, research session and telephone call and how the invention extracts information from each task:

16



FIG. 9

Appx296, 8:57-9:29; Appx291.

17

### 5.    **The Asserted Claims**

All of the asserted claims of the '810 patent are directed to automatically tracking billable time for an individual using a computer generated timekeeper entry box by personal code and client identifier on a document-by-document, service-by-service or telephone call-by-telephone call basis in real time.  The asserted claims can be categorized as follows:

- Asserted method claims (independent Claim 1 and dependent Claims 2-8, 32) and computer readable medium claims (independent Claim 18 and dependent Claims 19-24) for tracking in realtime on a document-by-document basis;

- Asserted method claims (independent Claim 26 and dependent Claims 33 and 35) and computer readable medium claims (independent Claim 28 and dependent Claim 37) for tracking in realtime on a service-by-service basis; and

- Asserted method claims (independent Claim 29 and dependent Claims 34 and 38) and computer readable medium claims (independent Claim 31 and dependent Claim 40) for tracking in realtime on a telephone call-by-telephone call basis.

Appx297-298.

Each of the asserted claims recites a specific, structured front end user interface, i.e., "an individual timekeeper entry box" generated by the computer for entry of at least a personal code and client identifier, and back end computer processing for automatically "detecting initiation of" a task, "generating" the timekeeper entry box and "contemporaneously tracks time associated with the personal code and client identifier" for the task on a task-by-task basis. *Id*. For example, *see* the claims reproduced below:

> 1.     A method for individual real time billable timekeeping using a computer program for:  detecting, opening of at least one document; and generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one document wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier said document is in use to track time for an individual by client on a document by document basis.
>
> * * * *
>
> 2.     The method of claim 1, wherein said individual time keeper entry box includes said personal code.
>
> 3.     The method of claim 1, further comprising receiving at least one of a document type, an author identifier, a recipient identifier and a subject description for entry within said individual timekeeper entry box.
>
> 4.     The method claim 1, wherein said individual timekeeper entry box includes at least one of the following functions: pause, end, erase, minimize, maximize and favorites.
>
> 5.     The method, of claim 1, further comprising

storing information obtained from said individual timekeeper entry box.

6.    The method of claim 1, further comprising integrating information obtained from said individual timekeeper entry box into an accounting and billing system.

7.    The method of claim 1, further comprising displaying at least one of a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a recipient identifier, and a subject description within said individual timekeeper entry box.

8.    The method of claim 1, further comprising displaying a running clock within said individual timekeeper entry box.

* * * *

20.    The computer readable medium of claim 18, further comprising code for receiving at least one of a document type, an author identifier, a recipient identifier and a subject description for entry within said individual timekeeper entry box.

* * * *

23.    The computer readable medium of claim 18, further comprising code for displaying at least one of a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a recipient identifier, and a subject description within said individual timekeeper entry box.

* * * *

26.    A method for individual real time billable timekeeping using a computer, comprising a computer

program for: detecting initiation of at least one client service; and generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one client-service wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said client-service to track time for an individual by client on a client-service by client-service basis using a computer.

* * * *

32.    The method of claim 1, further comprising simultaneously tracking time for said individual on said at least one document and at least one of a client-service and a telephone call.

33.    The method of claim 26, further comprising simultaneously tracking time for said individual on said at least one client-service and at least one of a document and a telephone call.

34.    The method of claim 29, further comprising simultaneously tracking time for said individual on said at least one telephone call and at least one of a document and a client service.

Appx297-299.

As shown above, the dependent claims also include at least the following further improvements wherein the claimed inventions: (i) extract information from the document including "document type, an author identifier, a recipient identifier and a subject description for entry within said individual timekeeper entry box" (dependent Claims 3 and 20); (ii) display "a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a

recipient identifier, and a subject description within said individual timekeeper entry box" (dependent Claims 7 and 23); (iii) display a "running clock within said individual timekeeper entry box" (dependent claims 8 and 24); (iv) integrate "information obtained from said individual timekeeper entry box into an accounting and billing system" (dependent claim 6). Dependent Claims 32, 33 and 34 further require "simultaneously tracking time" for at least one document, client-service and/or telephone call.

Appx297-299.

### 6. The Notice Of Allowance And The Examiner's Findings Regarding The Patentability Of The Claimed Inventions

The FAC alleged that the '810 Patent issued after a thorough and assiduous prosecution during which the Examiner hired an independent contractor to conduct a thorough prior art search. Appx143, ¶13; Appx681-766. The Examiner's stated Reasons for Allowance of the '810 Patent claims are:

> The most remarkable prior art of record are Goykhman (U.S. Patent Publication No. 2002/0174134), Collado (U.S. Patent Publication No. 2002/0069145), Eisenberg (U.S. Patent Publication No. 2003/0069815) and Katz (U.S. Patent Publication No. 5,963,912).
>
> Goykhman is not directed to using a computer to automatically track an individual's task-by-task timekeeping associated with a personal code. Goykhman does not disclose an individual timekeeper entry box which includes a personal code and contemporaneously tracks time associated with the personal code that a document, service or telephone call is in use or in

session.  Instead, Goykhman is directed to monitoring time by selected activity, not by individual.

Collado simply discloses a 'user interface' for entry of information in a timecard and a 'calendar system' enabling a user to enter 'appointment data specifying the data and start/end time for each appointment entry, as well as descriptive information regarding the appointment.'  This teaches away from the invention because the entry in the invention is done automatically in the system.

None of the prior art of record remedies the deficiencies found in Goykhman, Collado, Eisenberg or Katz. Furthermore, neither the prior art, the nature of the problem, nor knowledge of a person of ordinary skill in the art, provide any reasonable rationale to combine prior art teachings.

Appx188-189.

The First Amended Complaint ("FAC") alleged that the novel front end/back end computer system, operation and function of the claimed invention of the '810 Patent were a basis for allowance of the claims.  Appx143, ¶13.  The FAC further alleged that the Examiner's Reasons for Allowance distinguished "the most remarkable prior art of record" on the following grounds, *inter alia*: 1. Goykhman (2002/0174134) is directed to automatically tracking time but "does not disclose an individual timekeeper entry box which includes a personal code" (the front end user interactive timekeeper entry box); and 2. Collado et al. (2002/0069145) "teaches away from the invention because the entry in the invention is done automatically by the system" (the back end automatic processing).  *Id.*  The FAC alleged that the

Examiner also distinguished Goykhman as "directed to monitoring time by selected activity, not by individual," compared to the claimed inventions which provide that an individual's time can be tracked *in seriatim* or by simultaneous multitasking (*see* '810 FIG. 9, below) on more than one document, service and/or telephone call at a time.  Appx143, ¶13.

### C.    The Novel Invention And Inventive Concept Allegations Of The First Amended Complaint

The First Amended Complaint ("FAC") asserted that RELX infringes at least Claims 1-8, 18-24, 28-29, 31-35, 37-38 and 40 of the '810 Patent.  Appx158, ¶40. Exemplary claim charts for Claims 29 and 31 were alleged in the FAC comparing each claim element with RELX's infringing Juris® Suite Timer.  Appx153-156, ¶31.

The FAC described in detail the inventions claimed in the '810 Patent and set out the claims of the '810 Patent in detail.  Appx141-148, ¶¶11-23.  The FAC also attached the '810 Patent as an Exhibit.  Appx168.  Further, the FAC attached the Examiner's Stated Reasons for Allowance of the claims of the '810 Patent as an Exhibit.  Appx188-189.  In particular, the allegations of the FAC highlighted the novel technological improvements to computer functionality and the inventive concepts of the asserted claims of the '810 Patent.  Appx141-148, ¶¶11-23.

The FAC also particularly alleged:

12.    The claimed invention of the '810 Patent comprises a novel computer system, operation and function comprising a specific, structured front end user interface, i.e., a realtime billable timekeeper entry box generated by the computer for entry of at least a personal code and client identifier, and back end computer processing to automatically detect, time and record billable time for an individual on a task by task basis. The claimed invention further includes a plurality of timekeeper entry embodiments, including, for example, user interaction with respect to generation of a timekeeper entry box, detection and control of the automatic timer on a task by task basis, including in seriatim multi-tasking or simultaneous multi-tasking of, for example, emails, LAN documents, research sessions and telephone calls for one or more clients. The software of the computer implemented method and computer readable medium claims require a specific, structured front end user interface combined with a backend computer processing functionality that employs a significant improvement to the capability of the computer system as a whole and resolves a specifically identified problem in the prior state of the art.

Appx142-143, ¶12.

The FAC also alleged in detail the Patent Examiner's reasons for allowing the claims of the '810 Patent wherein the Examiner explained the problems identified in the prior art and the reasons the claimed inventions of the '810 patent solved those problems as well as a detailed description of the deficiencies in the prior art an how the inventions in the '810 patent provided a technological improvement over that prior art. *See* Appx143-145 at ¶¶13-15. The FAC also alleged the problems encountered in the industry and the solutions provided to solve these problems by

the claimed inventions of the '810 Patent. *See* Appx145-148, ¶¶16-22. These

detailed paragraphs were then summed up in Paragraph 23 of the FAC:

> 23.    Thus, the claimed front end user interactive
> realtime billable timekeeper entry box generated by the
> computer for entry of at least a personal code and client
> identifier and back end computer processing to
> automatically detect, time and record billable time for an
> individual on a task by task basis is a novel computer
> system providing significant technological improvements
> in computer functionality and operation over the prior
> art.  Such realtime billable timekeeping on a task by task
> basis in seriatim and by simultaneous multitasking for a
> single client or multiple clients could not be performed
> by a single individual or by numerous individuals in a
> professional workplace environment in the absence of the
> claimed invention.  Moreover, the claimed invention
> ensures the integrity, authenticity and accuracy of an
> individual professional's or numerous professionals'
> task/service timekeeper entries on a realtime basis.

Appx148. ¶23.

## V.    SUMMARY OF THE ARGUMENT

The district court erred in dismissing the Plaintiff-Appellant's First Amended

Complaint at the Rule 12(b)(6) stage on the basis that the '810 Patent was not

directed to eligible subject matter under 35 U.S.C. § 101 . The district court failed to

accept as true the plausible factual allegations in the FAC that the claimed

inventions of the '810 Patent were directed to specific technological improvements

to computer systems and capabilities.  The FAC set out in detail the claimed

technological improvement to computer capabilities based on the claim language of

the '810 Patent, the prior art deficiencies and the industry problems remedied by the inventions in the '810 Patent as well as the Examiner's statements of reasons for allowance over the prior art. The FAC contained plausible factual allegations that the claimed inventions of the '810 Patent improved the functioning of computers and the data processing system with a novel software invention that improved the technological capability of computers. There was nothing in the intrinsic record to refute these allegations, and in fact, the intrinsic record supports and bolsters the plausible factual allegations of patent eligibility in the FAC under *Alice* step one. In the face of this record, the district court ignored these plausible factual allegations and instead made factual determinations adverse to Plaintiff-Appellant, that were contrary to the FAC's detailed facts and the intrinsic record.

The district court further erred in its Alice step one determination by relying on its own overgeneralized summary of the claimed inventions untethered to the novel inventive concepts recited in the claim language: (1) a front end user interface, i.e., "an individual timekeeper entry box including an entry of a personal code and a second entry for a client identifier;" (2) back end computer processing for automatically "detecting initiation" of a task," "generating" the timekeeper entry box and "contemporaneously tracks time associate with said personal code and said client identifier;" (3) on task-by-task basis, i.e., "document by document," "service by service" or "telephone call by telephone call;" (4) while automatically extracting

data from each document, service or telephone call, such as "document type, an author identifier, a recipient identifier and a subject description for entry within the individual timekeeper entry box;" and (5) for in seriatim or "simultaneous" multitasking. The district court never analyzed the claimed inventions on a claim element by element basis, improperly limited its claim analysis to one claim that the district court labeled "representative" without addressing the patentability of all 26 asserted claims and ignored the USPTO Examiner's statement of reasons for allowance that explained the reasons the foregoing inventive concepts were patentable over the closest prior art and any combination of the prior art as a whole after the Examiner authorized a thorough independent third party STIC prior art search, all of which is pleaded in the First Amended Complaint.

The district court also erred by making factual determinations adverse to Plaintiff-Appellant in determining whether the '810 Patent claimed any inventive concepts. Contrary to the factual allegations of inventive concepts alleged in the FAC, and contained in the intrinsic record, the district court erroneously determined that the claims in the '810 Patent are well understood, routine, conventional activities known to the industry. This is a question of fact and clear error at the 12(b)(6) stage, in the face of the overwhelming facts alleged in the FAC and intrinsic record to the contrary. Furthermore, the district court erred in performing

both steps of the *Alice* inquiry by failing to consider and analyze all of the independent and dependent claims in the '810 Patent asserted by Plaintiff-Appellant.

## VI.    ARGUMENT

### A.    Standard of Review

This Court reviews the district court's dismissal under Rule 12(b)(6) for failure to state a claim under the law of the regional circuit. *Aatrix Software Inc. v. Green Shades Software Inc.* 882 F.3d 1121, 1124 (Fed Cir. 2018). The Second Circuit reviews the grant of 12(b)(6) motions de novo and construes the Complaint liberally, accepting all factual allegations in the Complaint as true and drawing all inferences in the light most favorable to the plaintiff. *Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. SCC.*, 568 F.3d 374, 381 (2d. Cir. 2009)

Patent eligibility is reviewed *de novo* and may only be resolved at the Rule 12 stage if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant. *Coop Entertainment, Inc. v. Kollective Tech. Inc.*, 50 F. 4th 127, 130 (Fed. Cir. 2022). Important to this Appeal, patent eligibility can only be determined at the Rule 12 (b)(6) stage "… when there are no factual allegations that taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software v. Green Shades Software*, 882 F.3d at 1125. "Indeed we have explained that plausible factual allegations may preclude dismissing a case under § 101 where for example

nothing on the record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)." *Id.*

**B.    The District Court erred by failing to accept as true the plausible factual allegations in the First Amended Complaint that the invention in the '810 patent was directed to a specific improvement to computer technology capability under *Alice* step one.**

At the outset, the district court applied the wrong legal standard to the §101 question.  The district court stated that whether a claim is drawn to patent-eligible subject matter under § 101 "… presents a '*pure* question of law'."  Appx16.  The district court cites a Southern District of New York case for that erroneous proposition.  Appx16.  Instead, the precedent of this Circuit is well established that patent eligibility can be determined at the Rule 12(b)(6) stage *only* when there are *no factual allegations* that when taken as true prevent resolving the eligibility question as a matter of law.  *Aatrix Software*, 882 F.3d at 1125.  "Indeed we have explained that plausible factual allegations may preclude dismissing a case under § 101 where, for example, nothing on the record refutes those allegations . . ."  *Id.* "Patent Eligibility . . . may depend on underlying issues of fact."  *Coop Entertainment v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2021).

Here, the FAC was replete with plausible factual allegations that when accepted as true prevented the granting of a 12(b)(6) dismissal on ineligibility grounds. SOC *supra* at p. 23-25.  As a preliminary matter, patent eligibility under Section 101 of the Patent Act should not be resolved in a Rule 12(b)(6) motion

where there are ". . . factual allegations [in the Complaint] that, taken as true, prevent resolving the eligibility question as a matter of law." *See Aatrix Software Inc. v. Green Shades Software Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2016). This Court has explained that where the complaint contains factual allegations that an invention is directed to an improvement in computer technology, these allegations are taken as true and a Rule 12(b)(6) motion based on Section 101 must be denied:

> For example, it is alleged that the patents 'improve the functioning of the data processing systems, computers and other hardware' and explained in detail how the invention achieves these improvements. These allegations suggested that the claimed invention is directed to an improvement in the computer technology itself . . . . [n]othing in the limited record we could consider at the 12(b)(6) stage refuted those allegations so there was no legal basis to affirm dismissal . . . . these allegations at a minimum raised factual disputes underlying the § 101 analysis . . . . we cannot adopt a result-oriented approach to end patent litigation at the 12(b)(6) stage that would fail to accept as true the complaint's factual allegations and construe them in the light most favorable as settled law requires.

*Aatrix Software Inc. v. Green Shades Software Inc.*, 890 F.3d 1354, 1358 (Fed. Cir. 2018) (concurring opinion). Here, as demonstrated below, the FAC is replete with plausible factual allegations that the claimed inventions of the '810 Patent are technological improvements in computer technology and capability, and not an abstract idea. There is nothing in the record that refutes these allegations. In fact, the intrinsic record supports and bolsters the plausibility of these allegations.

Section 101 provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Laws of nature, natural phenomena and abstract ideas are not patentable. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (2016). In determining patent eligibility pursuant to Section 101, the Supreme Court and Federal Circuit precedent require a two-step analysis. *Enfish*, 822 F.3d at 1334. Courts must first determine if the *claims at issue* are *directed to* a patent eligible concept. *Id. citing Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014); *Core Wireless Licensing v. LG Elec. Inc.*, 880 F.3d 1356, 1360 (Fed. Cir. 2018). If the answer is yes, the inquiry ends and the patent claim is valid under Section 101. *Enfish*, 882 F.3d at 1335, 1339. Only when the analysis in the first step shows an abstract idea, does the analysis proceed to step two to determine if the patent claims contain an inventive concept that transforms the concept into a patent-eligible application. *Enfish*, 822 F.3d at 1335-1336; *McRO Inc. v. Bandai Namco Games Am Inc.*, 837 F.3d 1299, 1312-1313 (Fed. Cir. 2016).

*Enfish* teaches that where the software invention, such as the claimed inventions in the '810 Patent, is focused on improving the way prior systems function, it is not an abstract idea and is patent eligible under § 101. *Enfish*, 822 F.3d at 1336. Likewise, in *Core Wireless*, the software invention recited a specific improvement over prior systems resulting in an improved user interface. *Core Wireless*, 880 F.3d at 1363 (Fed. Cir. 2018). As this Court cogently explained:

We do not read Alice to broadly hold that all improvements in computer-related technology are inherently abstract and therefore must be considered at step two. . . . nor do we think that claims directed to software as opposed to hardware are inherently abstract and therefore only properly analyzed at the second step of the Alice Analysis.

Software can make non-abstract improvements to computer technology just as hardware improvements can, and sometimes the improvements can be accomplished through either route. . . . We thus see no reason to conclude that all claims directed to improvements in computer-related technology, including those directed to software are abstract and necessarily analyzed at the second step of *Alice*. . .

Therefore we find it relevant to ask whether the *claims* are directed to an improvement in computer functionality versus being directed to an abstract idea. . . .

*Enfish*, 822 F.3d at 1689. In performing the analysis of what the patented invention is directed to, *Enfish* especially cautions against "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Id.* at 1337. Likewise this Court has repeated this caution about generalizing and "oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO v. Bandai Namco Games*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (generalizing the asserted claims as being directed to collecting, analyzing and reporting date in inconsistent with our instructions that Courts be

careful to avoid oversimplifying the claims by looking at them generally failing to account for the specific requirements of the claim) citing *McRO*, 831 F3d at 1313.

Importantly, where the computer technology software invention is focused on a *specific improvement* over prior art systems and addresses a problem or deficiency in the prior art or the industry, the invention is not an abstract idea but rather a technological improvement in the computer technology.  As *Enfish* teaches, the analysis of whether a system is intended to be an improvement over prior art technology is bolstered by the discussion in the patent of problems or deficiencies in the prior art systems, problems faced in the industry and the claim language:

> Here the claims are not simply directed to *any* form of storing tabular data, but instead are specifically directed to a self-referential table for a computer database. . . . the necessity of describing claims in such a way is underscored by the specification's emphasis that the 'present invention comprises flexible, self-referential table that stores data.'  The specification also teaches that the self-referential table functions differently then conventional database structures. . . .  Moreover, our conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specifications teachings that the claimed invention achieves other benefits over conventional databases. . . .

*Enfish*, 822 F.3d at 1337.  As this Court in *Core Wireless* further explained:

> The asserted claims in this case are directed to an improved interface for computing devices not the abstract idea for an index. . . .  Although the generic idea of summarizing information certainly existed prior to the invention, these claims are directed to a particular manner of summarizing and presenting information in electronic devices. . . .

*Core Wireless*, 880 F.3d at 1362, 1363.

Likewise, in *CardioNet* this Court held that the district court erred in granting a 12(b)(6) motion to dismiss. The technology claims for cardiac monitoring as an abstract idea because the district court:

> . . .disregard[ed] the written description recitation of the advantages of the claimed invention. . . . that . . . the claimed invention achieves more accurate and clinically significantly detection of atrial fibrillation and atrial flutter, and thereby constitutes an improvement to cardiac monitoring technology as opposed to an abstract idea. . . . On a motion to dismiss . . . the Court must construe all facts and draw all reasonable inferences in favor of . . . the non-moving party . . . Here there is no record evidence undermining the statements in the written description concerning the benefits of the claimed device. The district court's finding is contrary to facts and fails to draw all reasonable inference in *CardioNet's* favor.

*CardioNet v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020). This Court found the patent claims were not directed to an abstract idea but rather fit into the class of claims that focus on an improvement in computers (and other technologies), as tools and are patentable subject matter. *Id*. at 1371; *See also Visual Memory v. NVIDIA*, 867 F.3d 1253, 1260 (Fed. Cir. 2017).

Moreover, in *McRO* this Court found that a claimed software invention that allows ". . . computers to produce accurate and realistic lip synchronization and facial expressions in animated characters that previously could only be produced in human animators" was an asserted improvement in computer animation, and not an

abstract idea. 837 F.3d at 1313, 1314. The specifications in the patent emphasized the claimed improvement or allowing computers to produce these accurate animation results when previously only humans could do so. *Id*. at 1314.

The FAC here includes plausible factual allegations that when assumed true demonstrate that the claimed inventions of the '810 Patent are specific technological improvements to computer technology and capability and constitute patentable subject matter pursuant to Section 101. Appx141-148, ¶¶12-23. As alleged in the FAC, the claimed computer software inventions of the '810 Patent are directed to specific improvements in computer capability to fix a specific problem in the prior art. *Id*. Indeed, The FAC explicitly alleges:

> 12. The claimed invention of the '810 Patent comprises a novel computer system, operation and function comprising a specific, structured front end user interface, i.e., a realtime billable timekeeper entry box generated by the computer for entry of at least a personal code and client identifier, and back end computer processing to automatically detect, time and record billable time for an individual on a task by task basis. The claimed invention further includes a plurality of timekeeper entry embodiments, including, for example, user interaction with respect to generation of a timekeeper entry box, detection and control of the automatic timer on a task by task basis, including in seriatim multi-tasking or simultaneous multi-tasking of, for example, emails, LAN documents, research sessions and telephone calls for one or more clients. The software of the computer implemented method and computer readable medium claims require a specific, structured front end user

> interface combined with a backend computer processing functionality that employs a significant improvement to the capability of the computer system as a whole and resolves a specifically identified problem in the prior state of the art.

*See* Statement Of The Case (SOC) at p. 23; Appx142, ¶12; Appx142-148.

The FAC further alleges that the '810 Patent was issued after a thorough and assiduous prosecution during which the Examiner hired an independent contractor to conduct a prior art search. Appx143, ¶13, SOC at p. 21. The FAC also alleges and details all of the Examiner's stated reasons for allowance of the '810 Patent and all the improvements made by the claimed inventions of the '810 Patent over the prior art. *See* SOC at p. 24; Appx143-148, ¶¶ 13-23. In fact, the Examiner explained that "None of the prior art of record remedies the deficiencies found in Goykhman, Collado, Eisenberg or Katz." Appx143, ¶13; Appx188-189. The FAC specifically alleged that the examiner stated: "furthermore, neither the prior art, the nature of the problem, nor knowledge of a person of ordinary skill in the art provide any reasonable rationale to combine prior art teachings." Appx143, ¶13; *see* SOC at p. 21. The FAC itself details the prior art and the deficiencies contained therein and the specific improvements to the technology made by the claimed invention of the '810 Patent. *See* SOC at p.25; Appx144-148 at ¶¶14-23. Further, the FAC precisely details the specific problems that the claimed inventions of the '810 Patent solve in the prior art. *See* SOC at p.24; Appx143-145, ¶¶13-15. Further,

the '810 Patent itself identifies in detail the problems in the industry and the prior art that the invention targets to solve. *See* SOC at p. 24; Appx145-148, ¶¶ 16-22.

> The claimed invention of the '810 Patent solved the endemic problem in all professional service related companies and businesses involving '[t]he absence of a computer system which monitors billable time for every document generated and/or task undertaken during the course of a given day contemporaneous with the service being performed has proven to be an insurmountable burden for many professionals who have a difficult time administratively logging their time on a daily basis.'

Appx145, ¶¶16; Appx179, 1: 47-52.

Moreover, the '810 Patent identified the endemic problems in the industry faced by billing professionals that must bill clients for time spent on their projects by the billing professional. SOC at p. 8-10. The '810 Patent further discusses the prior art and the deficiencies and problems with each that the claimed inventions of the '810 patent remedy. SOC at p. 10-12. The detailed description of the claimed inventions in the '810 Patent were tailored to provide the solution to these problems. SOC at p. 10-12; 13-22. Therefore, the intrinsic record, the '810 Patent and the prosecution history confirm and substantiate the plausible factual allegations in the FAC.

Indeed, not only were there plausible allegations of fact in the FAC that the '810 Patent is directed to a technological improvement in computer capabilities, but the intrinsic record confirms the technological improvement over the prior art and

the resolution of the industry endemic problems by the claimed inventions of the '810 patent.

As *Enfish* teaches, a software invention such as alleged in the FAC here that improves a prior art deficiency and discusses the advantages offered by the technological improvement is not an abstract idea. *Enfish*, 822 F.3d at 1337; *Core Wireless*, 880 F.3d at 1363. *See also Visual Memory v. NVIDIA*, 867 F.3d 1253, 1260 (Fed. Cir. 2017) ("And like the patents in *Enfish* and *Thales*, the specification discusses the advantages offered by the technological improvement."). Moreover, just as in *Enfish*, the computer software invention here is not directed to <u>any</u> form of "recording time." Rather, the invention is *<u>specifically directed</u>* to:

> . . . a novel computer system, operation and function comprising a specific, structured front end user interface, i.e. a realtime billable timekeeper entry box generated by the computer for entry of at least a personal code and client identifier, and back end computer processing to automatically detect, time and record billable time for an individual on a task by task basis. The claimed invention further includes a plurality of timekeeper entry embodiments, including, for example, user interaction with respect to generation of a timekeeper entry box, detection and control of the automatic timer on a task by task basis, including in seriatim multi-tasking or simultaneous multi-tasking of, for example, emails, LAN documents, research sessions and telephone calls for one or more clients. The software of the computer implemented method and computer readable medium claims require a specific, structured front end user interface combined with a backend computer processing functionality that employs a significant improvement to the capability of the computer

> system as a whole and resolves a specifically identified
> problem in the prior state of the art.

Appx142-143, ¶12; SOC at p. 23.

As the claims of the '810 Patent demonstrate the inventions claimed by the

'810 Patent are directed to a specific technological improvement to computer

capabilities and "…fits into the class of claims" decided by this Court"… that focus

on an improvement in computer technology - - ". . . a class of claims that focus on

an improvement in computers (and other technologies) as tools", rather than an

abstract idea that use computers as tools. *CardioNet*, 955 F.3d at 1371.

Thus, the FAC explicitly alleges plausible facts that when accepted as true

demonstrate that the claimed inventions of the '810 Patent are patentable subject

matter under Section 101 and not an abstract idea. There is nothing to the contrary

in the record, and in fact, the allegations in the FAC are based on and bolstered by

the patent claims, specification, and the prosecution history.

The district court made several errors in its decision to dismiss the FAC on

12(6)(b) grounds. First, the district court did not accept the plausible factual

allegations in the FAC to be true. Appx25. The FAC contained a detailed factual

description of the claimed inventions of the '810 Patent, set forth the claim

language and the limitations, and attached and incorporated the patent. Appx141-

148, ¶¶10-23. The FAC also contained very detailed factual allegations about the

prior art deficiencies and problems as well as detailed allegations about the

problems in the industry that the claimed inventions of the '810 patent solves. Appx143-148, ¶¶13, 16, 17-23. The FAC further contained detailed allegations regarding the USPTO Examiner's statement of reasons for allowance of the claimed inventions and their improvements over the closest prior art. Appx143-144, ¶13. Instead of accepting these plausible factual allegations as true, when faced with "Argument" from RELX, the district court made a factual determination against Realtime that is contrary to the plausible factual allegations asserted in the FAC, the patent specification, the patent claims and the prosecution history. Appx24-25:

> . . . RELX argues that that the asserted claims are drawn to 'keeping track of time spent on billable client related tasks' and . . . constitutes an abstract idea. . . . Under step two RELX argues . . . the claims simply implement the idea by presupposing some unspecified generic computer. . . . Realtime counters that the Amended Complaint contains sufficient allegations that the claimed invention is a technological improvement in computer technology and capability. . . . In support, Realtime cites language from the Amended Complaint and the patent stating that the claimed invention employs a significant improvement to the capability of the computer system and addresses deficiencies in the prior art. . . . For the reasons that follow the Court agrees with RELX that the claims at issue are directed toward an abstract idea and lack an inventive concept, and that the patent is therefore invalid under § 101.

Appx24-25.

Thus, ignoring the factual allegations of the FAC, and failing to accept them as true, the district court instead made a factual determination contrary to the plausible factual assertions in the FAC and the intrinsic record. At the 12(b)(6) stage, this is clear error by the district court and must be reversed.

Continuing with its errors in making factual determinations against Realtime and contrary to the plausible facts alleged in the FAC and supported by the intrinsic record, the district court determined that "in essence the patent recites the abstract concept of timekeeping for compensation." Appx26. The district court points to no support in the 12(b)(6) record for this determination. Appx26. The district court without reference to the actual claim language and limitations, further overgeneralizes the claimed inventions in the '810 Patent as "generating an individual timekeeper entry box that contains…relevant information…about the task", completely omitting, among the many other novel features of the technology, the required "entry for a personal code and a second entry for a client identifier", and the extraction of the pertinent task information by the system. Appx25-26. These are all key features of the claimed inventions that the Examiner found to be novel and distinguished over the prior art. Appx143, ¶13. Indeed, as this Court has cautioned ". . . describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish* 822 F.3d at 1336. This Court

has further continued against "oversimplifying the claims . . . by failing to account for the specific requirements of the claims." *CardioNet*, 955 F.3d at 1371. The FAC is replete with plausible factual allegations that the claimed limitations of the '810 Patent are directed to technological improvement in computer technology of a front end/back end system for timekeeper entry box that automatically tracks activity in real time, by personal code and client identifier, all on a task-by-task basis, *in seriatum* or simultaneous multi-tasking, with additional advancements as recited in the asserted claims of the '810 Patent. Appx141-148;183-185. There is nothing in the record to support that the '810 Patent is directed to the "abstract concept of timekeeping for compensation."

As the FAC alleges, the claimed inventions do not describe <u>any</u> form of recording time or timekeeping. *Enfish*, 822 F.3d at 1337. Rather, the claimed inventions are directed at a very specific and detailed new technology for:

> [m]ethods and computer readable medium which implement a unique computer generated individual timekeeper entry box configured for inputting a personal code and a client identifier and with an automatic timer on a task-by-task basis (e.g., each document is in use and each service and/or telephone call is in session), comprising: (a) detecting opening of a document, initiation of a client-service or initiation of a telephone call; (b) generating an 'individual timekeeper entry box' configured with 'an entry for personal code' and 'a second entry for a client identifier,' and (c) contemporaneously tracking time associated with the personal code and the client identifier of the document in use, the client-service or the telephone call on task-by-task and client-by-client bases.

43

Appx141-142, ¶¶11-13.  *See Core Wireless*, 880 F.3d at 1361 (software invention for specific manner of display information recites a specific improvement over prior systems and is patentable subject matter); *McRO*, 837 F.3d at 1315 (specific process by incorporating claim limitations for automatically animating characters on the computer was patentable subject matter); *see also CardioNet, LLC v. InfoBionic Inc.*, 955 F.3d at 1368 (claims are directed to a specific means or method that improves cardiac monitoring technology).

The district court compounded its errors by failing to follow the directives of this Court.  As this Court has repeatedly instructed, step one of *Alice* requires the Court to determine what the patent's *claims* are directed to. *Enfish*, 822 F.3d at 1335-1336; *CardioNet*, 955 F.3d at 1369. The district court in paraphrasing and supplanting its oversimplification of the claims, rather than what the actual claim language is directed to, committed the fatal error, repeatedly cautioned against by this Court of ". . . describing the claims at such a high level of abstraction and untethered from the language of the claims" that every software technological advance or improvement would be deemed an abstract idea.  *Enfish*, 822 F.3d at 1336, and "oversimplification of the claims by . . . failing to account for the specific requirements of the claims." *CardioNet*, 955 F.3d at 1371.  This Court has categorically rejected such an approach. *Id*.  Indeed, rather than analyze and apply the actual claim language to determine what the claims are directed to, the district

court supplanted its own abstract oversimplifications of the claims and its own generalization of "the essence" of the patent. Appx26. ("In essence the patent recites the abstract concept of timekeeping for compensation.") In doing so, the district court completely ignores and leaves out all the novel and unique elements of the claims of the '810 Patent that address the prior art deficiencies.

The district court further erred by mischaracterizing Plaintiff-Appellant's claim construction and applying this mischaracterized construction and also accepting applying Defendant-Appellee's construction in its Section 101 analysis. Appx24. The district court improperly limited Plaintiff-Appellant's construction to user input to detect initiation of a task. Appx24. Plaintiff-Appellant's construction embraces detecting initiation with or without user input consistent with the plain and ordinary meaning of the claim language which simply recites "initiating detection." Nothing in the claim language precludes initiating detection of a task by receiving a click command from a button to begin automatically timing the initiation of a task. Reading a limitation "initiating detection without user input" or "initiating detection on its own" into the claim language as the district court has done following Defendant-Appellant's flawed proposed construction is an error of law. Moreover, there is also nothing in the specification or prosecution history of the '810 Patent that supports such a flawed construction. To the contrary, the specification supports user initiated detection by pressing on a button on the front end user interface to

45

initiate the backend computer's automatic timer of a task. *See, e.g.*, Summary of Invention ("the Timekeeper Entry Box may also include command buttons which the billing professional can use to control the time computation function"). Appx168, 2:66-3:1; SOC at p. 13-24. Likewise the District Court's footnote 5 regarding the issue of infringement is contrary to fact and law and constitutes multiple errors of law as it based on its erroneous claim construction described above. App37.

The district court also erroneously determined, contrary to the plausible factual allegations of the FAC, that, simply because the claimed inventions of the '810 Patent can be implemented on any computer device and uses common computer terminology, this makes it patent ineligible subject matter :

> . . . [w]e are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims . . . . the claims here are directed to an improvement in the functioning of a computer. In contrast the claims at issue in *Alice* and *Versata* can readily be understood as simply adding conventional computer components to well-known business practices.

*Enfish*, 822 F.3d at 1338. App28. Here the FAC asserts that the '810 Patent claims are clearly an improvement in the functioning of the computer to solve a specific problem left deficient by the prior art - - in other words, the '810 Patent ". . . claims are directed to a specific implementation of a solution to a problem in the software arts." *Enfish*, 822 F.3d at 1339; *see also Core Wireless*, 880 F.3d at 1362.

A reading of the Complaint's factual allegations and the '810 Patent claim language and specification make clear that the '810 Patent is not directed to the abstract idea of *any form* of "recording billable time," but rather is directed to the inventive concept of a specific, structured front end user interface, *i.e*, a realtime billable timekeeper entry box generated by the computer for entry of at least a personal code and client identifier, and back end computer processing to automatically detect, time and record billable time for an individual on a task-by-task basis.  Appx179-185; *Enfish*, 822 F.3d at 1337 (Here the claims are not simply directed to *any form* of storing tabular data, but instead are specifically directed to a self-referential table for a computer database).  *See also, CardioNet*, 955 F.3d at 1368(specific technology for cardiac monitoring); *McRO*, 837 F.3d at 1316 ( specific technology for automated computer animation).

Moreover, the FAC further alleges that the claimed real time billable timekeeping on a task-by-task basis *in seriatim* and by simultaneous multitasking for a single client or multiple clients could not be performed by a single individual or by numerous individuals in a professional workplace environment in the absence of the claimed invention. Appx148, ¶¶22-23). *Core Wireless,* 880 F.3d at 1362, *citing*, *Finjan, Inc. v. Blue Coat Systems, Inc.,* 879 F.3d 1299 (Fed. Cir. 2018) (patent eligible claims enabled "a computer security system to do things it could not do before.").  The district court's finding that automation of human

tasks is patent ineligible has been rejected by this Court in *McRO*, 837 F.3d at 1313.

The district court's unsubstantiated finding that the 810 Patent is ineligible under § 101 because the claims "do not provide a technical means for performing the function and lack specificity" is a further error. Appx at 30. The '810 Patent's detailed claim limitations, specification and detailed drawings, in Figures 1-10 detail and delineate the logical structures and processes that comprise the claimed inventions. Appx169-178, 180-185. As this Court has instructed ". . . that the improvement is not defined by reference to 'physical' components does not doom the claims." "Much of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes"). *Enfish*, 822 F.3d at 1339.

**C.** **The District Court also erred by failing to accept as true the plausible factual allegations in the First Amended Complaint that the invention in the '810 Patent contains an inventive concept.**

Patent eligibility under step two of *Alice* to determine whether an inventive concept exists in the patent claims is also a question of law that likewise depends on underlying issues of fact. *Coop Entertainment v. Kollective Tech. Inc.*, 50 F.4th 12, 130. In determining this question at the 12(b)(6) stage, the district court must accept

48

as true the plausible allegations of fact in the Complaint and draw all inferences from the intrinsic and Rule 12 record in favor of the non-movant. *Id*. at 130.

At step two of *Alice*, the district court is required to examine "the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id*. at 130. "Specifically, we determine whether the claim elements individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using well-understood, routine and conventional activities previously known to the industry." *Id*. This issue of whether the claims are directed to well understood, routine or conventional activities "is a question of fact that cannot be resolved at the Rule 12(b)(6) stage, and the district court erred in resolving this factual issue against [Appellant]." *Id*. at 133.

Here, the district court erred by failing to analyze the claims on an element-by-element basis, and by ignoring that analysis pleaded in the FAC. The FAC clearly asserted plausible claims that the asserted claims of the '810 Patent contain inventive concepts. See Appx141-148, ¶¶11-23. The FAC set out the claim language, and described in detail the inventive concepts that the claims are directed to *Id*. Further, the FAC, along with the patent, detailed the problems with the prior art and the problems existing in the industry that the claimed inventions solved. Appx143-145, ¶¶13-15. *See* SOC at pp. 8-13.

The inventive concepts of a (1) front end user interface, i.e., "an individual timekeeper entry box including an entry of a personal code and second entry for a client identifier", (2) back end computer processing for automatically "detecting initiation" of a task, "generating" timekeeper entry box and "contemporaneously tracks time associated with said personal code and said client identifier" in real time, (3) on a task-by-task basis, (4) while automatically extracting or accepting data points from each document, email or task, (5) for *in seriatim* tasks or simultaneous multitasking tasking are set out in the FAC. Appx141-148, ¶¶11-23; SOC at pp. 13-21. Such inventive concepts are found in the '810 Patent's claim elements and described in the specification. *Id*. Furthermore, the FAC set out and alleged how the Patent Examiner in the Reasons for Allowance explained how the prior art was deficient, did not contain the inventive concepts of the claimed invention, and actually taught away from the inventive concepts of the claimed invention of the '810 Patent:

> *Goykhman* is not directed to using a computer to automatically track an individual's task by task timekeeping associated with a personal code, *Goykhman* does not disclose an individual timekeeper entry box which includes a personal code and contemporaneously tracks time associated with the personal code that a document, service or telephone call is in use or in session. Instead *Goykhman* is directed to monitoring time by selected activity, not by individual. *Collado* simply disclosed a "user interface" for entry of information in a timecard and a "calendar system" enabling a user to enter "appointment data specifying the

data and start/end time for each appointment entry, as well as descriptive information regarding the appointment. This teaches away from the invention because the entry in the invention is done automatically by the system. None of the prior art of record remedies the deficiencies found in *Goykhman, Collado, Eisenburg* or *Katz*. Further, neither the prior art, the nature of the problem, nor knowledge of a person having ordinary skill in the art provide any reasonable rationale to combine prior art teachings.

Appx143, ¶13; Appx188-189. Indeed the Examiner's comments as alleged in and attached as an Exhibit to the FAC are clearly plausible factual allegations that the claims of the '810 Patent were not well understood, routine and conventional. Despite these plausible allegations of fact in the FAC, the patent claims, and the prosecution history all showing the technologic improvements of the claimed inventions over the deficiencies in the prior art, the district court made a factual determination against Realtime that the patent claims in the '810 Patent "are well-understood, routine conventional activities previously known to the industry" at the 12(b)(6) stage. Appx33. This was clear error by the district court and should be reversed.

There was no support in the record for this factual determination adverse to Plaintiff-Appellant and is contrary to the plausible allegations of inventive concepts in the FAC. In fact, the record bolsters and supports the plausible facts alleged in the FAC. The district court ignored these plausible factual allegations in the FAC of inventive concepts and supplanted the actual claims in the '810 Patent with the

district court's stripped down, overgeneralized summary of the '810 Patent's inventions untethered to the claim language. Appx33 ("These activities are: logging time, spent on billable tasks, creating records of billable hours, and displaying those hours in a digestible form"). This factual determination adverse to Plaintiff-Appellant at the Rule 12(b)(6) stage clear is error by the district court and must be reversed.

**D. The District Court erred in its findings under both Alice step one and Alice step two by failing to consider all the asserted independent and dependent claims of the '810 Patent.**

The district court further erred by only considering asserted independent claim 29 of the '810 Patent, and not the remaining 25 asserted claims and their additional grounds of patentability. The district court labeled claim 29 as "representative", but Plaintiff-Appellant never asserted nor agreed that claim 29 was a representative claim.  Further, the FAC and Plaintiff-Appellant's briefing below asserted and addressed the inventive concepts of additional dependent claims, such as dependent claims 32-34.  SOC pp.17-20; 22-25.  As set out and discussed in the SOC, supra at pp.18-21, the additional asserted claims are replete with inventive concepts such as, for example, extracting information from a document, service, or telephone call, (dependent claims 3 and 20) for display in timekeeper entry box (dependent claims 7 and 23) and for integrating into an accounting and billing system (dependent claim 6), or displaying a running clock

within the timekeeper entry box (dependent claims 8 and 24). *Id.* It was error for the District Court not to consider all asserted claims and patentable claim elements. *CardioNet v. InfoBionic Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020) ("The dependent claims are . . . directed to patent eligible subject matter"); *Realtime Data, LLC v. Reduxio Sys.*, 831 Fed. App. 492, 497 (Fed. Cir. 2020) ("the analysis is claim specific.").

## VII.   CONCLUSION AND RELIEF SOUGHT

For all the foregoing reasons, Plaintiff-Appellant, Realtime Tracker, Inc., respectfully requests that this Court reverse the Opinion and Final Judgment of the district court in their entirety and remand the action to the district court.

Respectfully submitted,

ROBERT K. GOETHALS
LEICHTMAN LAW PLLC
185 Madison Avenue, 15th Floor
New York, New York 10016
(212) 419-5210
rgoethals@leightmanlaw.com

Dated: June 30, 2023

By: */s/ Robert K. Goethals*
    Robert K. Goethals

*Counsel for Plaintiff-Appellant*

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

**Case Number:**  2023-1756

**Short Case Caption:**  Realtime Tracker, Inc. v. RELX, Inc.

The foregoing Plaintiff-Appellant Opening Brief complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments),:

[ X ] this brief has been prepared using a proportionally-spaced typeface (Microsoft Word 2016 in 14 pt Times New Roman) and includes 13,177 words.

[   ] this brief has been prepared using a monospaced typeface and includes _____ lines of text.

[   ] this brief contains _____ pages / _____ words / _____ lines of text, which do not exceed the maximum authorized by this court's order (ECF No. _____)

Dated:  June 30, 2023                    */s/ Robert K. Goethals*
                                                  Robert K. Goethals

                                                  *Counsel for Plaintiff-Appellant*
                                                  *Realtime Tracker, Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

**CERTIFICATE OF SERVICE**

**Case Number:**  2023-1756

**Short Case Caption:**  Realtime Tracker, Inc. v. RELX, Inc.

I certify that on this 30th day of June 2023, I caused this Plaintiff-Appellant

Opening Brief to be filed electronically with the Clerk of the Court using the

court's CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

> Oleg Khariton
> John David Luken
> Dinsmore & Shohl LLP
> 255 E. Fifth Street, Suite 1900
> Cincinnati, OH  45202
> oleg.khariton@dinsmore.com
> john.luken@dinslaw.com
> *Counsel for Appellee*

/s/ *Robert K. Goethals*
Robert K. Goethals

*Counsel for Plaintiff-Appellant
Realtime Tracker, Inc.*

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

Pages

| | |
|---|---|
| District Court Order Granting  Motion To Dismiss | Appx1-38 |
| District Court Final Judgment | Appx39-49 |
| U.S. Patent No. 8,229,810 | Appx282-299 |

¶¶ 37–74. It seeks, *inter alia*, treble damages and attorneys' fees and expenses, asserting that the

case is exceptional under 35 U.S.C. § 285. *Id.* at 27–28.

Now before the Court is RELX's motion to dismiss Realtime's Amended Complaint

under Federal Rule of Civil Procedure 12(b)(6). Dkts. 18, 19 ("Mot."). RELX argues that the

'810 Patent's claims are directed to an abstract idea and therefore ineligible for patent protection,

and that, in any event, Realtime has failed to plausibly allege patent infringement. Mot. at 1–2.

For the following reasons, the Court grants the motion to dismiss.

## I.      Background

### A.      Factual Background[1]

#### 1.      The Parties

Realtime is a limited liability corporation, organized under New York law and owned by

attorneys Cynthia S. Butera and Celeste M. Butera ("the Buteras"). AC ¶¶ 2, 9. It is the sole

assignee and owner of the '810 Patent, "holding all rights, title and interest in and to the '810

Patent, including the sole right to enforce the '810 Patent." *Id.* ¶ 9.

RELX is a corporation, organized under Massachusetts law, with its headquarters and

principal place of business in New York City. *Id.* ¶ 3. RELX, directly or through its LexisNexis

division, makes, uses, offers for sale, licenses, sells, imports, and advertises the Juris Suite

---

[1] The facts are drawn from Realtime's Amended Complaint ("AC"), Dkt. 17. For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also considers the documents attached to the AC, as well as a video cited in the AC. "[D]istrict courts may 'permissibly consider documents other than the complaint' for the truth of their contents if they 'are attached to the complaint or incorporated in it by reference,'" and "[a] document that is integral to the complaint and partially quoted therein may be incorporated by reference in full." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

2

software, which, *inter alia*, tracks professionals' billable time on a real-time basis. *Id.* ¶¶ 3, 6, 27.

### 2.   The '810 Patent

U.S. Patent 8,229,810, entitled "Realtime Billable Timekeeper Method, System and Apparatus," was issued by the U.S. Patent and Trademark Office to the Buteras on July 24, 2012. *Id.* ¶ 11; Dkt. 17-1 ("Patent") at 1.

The Patent includes method, apparatus, and computer readable claims that "implement a unique computer generated individual timekeeper entry box configured for inputting a personal code and a client identifier . . . with an automatic timer." AC ¶ 17.   The Patent claims timekeeping of tasks on a document-by-document, telephone call-by-telephone call, and client service-by-client service basis, stating:

> The present invention relates to a timekeeping and tracking computer method, system and apparatus on a document-by-document, task-by-task, realtime basis for the purpose of generating associated billing information for an individual services-related professional.   The invention also permits the individual to control the time allocated and the description for each document, whether Internet-based or local area network (LAN) based, or task, on a realtime basis through a timekeeper entry box generated for each such document and task.

Patent at 13.   The claimed invention enables (1) "detecting opening of a document, initiation of a client-service or initiation of a telephone call," (2) "generating an individual timekeeper entry box configured with an entry for a personal code and a second entry for a client identifier," and (3) "contemporaneously tracking time associated with the personal code and the client identifier of the document in use, the client-service or the telephone call on task-by-task and client-by-client bases." AC ¶ 17 (internal quotation marks omitted); *see id.* ¶¶ 11–12.   Realtime states that the Patent "teaches that the requirements of 'detecting' and 'generating' performed by the computer can involve user interaction," *id.* ¶ 18; *see also id.* ¶¶ 19–20, although the Patent also

3

includes language indicating automatic, rather than user-driven, detection of the initiation of tasks, *see, e.g.*, Patent at 13, 17.

The claimed invention's timekeeping of activities "can be performed in seriatim or by multi-tasking activities simultaneously," and can be recorded with respect to "multiple clients, by a single individual or by numerous employees in a professional environment or business on a daily basis." *Id.* ¶ 21; *see also id.* ¶¶ 22 (stating that such contemporaneous timekeeping "would not be possible to achieve for one or more individuals in the absence of the claimed invention"), 23 (same). According to the Patent's "Background" section, "while there have been numerous attempts to improve existing time and billing systems, none have addressed the need for a timekeeping tracking computer system, method and apparatus on a document-by-document, task-by-task, realtime basis for the purpose of generating a daily billing report for an individual service-related professional." Patent at 13; *see also* AC ¶ 16 (describing Patent as addressing "endemic problem in all professional service related companies and businesses").

Under the Patent, the "manner by which the computer method, system and apparatus may generate, track and record time may be through the use of a software program that generates a timekeeper entry box each time a document or task is being performed by the professional," and such timekeeper entry box "may automatically appear on the professional's computer screen every time the professional is working on a computer based task." Patent at 13. The timekeeper entry box includes a "time computation feature" that "will automatically start upon creation of a [local area network ("LAN")] document by the professional or upon commencement of a Internet-based task such as E-mail or a research session" and "will automatically cease upon closing of the LAN document, upon sending, saving or closing the e-mail, and upon cessation of the research session or other task by closing out of the session." *Id.* The box may include

4

command buttons for the professional to pause, erase, or end the timekeeping. *Id.* at 14. Furthermore, the invention "generates a daily time and billing report" for the user that "can be entered directly into the firm's or company's existing accounting or billing system used for generating billing invoices for professional services rendered to clients." *Id.* The Patent includes 10 illustrations or charts, including block diagrams, exemplary illustrations, and flow charts depicting the embodiments of the invention. *Id.* at 2–12, 14. In one embodiment, "the invention detects the task being performed by the professional," including drafting or editing documents, conducting research, and making or receiving a phone call. *Id.* at 16.

The '810 Patent includes 40 claims. Of those, Realtime alleges infringement by RELX of six independent claims, including three method claims and three computer readable medium claims, and 20 corresponding dependent claims. *See* AC ¶ 31. These are: independent method claim 1 and dependent claims 2, 3, 4, 5, 6, 7, 8, and 32; independent method claim 26 and dependent claims 33 and 35; independent method claim 29 and dependent claims 34 and 38; independent computer readable medium claim 18 and dependent claims 19, 20, 21, 22, 23, and 24; independent computer readable medium claim 28 and dependent claim 37; and independent computer readable medium claim 31 and dependent claim 40. *See id.*

Independent method claim 1 pertains to tracking time on a document-by-document basis and claims:

> A method for individual realtime billable timekeeping using a computer, comprising a computer program for: detecting opening of at least one document; and generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one document wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier said document is in use to track time for an individual by client on a document by document basis using the computer.

Patent at 17. The following allegedly infringed dependent claims are methods of claim 1:

[Claim 2:] The method of claim 1, wherein said individual timekeeper entry box includes said personal code.

[Claim 3:] The method of claim 1, further comprising receiving at least one of a document type, an author identifier, a recipient identifier and a subject description for entry within said individual timekeeper entry box.

[Claim 4:] The method [of] claim 1, wherein said individual timekeeper entry box includes at least one of the following functions: pause, end, erase, minimize, maximize and favorites.

[Claim 5:] The method, of claim 1, further comprising storing information obtained from said individual timekeeper entry box.

[Claim 6:] The method of claim 1, further comprising integrating information obtained from said individual timekeeper entry box into an accounting and billing system.

[Claim 7:] The method of claim 1, further comprising displaying at least one of a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a recipient identifier, and a subject description within said individual timekeeper entry box.

[Claim 8:] The method of claim 1, further comprising displaying a running clock within said individual timekeeper entry box. . . .

[Claim 32:] The method of claim 1, further comprising simultaneously tracking time for said individual on said at least one document and at least one of a client-service and a telephone call.

*Id.* at 17–18.

Independent method claim 26 pertains to tracking time on a client service-by-client service basis and claims, with language similar to claim 1:

A method for individual realtime billable timekeeping using a computer, comprising a computer program for: detecting initiation of at least one client service; and generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one client-service wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said client-service to track time for an individual by client on a client-service by client-service basis using the computer.

*Id.* at 18.  The following allegedly infringed dependent claims are methods of claim 26:

6

[Claim 33:] The method of claim 26, further comprising simultaneously tracking time for said individual on said at least one client-service and at least one of a document and a telephone call. . . .

[Claim 35:] The method of claim 26, wherein said individual timekeeper entry box includes said personal code and upon receipt of said client identifier contemporaneously tracks time associated with said personal code and said client identifier of said client-service.

*Id.* at 18–19.

Independent method claim 29 pertains to tracking time on a telephone call-by-telephone call basis and claims, with language similar to claims 1 and 26:

A method for individual realtime billable timekeeping using a computer, comprising a computer program for: detecting initiation of at least one telephone call; and generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one telephone call wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said telephone call to track time for an individual by client on a telephone call by telephone call basis using the computer.

*Id.* at 18. The following allegedly infringed dependent claims are methods of claim 29:

[Claim 34:] The method of claim 29, further comprising simultaneously tracking time for said individual on said at least one telephone call and at least one of a document and a client-service. . . .

[Claim 38:] The method of claim 29, wherein said timekeeper entry box includes said personal code.

*Id.* at 18–19.

The three independent computer readable medium claims, along with the accompanying dependent claims, closely track their method claim counterparts.[2]

---

[2] Independent computer readable medium claim 18 pertains to tracking time on a document-by-document basis and claims:

A computer readable medium having computer executable software code stored thereon for an individual realtime billable timekeeper, comprising: code for

7

detecting opening of at least one document; code for generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one document wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier said document is in use to track time for an individual by client on a document by document basis.

Patent at 18. The following allegedly infringed dependent claims are computer readable mediums of claim 18:

[Claim 19:] The computer readable medium of claim 18, wherein said individual timekeeper entry box includes said personal code.

[Claim 20:] The computer readable medium of claim 18, further comprising code for receiving at least one of a document type, an author identifier, a recipient identifier and a subject description for entry within said individual timekeeper entry box.

[Claim 21:] The computer readable medium of claim 18, wherein said individual timekeeper entry box includes at least one of the following functions: pause, end, erase, minimize, maximize and favorites.

[Claim 22:] The computer readable medium of claim 18, further comprising code for storing information obtained from said individual timekeeper entry box.

[Claim 23:] The computer readable medium of claim 18, further comprising code for displaying at least one of a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a recipient identifier, and a subject description within said individual timekeeper entry box.

[Claim 24:] The computer readable medium of claim 18, further comprising code for displaying a running clock within said individual timekeeper entry box.

*Id.* Independent computer readable medium claim 28 pertains to tracking time on a client service-by-client service basis and claims:

A computer readable medium having computer executable software code stored thereon for an individual realtime billable timekeeper, comprising: code for detecting initiation of at least one client-service; code for generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one client-service wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said client-service to track time for an individual by client on a client-service by client-service basis.

8

The Patent states that the descriptions "are exemplary and explanatory of the invention," and that the claimed invention is not limited to the specifications provided. Patent at 14. It describes the claimed invention as one that may be "implemented in software or hardware or both," with one embodiment involving implementation "in software as an application program tangibly embodied on a program storage device" and "uploaded to and executed by a computer device comprising any suitable architecture." *Id.* "Any computer device can be adopted for use in the invention, including, without limitation, desktop, notebook, palm pilot, handheld or like devices." *Id.* at 15. The Patent cites as part of the implementation various components of computers, including a processor, random access memory ("RAM"), read-only memory

---

*Id.* The following allegedly infringed dependent claim is a computer readable method of claim 28:

> [Claim 37:] The computer readable medium of claim 28, wherein said individual timekeeper entry box includes said personal code.

*Id.* at 19. Independent computer-readable medium claim 31 pertains to tracking time on a telephone call-by-telephone call basis and claims:

> A computer readable medium having computer executable software code stored thereon for an individual realtime billable timekeeper, comprising: code for detecting initiation of at least one telephone call; and code for generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one telephone call wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said telephone call to track time for an individual by client on a telephone call by telephone call basis.

*Id.* at 18. The following allegedly infringed dependent claim is a computer readable method of claim 31:

> [Claim 40:] The computer readable medium of claim 31, wherein said timekeeper entry box includes said personal code.

*Id.* at 19.

9

("ROM"), clock, input/output devices such as keyboards, voice-recognition units, and telephones. *Id.*; *see id.* at 14–15. The claimed invention, according to the Patent, "interfaces with any Internet-based or LAN application program that generates a file," including Microsoft Word, Adobe Acrobat, and Internet Explorer. *Id.* at 15; *see also id.* at 15–17. And, the Patent states, the "invention can be configured to generate a billable report for an individual professional for any length of time, and can categorize and/or subcategorize the billable time entries in any suitable manner," with possible configuration "such that the report is transmitted, received and incorporated into any LAN application program that generates a file for billing purposes." *Id.* at 17.

The Patent was issued after a prior art search, which noted four prior arts of record, including ones that track time by activity and gather appointment data to create time card records. Dkt. 17-2 at 3; *see also* AC ¶¶ 13–15. Finding that "neither the prior art, the nature of the problem, nor knowledge of a person having ordinary skill in the art, provide any reasonable rationale to combine prior art teachings," the examiner allowed claims 1–40 of the Patent. Dkt. 17-2 at 3–4.

### 3. Juris Suite

RELX, through LexisNexis, manufactures, uses, offers for sale, licenses, and sells Juris Suite. AC ¶ 27. As alleged, the Juris Suite time entry screen:

> uses a computer generated timekeeper entry box to automatically track on a realtime basis one or more professional's billable time by personal code and client identifier corresponding to said employee's activities generating documents, performing services and/or participating in telephone or video conference calls on a task by task basis, including in seriatim or simultaneous multitasking for one or more clients.

*Id.* LexisNexis advertises that Juris Suite "was built in collaboration with attorneys and with one [clear] objective—to increase productivity and per-partner income," and that it "gives firm

leaders a real-time view of timekeeper productivity, client/matter status, and other financial

indicators at the click of a button." *Id.* ¶ 28; Dkt. 17-3 ("Juris Suite Overview") at 2.

      The Amended Complaint cites a video that introduces users to Juris Suite's timer

functionality and includes video captures of the Juris Suite time entry screen.[3] *See* AC ¶¶ 29–33;

*see also LexisNexis Juris Suite Timers*, Business of Law (Jan. 21, 2016), available at

https://www.youtube.com/watch?v=IqsLXL88ja8 (last accessed Feb. 10, 2023) ("Juris Suite

Video"). The video starts on Juris Suite's "My Time Today" screen, under the "My

Transactions" tab. Juris Suite Video at 0:10–0:38. The "My Time Today" screen depicts three

existing entries that appear to contain information about the timekeeper, client, matter, and hours

spent on certain tasks. *See id.* The narrator opens an existing time entry, which results in a pop-

up screen with information boxes for the task's date/time, timekeeper, client, matter, task code,

activity code, hours worked, and narrative, with a check box to indicate whether the hours are

billable. *Id.* at 0:45. The pop-up screen includes a "timer display" with a "00:00:00" timer and

three clock-like buttons. *Id.*

---

[3] The original complaint links to a 2-minute, 13-second video entitled "LexisNexis Juris Suite Timers" and posted by "Business of Law." *See* Dkt. 5 ¶¶ 23–24 (citing https://youtu.be/IqsLXL88ja8). RELX's motion to dismiss links to the same video. *See* Mot. at 7 (citing https://www.youtube.com/watch?v=IqsLXL88ja8). The Amended Complaint and Realtime's opposition to the motion to dismiss, however, link to a 10-minute, 41-second video entitled "Firm Central Time & Billing Training Series—Matter Set-Up" and posted by Thomson Reuters Legal. *See* AC ¶¶ 30–33, 43 (citing https://www.youtube.com/watch?v=3cl2wT9rRic&t=59s); Opp. at 9–11 (same).

Because only the "LexisNexis Juris Suite Timers" video cited in the original complaint involves Juris Suite, and because the video captures and quotes included in the Amended Complaint can be found in only the "LexisNexis Juris Suite Timers" video, *see* AC ¶¶ 30–33, 43, the Court presumes that Realtime intended to cite the LexisNexis video and has referred only to that video in this decision.

As an illustration of Juris Suite's timekeeping function, the narrator posits a scenario in which a user has spoken with a client for a half-hour. The narrator presses one of the clock-like buttons to start the timer, notes that the timer has started running, and then clicks the button again to pause the timer. *Id.* at 00:56–1:08. After pausing the timer, the narrator clicks another clock-like button to transfer the time recorded. The narrator notes that, after pressing the button, the number in a box on the right-hand-side of the screen depicting the "Hours Worked" automatically increased by the amount of time recorded. *Id.* at 1:08–1:20. The narrator states: "You could probably see how this could be a feature that would allow you to let the system track the time that goes by as you work on each case, thereby relieving you of that responsibility and then keeping a detailed track of the time that's gone by." *Id.* at 1:20–1:36.

The narrator adds that a user "can even have another timer going." *Id.* at 1:37–1:40. As an example, the narrator posits that the user "had an interruption and a different client came in and [the user] had a call come in." *Id.* at 1:40–1:45. As to this scenario, the narrator states: "You can start a new timer and it will ask you if you would like to stop the already running timer. So the system is smart enough to know that only one timer can be running at any one time." *Id.* at 1:45–1:56. The narrator describes this feature as "very valuable" in capturing potentially unbilled time that "is slipping by." *Id.* at 1:59–2:05.

Realtime alleges that Juris Suite's time entry screen "includes all of the features of the claimed timekeeper entry box, including a personal code, client identifier and an automatic timer for tracking in realtime an employee's billable time on a task-by-task basis." AC ¶ 29. Realtime states that Juris Suite "provides realtime billable timekeeping on a task by task basis in seriatim or provides the professional with the option of stopping the running timer on one matter while [the] professional works on another matter or running timers on multiple matters

12

simultaneously." *Id.* ¶ 30.  Realtime alleges infringement of the six independent claims and 20

dependent claims listed above.  It sets out claims charts detailing the alleged infringement of

independent method claim 29 and independent computer readable medium claim 31.  *Id.* ¶ 31;

*see also id.* ¶¶ 32–33.  Realtime further alleges that RELX has had constructive knowledge of the

Patent since the publication of the application August 25, 2005 and the issuance of the Patent on

July 24, 2012, and actual knowledge of the Patent since Realtime filed this lawsuit on October

28, 2021.  *Id.* ¶¶ 34–35.

Realtime seeks, *inter alia*, a declaratory judgment that the Patent is valid and enforceable,

enhanced damages in the form of treble damages plus pre- and post-judgment interest under 35

U.S.C. § 284, and a finding that this is an exceptional case warranting the award of attorneys'

fees under 35 U.S.C. § 285.  *Id.* at 27–28.

### 4.    Use of Claim 29 as Representative

"Courts may treat a claim as representative in certain situations, such as if the patentee

does not present any meaningful argument for the distinctive significance of any claim

limitations not found in the representative claim or if the parties agree to treat a claim as

representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

RELX contends that independent method claim 29, which pertains to timekeeping on a

telephone call-by-telephone call basis, is representative of the asserted claims, as the dependent

claims "add no meaningful limitations." Mot. at 16–17.  Realtime does not appear to dispute that

claim 29 is representative, *see* Reply at 6.  Indeed, Realtime included in the Amended Complaint

exemplary claim charts for only claim 29 and claim 31—the computer readable medium claim

for timekeeping on a telephone call-by-telephone call basis.  AC ¶ 31.

Accordingly, although the Court has reviewed all the independent and dependent claims

at issue, the Court agrees with RELX that claim 29 may be treated as representative for purposes

13

of the patent validity inquiry.  Independent claims 1 and 26 call for the same method as does

claim 29, save with respect to timekeeping on a document-by-document basis or client service-

by-client service basis, respectively.  Likewise, the independent computer readable medium

claims—claims 18, 28, and 31—merely provide for computer-executable software code for the

methods outlined in claims 1, 26, and 29.  Some dependent claims at issue, including claims 5, 6,

32, 33, and 34, entail features, such as simultaneous timekeeping and integration of information

with an accounting and billing system, not explicitly mentioned in the corresponding

independent claims.  But, as compared to claim 29, these claims do not "differ in any manner

that is material to the patent-eligibility inquiry," *Mortg. Grader, Inc. v. First Choice Loan Servs.*

*Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016), namely whether they are directed at patent-

ineligible subject matter or disclose an inventive concept.  And where "the claims are

substantially similar and linked to the same law of nature, analyzing representative claims is

proper." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed.

Cir. 2017) (citation omitted).

### B.     Procedural History

On October 28, 2021, Realtime filed the Complaint.  Dkts. 1, 5 (re-filed Nov. 2, 2021).

On January 26, 2022, RELX waived service, making its answer due March 28, 2022.  Dkt. 8.  On

March 28, 2022, RELX filed a motion to dismiss under Rule 12(b)(6).  Dkts. 11, 12.  On March

29, 2022, the Court ordered Realtime to file an amended complaint or oppose the motion to

dismiss by April 18, 2022.  Dkt. 14.

On April 18, 2022, Realtime filed the AC, which is operative here.  On May 9, 2022,

RELX moved to dismiss the AC.  Mot.  On May 23, 2022, the parties requested additional time

to file responsive briefs, Dkt. 23, which the Court granted, Dkt. 24.  On May 30, 2022, Realtime

14

opposed RELX's motion to dismiss.  Dkt. 25 ("Opp.").  On June 13, 2022, RELX filed its reply.
Dkt. 26.

## II.   Applicable Legal Standards

### A.   Legal Standards Governing Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Although the court must

accept as true all well-pled factual allegations in the complaint and draw all reasonable

inferences in the plaintiff's favor, *see Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir.

2014), that tenet is "inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

### B.   Legal Principles Governing Patent Eligibility

Under 35 U.S.C. § 101, patentable inventions include "any new and useful process,

machine, manufacture, or composition of matter, or any new and useful improvement thereof."

The Patent Act provides that all patents are "presumed valid," and "[e]ach claim of a patent

(whether in independent, dependent, or multiple dependent form) [is] presumed valid

independently of the validity of other claims." 35 U.S.C. § 282(a).  "In light of this presumption

of validity, [t]he party challenging the validity of a patent bears the burden of proving invalidity

by clear and convincing evidence." *Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F.

Supp. 3d 171, 181 (S.D.N.Y.) (citation omitted), *appeal dismissed*, No. 18-1769, 2018 WL

11449934 (Fed. Cir. 2018).

15

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry." *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd*, *Bilski v. Kappos*, 561 U.S. 593 (2010). It presents a "pure question of law." *Lumen View Tech. v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 204 (S.D.N.Y. 2013). The Supreme Court has "long held that [§ 101] contains an important implicit exception"—"[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012)). As the Court has memorably illustrated the point: "[A] new mineral discovered in the earth or a new plant found in the wild is not patentable subject matter. Likewise, Einstein could not patent his celebrated law that $E=mc^2$; nor could Newton have patented the law of gravity." *Mayo*, 566 U.S. at 71 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). Monopolization of such "basic tools of scientific and technological work" through the grant of a patent "might tend to impede innovation more than it would tend to promote it." *Id.* (citation omitted). "[T]he concern that drives this exclusionary principle [is] one of pre-emption," as the Supreme Court has "repeatedly emphasized" that patent law should "not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted).

"The Court has recognized, however, that too broad an interpretation of this exclusionary principle could eviscerate patent law." *Mayo*, 566 U.S. at 71. "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice*, 573 U.S. at 217. Rather, a court "must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Id.* (cleaned up).

16

To guide the inquiry into whether a patent is drawn from patent-ineligible subject matter, the Supreme Court has established a two-step framework, sometimes referred to as the *Alice* analysis. *See id.*; *see also Mayo*, 566 U.S. 66.

First, a court must determine "whether the claims at issue are directed to one of [the] patent-ineligible concepts." *Alice*, 573 U.S. at 217. At this step, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Univ. Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) (citation omitted). The Supreme Court has declined "to delimit the precise contours of the 'abstract ideas' category." *Alice*, 573 U.S. at 221. Instead, this category's parameters are commonly derived from a "detailed consideration of the controlling precedents," *Mayo*, 566 U.S. at 80. Abstract ideas include, *inter alia*, "fundamental economic practice[s] long prevalent in our system of commerce," such as "the concept of intermediated settlement," *Alice*, 573 U.S. at 219 (citation omitted), and methods of "organizing human activity," such as hedging to mitigate financial risk, *id.* at 220 (discussing *Bilski*).

Courts have also often found that processes that can be accomplished mentally or within the human mind draw upon abstract ideas. That is because the "application of only human intelligence to the solution of practical problems is no more than a claim to a fundamental principle." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) (alterations omitted) (quoting *Bilski*, 545 F.3d at 965); *see also, e.g., Mortg. Grader*, 811 F.3d at 1324–25. In this vein, the Federal Circuit has "treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

17

In addition, "fundamental economic and conventional business practices are often found to be abstract ideas, even if performed on a computer." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016); *see id.* at 1339 (claims may be invalid at *Alice* step one where "general-purpose computer components are added post-hoc to a fundamental economic practice"); *see also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) ("[I]t is not enough, however, to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool."). And "[a]utomation or digitization of a conventional method of organizing human activity . . . does not bring the claims out of the realm of abstractness." *Weisner v. Google LLC*, 51 F.4th 1073, 1083 (Fed. Cir. 2022). Nonetheless, the Federal Circuit has not "read *Alice* to broadly hold that all improvements in computer-related technology are inherently abstract and, therefore, must be considered at step two"; rather, "some improvements in computer-related technology when appropriately claimed are undoubtedly not abstract, such as a chip architecture, an LED display, and the like." *Enfish, LLC*, 822 F.3d at 1335. In particular, "claims purporting to improve 'the functioning of the computer itself' or 'an existing technological process' might not be directed to an abstract idea." *Weisner*, 51 F.4th at 1082 (quoting *Alice*, 573 U.S. at 225). "[P]atent eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer functionality itself." *Univ. Secure Registry*, 10 F.4th at 1346 (discussing cases involving authentication technology).

If a court determines that claims draw upon a patent-ineligible concept, the court proceeds to step two of the *Alice* analysis. At this step, the court "search[es] for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (citation omitted). As the Supreme Court has framed that inquiry: "[W]hat

18

else is there in the claims before us?" *Id.* at 217 (quoting *Mayo*, 566 U.S. at 78).  To answer that

question, a court considers "the elements of each claim both individually and 'as an ordered

combination' to determine whether the additional elements 'transform the nature of the claim'

into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 78–79).  Applying this logic,

for example, the Court found patent-eligible claims for a process of curing rubber that employed

a "well-known" mathematical equation where the process "incorporate[d] in it a more efficient

solution of the equation." *Diamond v. Diehr*, 450 U.S. 175, 187–88 (1981).

"The introduction of a computer into the claims does not alter the analysis at . . . step

two," and a "computer implementation" does not, on its own, "supply the necessary inventive

concept." *Alice*, 573 U.S. at 222.  As the Federal Circuit has emphasized: "A simple instruction

to apply an abstract idea on a computer is not enough." *Intell. Ventures I LLC v. Cap. One Bank

(USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).  And, it has held, a patent does not constitute a

sufficient inventive concept by "claiming the improved speed or efficiency inherent with

applying the abstract idea on a computer." *Id.*; *see also OIP Techs., Inc. v. Amazon.com, Inc.*,

788 F.3d 1359, 1363 (Fed. Cir. 2015); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can.

(U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).  An inventive concept is also unlikely to exist

when the processes claimed in a patent could be accomplished, even in real time with variable

inputs being affected, by "using a pencil and paper" and a "simple" device. *See Intell. Ventures*,

792 F.3d at 1368–69.

Accordingly, in *Alice*, the Court found patent-ineligible a "claimed method requir[ing]

the use of a computer to create electronic records, track multiple transactions, and issue

simultaneous [automated] instructions" for the purpose of intermediated settlement. *Alice*, 573

U.S. at 224.  In the Court's view, "all of these computer functions are 'well-understood, routine,

19

conventional activities' previously known to the industry." *Id.* at 225 (quoting *Mayo*, 566 U.S. at 73) (alteration omitted). And because "[t]he method claims d[id] not, for example, purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field," the claims "amount[ed] to 'nothing significantly more' than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer." *Id.* at 225–26 (quoting *Mayo*, 566 U.S. at 79). Likewise, the Federal Circuit has found invalid patents directed at "simply adding conventional computer components to well-known business practices." *See Enfish, LLC*, 822 F.3d at 1338 (citing cases).

### C. Legal Principles Governing Patent Infringement

"An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device." *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, 454 F. Supp. 3d 229, 241 (S.D.N.Y. 2020) (quoting *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999)). "To prove infringement, the patentee must show that the accused device meets each claim limitation [of the patent-in-suit], either literally or under the doctrine of equivalents." *Ottah v. Bracewell LLP*, No. 21 Civ. 455 (KPF), 2021 WL 5910065, at *6 (S.D.N.Y. Dec. 10, 2021), *appeal dismissed*, No. 22-39, 2022 WL 2619806 (2d Cir. June 6, 2022), *and aff'd*, No. 22-1876, 2022 WL 16754378 (Fed. Cir. Nov. 8, 2022).

In construing a patent's scope, "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation omitted). "However, district courts are not (and should not be) required to construe every limitation present in a

patent's asserted claims." *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 612 (S.D.N.Y. 2014) (citation omitted). "Rather, [c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims." *Id.* (citation omitted).

To determine the meaning of claims, courts look "first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Where an analysis of the intrinsic evidence fails to resolve ambiguity in a claim, the Court may turn to extrinsic evidence, which consists of "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc). Subject to certain exceptions, there is a "heavy presumption" that each claim term should be construed according to its ordinary and customary meaning, as understood by a person of ordinary skill in the art in question at the time of the invention. *Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1118 (Fed. Cir. 2016) (citation omitted).

A plaintiff claiming patent infringement "need not prove their case at the pleading stage." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1346 (Fed. Cir. 2021). Nor is a plaintiff "required to plead infringement on an element-by-element basis." *Id.* at 1352. However, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Id.* at 1353. "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* "[A]llegations that are 'merely consistent with' infringement are insufficient." *Id.* at 1354 (quoting *Twombly*, 550 U.S.

21

at 557). Instead, the complaint must "give rise to a reasonable inference" that a product infringes

the claims at issue, and "support[] [its] assertions with specific factual allegations." *Id.* at 1356.

## III.   Discussion

RELX moves to dismiss the Amended Complaint on two grounds. First, it argues that

the '810 Patent is invalid as a matter of law under 35 U.S.C. § 101 because it claims an abstract

idea, and simply "automates" the "routine business practice" of tracking time spent on billable

client-related tasks by "using a general, all-purpose computer." Mot. at 2; *see also id.* at 16–23;

Reply at 1–5. Second, it argues that Realtime fails to plausibly allege that Juris Suite, which

requires that the user manually activate the timekeeping function, infringes the Patent, which

claims an invention that detects the initiation of a task without user input. Mot. at 1; *see also id.*

at 12–16. For the following reasons, the Court finds that the Patent is directed toward patent-

ineligible matter and is invalid under § 101, and accordingly grants RELX's motion to dismiss.

### A.   Need for Claim Construction

At the threshold, Realtime argues that RELX premises its arguments on an "inappropriate

and erroneous" construction of its Patent's claims. Opp. at 16. It contends that RELX wrongly

depicts the Patent as limited to detection of the initiation of a billable task without user input.

*See id.* at 16–17. In fact, Realtime states, "the [AC] alleges that the claimed invention covers

computer detection with user input." *Id.* at 16. Realtime argues that it would be improper to

construe the Patent otherwise on RELX's Rule 12(b)(6) motion. *See id.* at 8. RELX counters by

drawing upon the words of the Patent itself. It argues that "[e]ach asserted claim expressly

requires the claimed software *itself* to be capable of 'detecting' when an end user initiates a

client-related task," and thus that the depiction of the Patent by Realtime in this litigation entails

a "wholesale rewriting of the claims." Reply at 2–3; *see also id.* at 4–5.

22

There is much force to RELX's characterization of the Patent. The Patent's claims do not themselves say anything about user input to initiate operation of the invention. Measured by the claims, the role of the user under the Patent appears to be limited to initiating the underlying billable task, with the patented invention thereupon detecting that such work had commenced. There are, however, references to the user in an embodiment described in the Patent, on the basis of which a tenable if tenuous argument conceivably could be made that, as the AC depicts the Patent, user initiation is assumed.[4] And where a claim requires construction, the Court cannot resolve a claim construction dispute against the non-movant on a motion to dismiss without the benefit of claim construction processes. *See, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349–50 (Fed. Cir. 2018); *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012) ("[C]laim construction at the pleading stage—with no claim construction processes undertaken—was inappropriate."); *see also In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) ("[T]here is a strong presumption against a claim construction that excludes a disclosed embodiment."); *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018) (court need not entertain proposed construction where claim "cannot plausibly be construed" as such).

The Court, accordingly, on RELX's motion to dismiss, will accept, *arguendo*, Realtime's construction in the AC of the Patent as encompassing user-driven detection of the initiation of a task. On that basis, it is appropriate to resolve the motion to dismiss—and to grant it, on the ground that, as the following discussion explains, even on Realtime's construction, the claims at

---

[4] *See* Patent at 15 ("In another embodiment, a professional may be given the option of recording billable time for a particular document, service or task. . . . A precursor request can be configured to appear[,] . . . requesting the professional whether the document, service or task should be billed."); *see also* Opp. at 14–15 (citing specifications involving user input).

23

issue are drawn to patent-ineligible subject matter. Claim construction "is not an inviolable

prerequisite to a validity determination under § 101." *Bancorp Servs.*, 687 F.3d at 1273; *see*

*also, e.g.*, *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed.

Cir. 2020); *Cleveland Clinic Found.*, 859 F.3d at 1360 (citing cases). And where the invention

disclosed is invalid "under any reasonable construction," *DietGoal Innovations LLC v. Bravo*

*Media LLC*, 33 F. Supp. 3d 271, 289–90 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 956 (Fed. Cir.

Apr. 8, 2015) (per curiam), there is no need for the Court to undertake claim construction. The

Court's analysis accordingly proceeds to consider the validity of the claimed invention under

§ 101 under each construction that has been offered: that the Patent encompasses user input to

detect initiation of a task (Realtime) and that it does not (RELX). *See Guvera IP Pty. Ltd. v.*

*Spotify, Inc.*, No. 21 Civ. 4544 (JMF), 2022 WL 4537999, at *6 (S.D.N.Y. Sept. 28, 2022)

(finding no need for claim construction before ruling on eligibility where party failed to show

how it would benefit from any particular construction), *reconsideration denied sub nom. Guvera*

*IP Pty. Ltd. v. Spotify USA, Inc.*, 2022 WL 16963168 (S.D.N.Y. Nov. 16, 2022).

### B.     Validity of the Claims at Issue

RELX, making arguments under both steps of the *Alice* analysis, argues that the claims at

issue are drawn to patent-ineligible subject matter. Under step one, RELX argues that the

asserted claims are drawn to "keeping track of time spent on billable client-related tasks," and

that this quotidian and "longstanding business practice" constitutes an abstract idea. Mot. at 17;

*see id.* at 18 (citing cases); Reply at 6–7. Under step two, RELX argues that the claims at issue

do not transform this abstract idea into a patent-eligible application, because the claims simply

implement the idea by presupposing "some unspecified, generic computer." Mot. at 20 (quoting

*Alice*, 573 U.S. at 225–26); *see id.* at 21–23.

Realtime counters that the AC contains sufficient allegations that the claimed invention is a "technological improvement in computer technology and capability." Opp. at 18. Thus, Realtime argues, it is patent-eligible under step one of the *Alice* analysis, and there is no need to reach step two of the analysis. *Id.* at 18–19. In support, Realtime cites language from the AC and the Patent stating that the claimed invention "employs a significant improvement to the capability of the computer system" and addresses deficiencies in prior art. *See id.* at 20–22 (quoting AC). Realtime rejects RELX's "overgeneralize[d]" characterization of the Patent as addressed to timekeeping for billable tasks. *Id.* at 22. It argues that timekeeping of tasks *in seriatim* and simultaneously, and for multiple clients, could not be performed absent the claimed invention. *Id.* at 23–24.

For the reasons that follow, the Court agrees with RELX that the claims at issue are directed toward an abstract idea and lack an inventive concept, and that the Patent is therefore invalid under § 101.

### 1.    *Alice* Step One: Whether Claims Are Directed Toward a Patent-Ineligible Concept

Under step one of the *Alice* analysis, the Court must determine "whether the claims at issue are directed to [a] . . . patent-ineligible concept[]." *Alice*, 573 U.S. at 217. The Court has carefully considered the claims of the Patent, and undertaken a "detailed consideration of the controlling precedents" most apposite to it. *Mayo*, 566 U.S. at 80. The Court finds the claims at issue to be directed to a patent-ineligible abstract idea or mental process.

The Patent claims a method for tracking and recording, in real time, the time spent by an individual on billable tasks—that is, detecting the initiation of a task, generating a timekeeper entry box containing information about the task, and contemporaneously tracking time spent via a running clock that can start, pause, and end timekeeping on tasks performed sequentially or

25

simultaneously.  *See* Patent at 17–18.  In essence, the Patent recites the abstract concept of

timekeeping for compensation.  Such is a "fundamental economic practice long prevalent in our

system of commerce," *Alice*, 573 U.S. at 219 (citation omitted), to which professionals in

numerous fields in which client billing is commonly based on unit of time worked (for example,

lawyers, accountants, and architects) could attest.  This concept is fairly equated to concepts that

the Supreme Court, the Federal Circuit, and lower courts have found to reflect abstract ideas that

lack protection under § 101.  These include intermediated settlement, *see generally id.*; risk-

hedging, *see Bilski*, 561 U.S. at 609–11; task generation in a field entailing recurrent projects,

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1339–40 (Fed. Cir.

2013); data collection, analysis, and storage, *Rady v. Bos. Consulting Grp., LLC*, No. 20 Civ.

2285 (ALC), 2022 WL 976877, at *2–3 (S.D.N.Y. Mar. 31, 2022); and the automated process of

sending reminders to clients and receiving responses, *see WhitServe LLC v. Donuts Inc.*, 809 F.

App'x 929, 933 (Fed. Cir. 2020) (finding claimed methods to be directed to a "fundamental

economic practice involving simple information exchange" and thus drawn to abstract idea).

    To be sure, the modern professional services environment that gave rise to Realtime's

claimed invention differs in mechanics and optics from the historical settings in which humans

have recorded time for a commercial purpose.  But, whether by quill or by computer, humans

have undertaken such timekeeping for client or customer benefit for centuries.  In this respect,

too, the Patent claims here are problematic under § 101, as that provision has been given

meaning by the case law.  *See, e.g.*, *DietGoal Innovations LLC*, 33 F. Supp. 3d at 284 (finding

claimed invention for meal planning to be drawn to abstract idea engaged in by humans "for

millennia" (citation omitted)); *Lumen View*, 984 F. Supp. 2d at 200 (finding claimed method for

matchmaking to be mathematical manifestation of fundamental process performed "all through

human history"); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004–05 (Fed. Cir. 2017) (upholding claims for graphical user interface displaying information about market commodities in part because it was "not an idea that has long existed"). That the claims as drawn do not literally "preempt all" such timekeeping and purport to limit themselves to a professional services setting does "not make them any less abstract." *OIP Techs.*, 788 F.3d at 1362–63 (citing cases); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (holding that claims "squarely about creating a contractual relationship" drew on idea of "ancient lineage," even where dependent claims "narrow[ed] to particular types of such relationships").

Realtime defends the Patent on the ground that the claimed invention is "not directed to *any* form of 'recording time'" and instead is "a specific improvement to computer systems and capabilities" that "fix[es] a specific problem in the prior art." Opp. at 20–21. It contends that the invention's "specific, structured front end user interface combined with a backend computer functionality" brings "a significant improvement to the capability of the computer system as a whole" and thus constitutes patentable subject matter. *Id.* at 20 (quoting AC ¶ 12); *see also id.* at 21–24.

These locutions, by which the Patent essentially envisions in the broadest terms that a computer will take on the familiar components of human timekeeping work, do not salvage the Patent under § 101. A review of the Patent's claims "in their entirety," *Univ. Secure Registry*, 10 F.4th at 1346 (citation omitted), makes apparent that the "focus of the claims" is not on the "specific asserted improvement in computer capabilities," *Enfish*, 822 F.3d at 1336, but rather the abstract idea of timekeeping through the use of generic computer parts. The Patent

27

effectively says as much. *See, e.g.*, Patent at 14–15 (stating that invention can be implemented on "[a]ny computer device" with processor, memory, clock, input/output devices).

Even the most ostensibly novel aspects of the claimed invention—such as the invention's assumed capacity to detect the initiation, pause, or cessation of a task; its assumed capacity to record time spent on simultaneous tasks; and its assumed integration with a separate accounting or billing system—do not change this result. These generalized claims do not "recite any assertedly inventive technology for improving computers as tools"; rather, the Patent's use of broad computer terminology, while avoiding preempting the underlying concepts of starting, completing, quantifying, and memorializing timekeeping, do no more than announce that a computer will carry out those prosaic tasks. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344 (Fed. Cir. 2018). The embodiments in the Patent describe automatic participation by a computer—alongside, depending on how the Patent is read, some or no user input—in the timekeeping process. But they do not themselves represent or describe improvements in computing systems. They do not describe specific new technology or a new method that improves the computer's functionality. *Cf. Quantum Stream Inc.*, 309 F. Supp. 3d at 186. Because the Patent's claims "are recited only at the broadest, functional level, without explaining how [each function] is accomplished, let alone providing a technical means for performing that function," *Interval Licensing*, 896 F.3d at 1346, they lack "sufficient specificity to constitute an improvement to computer functionality itself," *Univ. Secure Registry*, 10 F.4th at 1346.

For these reasons, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), on which Realtime relies, does not assist its cause. There, the Federal Circuit upheld as valid a patent for "an innovative logical model for a computer database." *Enfish*, 822 F.3d at 1330. It did so on the basis that "the plain focus of the claims is on an improvement to computer

functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. In particular, the Federal Circuit reasoned, because the claims at issue were "not simply directed to *any* form of storing tabular data, but instead [we]re specifically directed to a *self-referential* table for a computer database" that "functions differently than conventional database structures," the claims were "directed to an improvement of an existing technology" through "improv[ing] the way a computer stores and retrieves data in memory." *Id.* at 1337, 1339; *see also, e.g., CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020) (upholding at *Alice* step one cardiac monitoring device that "achieve[d] multiple technological improvements"); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1360, 1362 (Fed. Cir. 2018) (upholding at *Alice* step one claims that "recite[d] a specific improvement over prior systems, resulting in an improved user interface for electronic devices," and included concepts such as "summary window" and "unlaunched state" that are "specific to devices like computers and cell phones"). The *Enfish* court's warning against "describing [] claims at such a high level of abstraction and untethered from the language of the claims" such that "the exceptions to § 101 swallow the rule" is well taken. 822 F.3d at 1337. But here, it is not the Court's description, but the claims within the Patent itself, that announce the Patent's high level of abstraction. By their terms, these unavoidably are focused on the "economic . . . task[] for which a computer is used in its ordinary capacity," *id.* at 1336—tracking and recording time spent on billable tasks—rather than on a "specific improvement to computer functionality," *id.* at 1338.

More apposite is *Weisner v. Google LLC*, 51 F.4th 1073 (Fed. Cir. 2022). There, the Federal Circuit found that claims for "creating a digital travel log" were directed to an abstract idea. *Weisner*, 51 F.4th at 1082. It cited with approval the district court's observation that

29

"[h]umans have consistently kept records of a person's location and travel in the form of travel logs, diaries, journals, and calendars." *Id.* It held that the claimed invention's ability to "automatically record[] physical interactions" and "limit[] what is recorded to only specific types of interactions" did not render the claims non-abstract. *Id.* And, the Federal Circuit held, the claims' recitation of "a number of generic elements—including a processing system, an application, and a handheld mobile communication device—d[id] not shift their focus away from the core idea of creating a digital travel log." *Id.* at 1083. Similarly here, the claims at issue are directed to the abstract idea of recording human activities. The automation of this work through generic computing device, without more, does not "shift their focus away from the core idea," *id.*, of keeping time as to billable tasks.

Also instructive is *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). There, the Federal Circuit considered a claimed method for "detecting events on an interconnected electric power grid in real time over a wide area and automatically analyzing the events on the interconnected electric power grid." *Id.* at 1351. Like the claims in the Patent here, those in *Electric Power Group* involved the use of computers to automatically detect events and generate information based on those events. Nonetheless, the Federal Circuit held that these failed at step one of the *Alice* analysis. The claims, it explained, were "clearly focused on the combination of" various "abstract-idea processes," rather than on "an improvement in computers as tools." *Id.* at 1354; *see also, e.g.*, *Intell. Ventures*, 792 F.3d at 1367–68 (finding claims for financial budgeting, even through use of Internet and telephone networks, to be directed to abstract idea). Like those in *Electric Power Group*, Realtime's claims "defin[e] a desirable . . . result," *Elec. Power Grp.*, 830 F.3d at 1351, but they lack sufficient detail as to how to conduct the claimed steps, including how to detect the initiation of a task and how to

integrate the information into a billing system. *See, e.g., Trading Techs.*, 675 F. App'x at 1005

("[I]neligible claims generally lack steps or limitations specific to solution of a problem.");

*Guvera*, 2022 WL 4537999, at \*5 (summarizing *Electric Power Group* and noting that a patent's

claim of "*results* rather than a specific method reaffirms the conclusion that it is directed to an

abstract idea").

      Realtime also notes that its Patent covers the contemporaneous timekeeping of tasks

performed *in seriatim* or simultaneously, for multiple clients, and by one or more individuals.

These functions, it states, "would not be possible to achieve for one or more individuals in the

absence of the claimed invention." AC ¶ 22; *see also* Opp. at 21, 24. This argument does not

salvage the Patent, either. It is not clear why such timekeeping could not be performed by a

human being (or two) using his or her mind or basic tools such as a pen, paper, and basic timer or

clock. *Cf., e.g., CyberSource Corp.*, 654 F.3d at 1371–723 *Mortg. Grader*, 811 F.3d at 1324–25

(finding invalid claimed invention for anonymous loan shopping where steps "could all be

performed by humans without a computer"). And the Patent's claimed methods for recording

the time spent on billable tasks, even applied to multiple tasks, simultaneous tasks, or tasks for

multiple clients, merely amount to a computerized means of the conventional, quotidian labor of

keeping a record of the time spent on tasks. There is nothing specialized or special about the

method described for doing so. *Contra CardioNet, LLC*, 955 F.3d at 1371 (upholding claimed

cardiac monitoring device in part because it was "difficult to fathom how doctors mentally or

manually used" logic underlying the device).

      In so holding, the Court recognizes that the claimed invention—if construed, contrary to

Realtime's most recent characterization, to automatically detect the initiation and cessation of a

task rather than be triggered by human initiation—may have utility. It could reduce the time a

31

professional spends recording and reporting billable hours, freeing up time for other pursuits. That, however, is not enough to satisfy § 101. Under *Alice*, the mere"[a]utomation or digitization of a conventional method of organizing human activity . . . does not bring the claims out of the realm of abstractness," *Weisner*, 51 F.4th at 1083; *see also WhitServe LLC*, 809 F. App'x at 933 (finding claims invalid at step one of *Alice* analysis, even where use of computers enabled performance "more speedily, more efficiently, more reliably," because "focus of the claims" was to "use computers and a familiar network as a tool to perform a fundamental economic practice"). And "improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality." *Customedia Techs.*, 951 F.3d at 1365. In sum, Realtime's claimed invention certainly imagines "a new and presumably better method," *Parker v. Flook*, 437 U.S. 584, 594 (1978), for the timekeeping of billable tasks. But because it is directed at that abstract idea, it does not constitute the kind of "discovery" that § 101 was designed to protect, *id.* at 593.

### 2. *Alice* Step Two: Whether Claims Contain an "Inventive Concept" Transforming the Abstract Idea into Patent-Eligible Application

The Court next considers whether the Patent's claims capture an "inventive concept" capable of transforming the abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 217 (citation omitted). This inquiry overlaps with—and is "plainly related" to—the first step and "look[s] more precisely at what the claim elements add." *Elec. Power Grp.*, 830 F.3d at 1353. Realtime does not distinctly address this step of the analysis, relying instead on its contention, which the Court has rejected, that the Patent survives step one of the *Alice* analysis. Having assessed the elements of the claims "both individually and as an ordered combination," *Alice*, 573 U.S. at 217 (citation omitted), the Court finds that they do not ensure that the patent amounts

32

to "significantly more," *id.* at 218 (citation omitted), than a patent on the abstract idea of timekeeping of billable tasks, and that the claims are thus invalid.

Although there are slight variations across the embodiments, the claims at issue, and the "Detailed Description of the Invention" section of the Patent and the flowcharts contained in figures 8 and 9, describe a computerized process in roughly six parts. The process entails (1) detecting the initiation of a task, (2) contemporaneously generating an individual timekeeper entry box that contains (either through automatic extraction or manual input) relevant information about the task, (3) tracking time spent on the task through a running clock, (4) detecting the pause, restart, and cessation of the task, (5) storing and integrating a record of the time spent on the task into an accounting and billing system, and (6) producing a daily report of the billable tasks, for tasks performed *in seriatim* and simultaneously. *See* Patent at 10–11, 14–19. As summarized, the claimed methods can be implemented on "[a]ny computer device" and "in software or hardware or both," with implementation requiring various computer components, including a processor, RAM, ROM, clock, and input/output devices. *Id.* at 14–15.

That, however, is all. Considered "individually and as an ordered combination," *Alice*, 573 U.S. at 217 (citation omitted), the claimed sequence of steps does not constitute an "inventive concept," *id.* (citation omitted). The claims describe a generic timekeeping process facility by the mere application of generic computer components. The functions to be performed are "well-understood, routine, conventional activities previously known to the industry," *id.* at 225 (citation and alteration omitted), specifically professionals who track time for their clients. These activities are: logging time spent on billable tasks, creating records of billable hours, and displaying those hours in a digestible format.

33

The asserted claims also neither "invoke any assertedly inventive programming," nor "require any nonconventional computer, network, or display components, or even a non-conventional and non-generic arrangement of known, conventional pieces," *Elec. Power Grp.*, 830 F.3d at 1355 (citation omitted). *See, e.g.*, *Weisner*, 51 F.4th at 1083–84 (finding specification "describ[ing] the components and features listed in the claims generically," for example, by referencing "methods such as Bluetooth" and "any other handheld electronic device," to lack inventive concept); *WhitServe LLC*, 809 F. App'x at 934 (finding claims lacked inventive concept where they "require[d] only generic components," such as a computer, database, and software "to perform their routine and conventional functions"). This case is thus well afield from those in which a patent claims "a specific improvement" to technology and "requir[es] a specific set of ordered steps that [went] beyond the abstract idea," *CosmoKey Sols. GmbH & Co. KG v. Duo Sec., Inc.*, 15 F.4th 1091, 1098–99 (Fed. Cir. 2021) (upholding "technical solution to a security problem in networks and computers" that offered "technical improvement over conventional authentication methods"). Rather, here, the claims describe the same processes a practitioner would use for timekeeping, and "simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *DietGoal Innovations*, 33 F. Supp. 3d at 287 (quoting *Alice*, 573 U.S. at 225).

In this respect, the Supreme Court's decision in *Alice* is an instructive analog. It found nonprotected claims that did "no more than require a generic computer to perform generic computer functions," such as by performing the "generic" functions of "electronic recordkeeping," "obtain[ing] data," and "issu[ing] automated instructions." *Alice*, 573 U.S. at 225. These functions are akin to those the Patent asserts here. The Federal Circuit has likewise invalidated claims that essentially substituted conventional computer components for the garden-

34

variety business practices of gathering, storing, and displaying information. *See, e.g.*, *Mortg. Grader, Inc.*, 811 F.3d at 1324–25 (finding invalid claims applying "generic computer components" to perform "anonymous loan shopping," where claims did not purport to "improve the functioning of the computer, "effect an improvement in any other technology," nor "solve a problem unique to the Internet" (citations omitted)); *OIP Techs.*, 788 F.3d at 1363 (finding claims failed to transform abstract idea of offer-based price optimization to inventive concept where they "requir[ed] conventional computer activities or routine data-gathering steps"); *buySAFE, Inc.*, 765 F.3d at 1355 (similar, for contract performance).

Realtime casts the Patent differently.  The Patent, in its account, responds to the "endemic problem in all professional service related companies and businesses involving '[t]he absence of a computer system which monitors billable time for every . . . task undertaken . . . contemporaneous with the service being performed.'" AC ¶ 16 (quoting Patent at 13).  But this gloss does not salvage the non-inventive Patent here.  "Even if the patent[] . . . envision[s] a more elegant or efficient system . . . the relevant 'precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility.'" *Quantum Stream*, 309 F. Supp. 3d at 187 (quoting *Intell. Ventures*, 792 F.3d at 1370).  *See, e.g.*, *Intell. Ventures*, 792 F.3d at 1368 (finding claims for financial budgeting to lack inventive concept where they merely recited "generic computer elements" and budgeting calculations at issue "could still be made using a pencil and paper" (citation omitted)); *Bancorp Servs.*, 687 F.3d at 1278 (finding claims patent-ineligible, even though required calculations could be performed more efficiently via computer, where "claims do not effect a transformation").  And, as noted, a human operator could perform the claimed timekeeping using familiar implements—as humans have long done—albeit potentially at a slower pace than the

35

Patent envisions a computer working. *See Quantum Stream*, 309 F. Supp. 3d at 187 (claims'

disclosure of "steps that could be performed by a human operator . . . weighs against [the

plaintiff] at step two"); *cf., e.g., In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022) (finding

invalid claims that did "not detail how the computer should go about determining eligibility for

benefits" and instead required "same process that humans seeking to determine benefit eligibility

must follow either with or without a computer"); *WhitServe LLC*, 809 F. App'x at 933 (finding

claims lacked inventive concept where specification stated claimed steps were "oftentimes"

practiced by professionals).

The asserted claims therefore do not contain an inventive concept sufficient to

"transform" the abstract idea of timekeeping of billable tasks into "into a patent-eligible

application," *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 79).

### 3.   Application to All Asserted Claims

The Court's above analysis has used claim 29 as representative and has drawn on the

Patent's language as a whole. This analysis extends to each of the method and computer

readable medium independent claims at issue, and their dependent claims. That is because, as

noted, independent claims 1 and 26 call for the same method as does claim 29—the distinction

being only that timekeeping is described as taking place on a document-by-document or client

service-by-client service basis, respectively. The respective dependent claims merely add

specificity about potential attributes of the methods. And the language of the computer readable

medium claims is functionally identical to that of the method claims. The "only difference" is

"the form in which they were drafted," *Bancorp Servs.*, 687 F.3d at 1277. Thus, these claims

"must be treated as equivalent for purposes of the § 101 analysis." *DietGoal Innovations*, 33 F.

Supp. 3d at 288 (citing cases); *see also Alice*, 573 U.S. at 226 (holding invalid computer system

36

and computer readable medium claims—which recited "purely functional and generic" hardware—for "substantially the same reasons" as for method claims).

## CONCLUSION

For the foregoing reasons, the Court finds that the claims at issue are drawn to patent-ineligible subject matter and invalid under § 101. The Court accordingly grants RELX's motion to dismiss the Amended Complaint. This ruling, by its nature, turns on an inherent deficiency in the Patent itself. It is not remediable by a differently drafted Second Amended Complaint. The Court's dismissal is therefore with prejudice.

In light of this ruling, the Court does not have occasion to resolve the parties' arguments as to whether Juris Suite infringes the Patent, if valid.[5] *See, e.g., RDPA, LLC v. Geopath, Inc.,* 543 F. Supp. 3d 4, 25 (S.D.N.Y. 2021).

---

[5] A brief comment on Realtime's infringement claims is worthwhile, insofar as it exposes a separate flaw in the AC. The Court has held the claims at issue patent-ineligible. However, in defending the Patent as viable, Realtime has depicted a particular ingredient of the invention—its ability to automatically detect the initiation of a task and extract information related to the task—as part of the Patent's innovative quality. *See* AC ¶ 12 (stating the Patent claims "back end computer processing to automatically detect, time and record billable time"); *see also id.* ¶ 16 (stating Patent addresses "endemic problem" involving absence of system to contemporaneously monitor billable time). Assuming *arguendo* that that Patent had been held viable on this basis, Realtime's AC would still fail to state a claim, because, tellingly, it has not plausibly alleged that Juris Suite can perform that function. *Cf. Bot M8 LLC,* 4 F.4th at 1354 (plaintiff's allegations "reveal[ed] an inconsistency that is fatal to its infringement case," where claims required program to be stored separate from the motherboard and plaintiff alleged that defendant's product stored program within the motherboard). For this reason, RELX asserts persuasively that the AC does not plausibly allege infringement. It notes that each of the six independent claims alleged to be infringed require detection of the initiation of a task without user input, whereas Juris Suite does not perform such detection. *See* Mot. at 12–16; *see also* Reply at 1–5.

Realtime counters that the AC's conclusory claim that Juris Suite "detects initiation of a telephone call" and includes code for doing so must be treated as true. Opp. at 9–12 (citing AC ¶ 31 and AC's claims charts). But the "mere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal/Twombly* standard." *Bot M8 LLC,* 4 F.4th at 1355 (affirming that plaintiff failed to allege infringement where complaint's allegations were "conclusory, merely track[ed] the claim language, and d[id]

37

The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 11 and 18 and close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: March 7, 2023
　　　 New York, New York

---

not plausibly allege" that the defendant's product had the claimed trait).  The AC's contention to this effect is, in fact, affirmatively undermined by the video cited by Realtime.  It indicates that Juris Suite requires a user command to signal the initiation of a task.  *See* Juris Suite Video at 00:56–1:08 (narrator pressing a button to start the timer for hypothetical scenario in which professional is speaking with a client); 1:45–1:56 (noting that a professional can "start a new timer" if they begin a task related to a different client).

38

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
REALTIME TRACKER, INC.,

                              Plaintiff,

          -against-                                                21 **CIVIL** 8815 (PAE)

                                                                   <u>**JUDGMENT**</u>

RELX INC., doing business as Lexis Nexis,

                              Defendant.
-------------------------------------------------------------X

          It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons

stated in the Court's Opinion & Order dated March 7, 2023, the Court finds that the claims at

issue are drawn to patent-ineligible subject matter and invalid under § 101. The Court has

granted RELX's motion to dismiss the Amended Complaint. This ruling, by its nature, turns on

an inherent deficiency in the Patent itself. It is not remediable by a differently drafted Second

Amended Complaint. The Court's dismissal is therefore with prejudice. In light of this ruling, the

Court does not have occasion to resolve the parties' arguments as to whether Juris Suite infringes

the Patent, if valid. See, e.g., RDPA, LLC v. Geopath, Inc., 543 F. Supp. 3d 4, 25 (S.D.N.Y.

2021); accordingly, the case is closed.

**Dated:**  New York, New York

          March 7, 2023

                                                  **RUBY J. KRAJICK**

                                        _____
                                                  **Clerk of Court**

                              **BY:**   _K. Mango_
                                        _____
                                                  **Deputy Clerk**



**United States District Court
Southern District of New York**

Ruby J. Krajick
*Clerk of Court*

Dear Litigant:

Enclosed is a copy of the judgment entered in your case. If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $505 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted*. If you are unable to pay the $505 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/**.

**THE DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312**

**THE CHARLES L. BRIEANT, JR.
UNITED STATES COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NY 10601-4150**

Rev. 5/23/14

Appx40

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (     )(     )

**NOTICE OF APPEAL**

Notice is hereby given that the following parties: _____

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the     ☐ judgment   ☐ order    entered on: _____

(date that judgment or order was entered on docket)

that: _____

_____

(If the appeal is from an order, provide a brief description above of the decision in the order.)

| | |
|---|---|
| _____ | _____ |
| Dated | Signature[*] |

_____

Name (Last, First, MI)

| | | | |
|---|---|---|---|
| _____ | City | State | Zip Code |
| Address | | | |

| | |
|---|---|
| _____ | _____ |
| Telephone Number | E-mail Address (if available) |

_____

[*] Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.

Rev. 12/23/13

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____                     _____CV_____ (       )(       )

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-                                   **MOTION FOR EXTENSION
OF TIME TO FILE NOTICE
OF APPEAL**

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

I move under Rule 4(a)(5) of the Federal Rules of Appellate Procedure for an extension of time

to file a notice of appeal in this action. I would like to appeal the judgment

entered in this action on _____ but did not file a notice of appeal within the required

        date

time period because:

_____

_____

_____

(Explain here the excusable neglect or good cause that led to your failure to file a timely notice of appeal.)

_____            _____

Dated:                                   Signature

_____

Name (Last, First, MI)

_____

Address                 City                State                Zip Code

_____            _____

Telephone Number                         E-mail Address (if available)

Rev. 3/27/15

Appx42

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (      )(      )

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

I move under Federal Rule of Appellate Procedure 24(a)(1) for leave to proceed *in forma pauperis* on appeal. This motion is supported by the attached affidavit.

_____          _____
Dated                                                         Signature

_____
Name (Last, First, MI)

_____
Address                              City                    State                    Zip Code

_____          _____
Telephone Number                                    E-mail Address (if available)

Rev. 12/23/13

Appx43

# Application to Appeal In Forma Pauperis

_____v. _____     Appeal No. _____

District Court or Agency No. _____

| Affidavit in Support of Motion | Instructions |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.)<br><br>Signed: _____ | Complete all questions in this application and then sign it.  Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.<br><br>Date: _____ |

My issues on appeal are: (<u>required</u>):

1.  _For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise._

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | <u>Spouse</u> | You | <u>Spouse</u> |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property (such as rental income) | $ | $ | $ | $ |

- 1 -

| | | | | |
|---|---|---|---|---|
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ | $ | $ | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance (such as welfare) | $ | $ | $ | $ |
| Other (specify): | $ | $ | $ | $ |
| **Total monthly income:** | **$ 0** | **$ 0** | **$ 0** | **$ 0** |

2.     *List your employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

3.     *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

4.      *How much cash do you and your spouse have? $_____*

   *Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

**If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.  If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.**

5.      *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
|  |  | Make and year: |
|  |  | Model: |
|  |  | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| Make and year: |  |  |
| Model: |  |  |
| Registration #: |  |  |

Appx46

6.      *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |

7.      *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

8.      *Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

|  | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home)<br>        Are real estate taxes included?        [  ] Yes  [  ] No<br>        Is property insurance included?        [  ] Yes  [  ] No | $ | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ |
| Home maintenance (repairs and upkeep) | $ | $ |
| Food | $ | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |

- 4 -
Appx47

| | | | |
|---|---|---|---|
| Transportation (not including motor vehicle payments) | | $ | $ |
| Recreation, entertainment, newspapers, magazines, etc. | | $ | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | | |
| | Homeowner's or renter's: | $ | $ |
| | Life: | $ | $ |
| | Health: | $ | $ |
| | Motor vehicle: | $ | $ |
| | Other: | $ | $ |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | | $ | $ |
| Installment payments | | | |
| | Motor Vehicle: | $ | $ |
| | Credit card (name): | $ | $ |
| | Department store (name): | $ | $ |
| | Other: | $ | $ |
| Alimony, maintenance, and support paid to others | | $ | $ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | | $ | $ |
| Other (specify): | | $ | $ |
| **Total monthly expenses:** | | **$ 0** | **$ 0** |

9.  *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

    [  ] Yes        [  ] No        If yes, describe on an attached sheet.

10. *Have you spent — or will you be spending —any money for expenses or attorney fees in connection with this lawsuit?* [  ] Yes [  ] No

    *If yes, how much?* $ _____

11.     *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12.     *Identify the city and state of your legal residence.*

City _____     State _____

Your daytime phone number: _____

Your age: _____     Your years of schooling: _____

Last four digits of your social-security number: _____


US008229810B2

## (12) United States Patent
Butera et al.

(10) Patent No.: **US 8,229,810 B2**
(45) Date of Patent: **Jul. 24, 2012**

(54) **REALTIME BILLABLE TIMEKEEPER METHOD, SYSTEM AND APPARATUS**

(76) Inventors: **Cynthia S. Butera**, Smithtown, NY (US); **Celeste M. Butera**, Huntington, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1283 days.

(21) Appl. No.: **10/787,607**

(22) Filed: **Feb. 25, 2004**

(65) **Prior Publication Data**

US 2005/0187839 A1 Aug. 25, 2005

(51) **Int. Cl.**
*G06F 15/02* (2006.01)
*G07C 1/10* (2006.01)

(52) **U.S. Cl.** ........................................... **705/32**

(58) **Field of Classification Search** ..................... 705/32
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,593,008 A * | 7/1971 | De Witt et al. | ................. | 705/11 |
| 5,388,211 A * | 2/1995 | Hornbuckle | ................. | 717/178 |
| 5,493,492 A * | 2/1996 | Cramer et al. | ................. | 705/32 |
| 5,646,839 A * | 7/1997 | Katz | ................. | 379/142.11 |
| 5,963,912 A * | 10/1999 | Katz | ................. | 705/7 |
| 5,991,742 A | 11/1999 | Tran | | |
| 6,289,317 B1 * | 9/2001 | Peterson | ................. | 705/7 |
| 6,338,097 B1 * | 1/2002 | Krenzke et al. | ................. | 719/329 |
| 6,427,140 B1 * | 7/2002 | Ginter et al. | ................. | 705/80 |
| 6,622,128 B1 | 9/2003 | Bedell et al. | | |
| 6,895,438 B1 * | 5/2005 | Ulrich | ................. | 709/227 |

| | | | | |
|---|---|---|---|---|
| 7,010,493 B2 * | 3/2006 | Yamamoto et al. | ................. | 705/1 |
| 7,233,919 B1 * | 6/2007 | Braberg et al. | ................. | 705/32 |
| 7,577,571 B2 * | 8/2009 | Yui | ................. | 705/1 |
| 7,620,162 B2 * | 11/2009 | Aaron et al. | ................. | 379/111 |
| 7,623,985 B2 * | 11/2009 | Finch et al. | ................. | 702/178 |
| 2001/0042032 A1 * | 11/2001 | Crawshaw et al. | ................. | 705/32 |
| 2002/0069145 A1 | 6/2002 | Collado et al. | ................. | 705/32 |
| 2002/0174134 A1 * | 11/2002 | Goykhman | ................. | 707/104.1 |
| 2003/0069815 A1 * | 4/2003 | Eisenberg et al. | ................. | 705/32 |
| 2003/0074286 A1 * | 4/2003 | Rodrigo | ................. | 705/32 |
| 2003/0225989 A1 | 12/2003 | Licalsi | | |
| 2004/0019542 A1 * | 1/2004 | Fuchs et al. | ................. | 705/32 |
| 2004/0024666 A1 * | 2/2004 | Walker et al. | ................. | 705/32 |
| 2005/0021429 A1 * | 1/2005 | Bates | ................. | 705/32 |

OTHER PUBLICATIONS

"Accu-Sort Shows New Shop Floor Data Collection System That Combines Flexibility, Simplicity, and Economy." Accu-Sort System, Inc.Journal, Nov. 1, 1988.*
www.sphericaltech.com/automatic-timesheet.asp.
www.sphericaltech.com/timesheet-logger-faq.asp.

* cited by examiner

*Primary Examiner* — Matthew S. Gart
*Assistant Examiner* — Oluseye Iwarere
(74) *Attorney, Agent, or Firm* — Tony V. Pezzano; King & Spalding

(57) **ABSTRACT**

A computer method, system and apparatus for generating and tracking time expended by professionals in providing services to their clients on a realtime basis with all services performed through use of a computer including the realtime tracking and generation of billing entries with respect to the daily generation of Internet-based and local area network (LAN) documents and other Internet-based services such as preparation of e-mails and legal research, through integration with existing computer-based systems and programs.

**40 Claims, 10 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



**FIG. 7**

TIMEKEEPER ENTRY BOX™

| Field | Value | Ref |
|---|---|---|
| Date | 01-01-04 | 710 |
| Client Identifier | | 720 |
| Personal Code | | 730 |
| Document Type | E-mail | 740 |
| Author(s) | John Doe | 750 |
| Recipient(s) | Sandy Johnson | 760 |
| Detailed Description | Draft e-mail to Client re meeting | 770 |
| Start Time | 11:45 am | 780 |
| End Time | | 790 |
| Total Time | | 795 |

700

Pause    End    Erase



FIG. 8



FIG. 9



FIG. 10

# REALTIME BILLABLE TIMEKEEPER METHOD, SYSTEM AND APPARATUS

## FIELD OF THE INVENTION

The present invention relates to a timekeeping and tracking computer method, system and apparatus on a document-by-document, task-by-task, realtime basis for the purpose of generating associated billing information for an individual services-related professional. The invention also permits the individual to control the time allocated and the description for each document, whether Internet-based or local area network (LAN) based, or task, on a realtime basis through a timekeeper entry box generated for each such document and task.

## BACKGROUND OF THE INVENTION

Electronic time and billing and/or cost systems have evolved from the traditional time log manually recorded on blank sheets of paper or on pre-formatted paper forms. Such systems have been in a constant state of flux and evolution since the introduction of computer technology into the professional working environment.

Today, virtually one hundred percent of the documents that are generated and stored in professional offices are computer generated. The need for a realtime computer generated time and billing system for the individual professional is thus essential in today's working environment. This is particularly true for attorneys and other service-related professionals who bill clients based on an hourly rate for time spent on a particular matter where hourly rates vary for each professional, and thus, it is essential to record and bill each professional's time on an individual basis.

Moreover, in an increasingly cost conscious environment, clients have justifiably mandated strict guidelines and specific support for all time billed down to the minute. This has increased the burden on professionals such as attorneys to keep a running track record of every hour, every minute, of their billable time and to provide adequate justification for such billable time on a daily basis. Many attorneys and other billing professionals do not record time expended for rendering professional services contemporaneous with the task or service performed. This results in time being lost and never billed due to the inability to remember the task performed or the amount of time spent for performing the task. The absence of a computer system which monitors billable time for every document generated and/or task undertaken during the course of a given day contemporaneous with the service being performed has proven to be an insurmountable burden for many professionals who have a difficult time administratively logging their time on a daily basis.

Unfortunately, while there have been numerous attempts to improve existing time and billing systems, none have addressed the need for a timekeeping tracking computer system, method and apparatus on a document-by-document, task-by-task, realtime basis for the purpose of generating a daily billing report for an individual service-related professional. For example, U.S. Pat. No. 5,991,742, entitled "Time and Expense Logging System", is directed to a portable time and billing system for professionals who are constantly on their feet, do not have access to desktop or notebook computers and may not have typing skills or familiarity with operating a computer. The '742 patent is directed to a computer system which accepts data from the user using an input recognizer such as a handwriting recognizer or speech recognizer.

Other computer systems are directed to overall billkeeping or litigation management or cost budgeting. U.S. Pat. No. 6,622,128, entitled "Internet-based attorney-client billing system" is directed to an Internet-based billkeeping and litigation management system, allowing third parties to monitor the progress and expense of litigation and/or possibly other legal matters.

U.S. Patent Application Publication No. 20030225989, entitled "System for calculating billable time" is directed to a timing system for tracking the time spent on a client file for cost budget purposes. The timing system does not address the tracking of billable time for an individual professional on a document-by-document, task-by-task, realtime basis for the purpose of generating a daily billing report for that individual professional. The timing system also is not directed to monitoring each newly generated document, whether Internet-based or LAN based, or task of an individual professional on a daily basis.

## SUMMARY OF THE INVENTION

The present invention relates to a timekeeping and tracking computer method, system and apparatus on a document-by-document, task-by-task, realtime basis for the purpose of generating a daily billing report for an individual services-related professional. The manner by which the computer method, system and apparatus may generate, track and record time may be through the use of a software program that generates a timekeeper entry box each time a document or task is being performed by the professional. The timekeeper entry box may appear on the professional's computer screen for each document, task or other service (LAN or Internet-based) performed by the professional. The timekeeper entry box may include a field for entry of a client identifier (client name or billing number). The timekeeper entry box may also include additional fields for entry of information, such as date, document type, description of task being performed and billing professional identifier. The timekeeper entry box may automatically appear on the professional's computer screen every time the professional is working on a computer based task—LAN document or Internet-based task. The information included in the fields in the timekeeper entry box may either be extracted whereby the invention automatically extracts the information from the document or other task being performed by the professional or can be input by the professional as he or she is performing the document or task.

The invention may read the document profile created for each LAN document in order to extract pertinent information for the timekeeper entry box. The billing professional may also manually type in the pertinent information into the timekeeper entry box as the professional is performing that service. In the case of a Internet-based service such as e-mail or research, the system may read certain tagged or designated fields in order to extract pertinent information for the timekeeper entry box. The billing professional may also manually type in the pertinent information into the timekeeper entry box, as the billing professional is performing that service.

The time computation feature in the timekeeper entry box will automatically start upon creation of a LAN document by the professional or upon commencement of a Internet-based task such as E-mail or a research session. The time computation function will automatically cease upon closing of the LAN document, upon sending, saving or closing the e-mail, and upon cessation of the research session or other task by closing out of the session.

The timekeeper entry box may also include command buttons which the billing professional can use to control the time

3

computation function as well as other functions related to the timekeeper entry box. These command buttons may function to "Pause", "Erase", "End", "Maximize" and "Minimize", or function to perform any other command necessary for efficient billable timekeeping. For example, if the professional is performing a research session on Lexis/Nexis and is interrupted with a phone call on another matter, the professional can click the Pause button on the timekeeper entry box for the research session. This will pause the time computation function until the billing professional clicks on pause again to restart or resume the time computation function.

In another embodiment, the invention may detect a lack of mouse, keyboard and/or other interaction activity, and may automatically pause billing for the task.

The invention generates a daily time and billing report for an individual professional which can either be uploaded and viewed on the computer screen or printed for review and/or revision. The report may contain the following information: date, name of billing attorney or billing professional, and for each document generated or task, the client identifier, subject of document or description of task, time expended (start and end time and total time converted into the standard billing increments utilized by the firm or company, such as tenth of an hour or quarter of an hour). The report may also combine time calculations relating to the same document or task (e.g., an individual may work on the same document or task at different times during the same day) in order to generate a cumulative billing entry for that document or task, or may combine time calculations for same client matters or may combine time calculations following other programmed instructions. The invention may also generate a summary report based on any specific subject matter category, or combination of categories selected, or for a particular client. Moreover, the information generated by the report can be entered directly into the firm's or company's existing accounting or billing system used for generating billing invoices for professional services rendered to clients.

In another embodiment of the invention, there is a telephone and means operatively associated with the telephone for detecting when the telephone is in use and generating a signal in response to the in use. A CPU is operatively associated with the detecting means and has software associated with the detecting means for enabling the timekeeper entry box to track time and billing information for telephone calls initiated or received by an individual professional on a daily basis.

It will be appreciated by those skilled in the art that the foregoing brief description and the following detailed description are exemplary and explanatory of the invention, but are not intended to be restrictive thereof or limiting of the advantages which can be achieved by the invention. Thus, the accompanying drawings, referred to herein and constituting a part hereof, illustrate preferred embodiments of this invention, and, together with the detailed description, serve to explain the principles of this invention.

## BRIEF DESCRIPTION OF THE DRAWINGS

The features and advantages of the present invention, both as to its structure and operation, will be apparent from the following detailed description, especially when taken in conjunction with the accompanying drawings, wherein:

FIG. 1 is a block diagram of an embodiment of a computer device that can be used in the invention;

FIG. 2 is an exemplary illustration of the software program icon of the invention (labeled "CompuBiller") among other program icons uploaded on a computer device;

4

FIG. 3 is an exemplary illustration of a computer screen of a Internet-based e-mail document and the timekeeper entry box;

FIG. 4 is an exemplary illustration of a computer screen of a LAN-based Microsoft Word document and the timekeeper entry box;

FIG. 5 is an exemplary illustration of a timekeeper entry box;

FIG. 6 is an exemplary illustration of a timekeeper entry box including fields for inputting pertinent billing information;

FIG. 7 is an exemplary illustration of a timekeeper entry box including extracted information pertinent to a billing entry;

FIG. 8 is a flow chart illustrating an embodiment of the method for implementing a realtime billing process;

FIG. 9 is a flow chart illustrating an embodiment of the method of extracting pertinent billing information for inclusion in the timekeeper entry box;

FIG. 10 is an exemplary illustration of the format of a daily report generated by the invention based on a compilation of stored timekeeper entry boxes for an individual professional.

## DETAILED DESCRIPTION OF THE INVENTION

A realtime billable timekeeper program implemented in software or hardware or both is provided to be used by individual service-related professionals, such as attorneys, on a computer, desktop, notebook, palm pilot, handheld or like device to track the billable time spent by an individual professional on a document-by-document, task-by-task basis contemporaneous with the service being performed, for the purpose of generating a daily billing report for such individual. The program may have particular applicability to those professionals who bill clients on an hourly rate basis, particularly where hourly rates vary for each professional.

A person skilled in the art will understand that the present invention may be supplemented in various forms of hardware, software, or a combination thereof. In one embodiment, the present invention may be implemented in software as an application program tangibly embodied on a program storage device. The application program may be uploaded to and executed by a computer device comprising any suitable architecture such as that shown in FIG. 1.

Turning now to FIG. 1, illustrated thereon are exemplary components of a computer device 100 for use in the invention. The primary component of computer device 100 is processor (CPU) 105, which may be any commonly available microprocessor. Processor 105 may be operatively connected to further exemplary components, such as random access memory (RAM)/read-only memory (ROM) 110, clock 115, input/output devices 120 and memory 125 which, in turn, stores one or more computer programs 130 and databases 135.

Processor 105 operates in conjunction with RAM and ROM. The RAM portion of RAM/ROM 110 may be a suitable number of Single In-Line Memory Module (SIMM) chips having a storage capacity (typically measured in kilobytes or megabytes) sufficient to store and transfer, inter alia, processing instructions utilized by processor 105 which may be received by application programs 130. The ROM portion of RAM/ROM 110 may be any permanent non-rewritable memory medium capable of storing and transferring, inter alia, processing instructions performed by processor 105.

Clock 115 may be an on-board component of processor 105 which dictates a clock speed (typically measured in

      

MHz) at which processor **105** performs and synchronizes, inter alia, communication between the internal components of computer device **100**.

Input/output devices **120** may be one or more known devices used for receiving operator inputs, network data, and the like and transmitting outputs resulting therefrom. Accordingly, exemplary input devices may include a keyboard, a mouse, a voice recognition unit and the like for receiving operator inputs. Output devices may include any known devices used to present data to an operator of computer device **100** or to transmit data over Internet **140**. Accordingly, suitable output devices may include a display, a printer and a voice synthesizer connected to a speaker.

Other input/output devices may include a telephone or network connection device, such as a telephone modem, a cable modem, a T-1 connection, a digital subscriber line or a network card, for communicating data to and from other computer devices over Internet **140**. Input/output devices can have capacity to handle high bandwidth traffic in order to accommodate communications with a large number of visitors.

Memory **125** may be an internal or external large capacity device for storing computer processing instructions, computer-readable data, and the like. The storage capacity of memory **125** is typically measured in megabytes or gigabytes. Accordingly, memory **125** may be one or more of the following: a floppy disk in conjunction with a floppy disk drive, a hard disk drive, a CD-ROM disk and reader/writer, a DVD disk and reader/writer, a ZIP disk and a ZIP drive, and/or any other computer readable medium that may be encoded with processing instructions in a read-only or read-write format. Further functions of and available devices for memory **125** will be apparent.

Memory **125** may store, inter alia, a plurality of programs **130**, such as the realtime software billable timekeeper program of the invention. Memory **125** also includes databases **135** comprising multiple blocks of information such as the realtime billing entries of an individual professional on a document-by-document, task-by-task basis and for any given time period, including on a daily basis.

The realtime software billable timekeeper program interfaces with any Internet-based or LAN application program that generates a file, e.g., Microsoft Word®, Microsoft Outlook®, Lotus Notes®, Acrobat Reader®, Adobe Illustration®, Adobe Photoshop®, Adobe Acrobat®, TimeKeeper Desktop®, PCTime®, CMS OPEN®, LexisNexis®, West-Law® and Internet Explorer® and any other program that generates a file.

Turning now to FIG. **2**, illustrated therein is a computer device **200**, here a desktop computer. Visible on the screen of the computer are various icons for program applications, namely Internet Explorer® **210**, Lexis® **220**, Microsoft Word® **230**, My Computer® **240**, PC Time® **250** and the software program of the invention, here identified as Compu-Biller® **260**. Any computer device can be adopted for use in the invention, including, without limitation, desktop, notebook, palm pilot, handheld or like devices. Moreover, the software program of the invention is adaptable for interfacing with any program that generates a file, service or other application for billing purposes.

FIG. **3** is an embodiment of Timekeeper Entry Box™ **300** generated by the software program of the invention for interfacing with a Internet-based document, here e-mail **310**, generated by a professional. Timekeeper Entry Box™ **300** is generated contemporaneous with the professional's generation of e-mail **310**. In this embodiment, Timekeeper Entry Box™ **300** requires a professional to enter Client Identifier **320** and Personal Code **330**. Timekeeper Entry Box™ automatically generates Start Time **340**, End Time **350** and Total Time **360**. Control command buttons Minimize **370**, Maximize **380**, Pause **385**, End **390** and Erase **395** are also configured in Timekeeper Entry Box™ **300**.

Contemporaneous with the opening of e-mail **310**, Timekeeper Entry Box™ **300** is generated and billable Start Time **340** commences. The professional has the ability to control certain aspects of the Timekeeper Entry Box™. Minimize button **370** can be activated, for example by clicking on the button with a pointer directed by a mouse or by any other means known to a person skilled in the art. The Minimize button functions to reduce Timekeeper Entry Box™ so that it does not obstruct the view of the Internet-based document, LAN document, task or other service the professional is working on.

Maximize button **380** can be activated to increase the size of the Timekeeper Entry Box™, enabling the professional, for example, to input information into the specified fields on the Timekeeper Entry Box™.

Pause button **385** can be activated at any time while the document is open or during the course of the service to pause the running time clock for billing purposes. For example, if a professional is interrupted (e.g., a phone call on another matter) while working on the document, task or service, the professional can click on the Pause button to prevent the client from being billed for time not spent working on the document, task or service. The professional can resume the running time clock upon returning to work on the document, task or service by, for example, reclicking on the Pause button.

If the professional prefers to limit the amount of billable time allocated to a particular document, service or task, the professional can also click on the End button **390** while the document, service or task is still in session. The End command will terminate the billable time keeping for that particular document, service or task.

Upon termination of the billable session by closing a document, saving a document, sending a document, deleting a document being reviewed, ending a session or task, clicking the End button or by any other means, the program records End Time **350** for the session and Total Time **360**. The Timekeeper Entry Box™ closes and the information generated in the box is stored by the program.

To the extent a professional does not want to record billable time with respect to a particular document, service or task, the professional can click on Erase button **395**. The Erase command functions to delete the Timekeeper Entry Box™ so that no information or time relating to a particular document, task or session is stored.

In another embodiment, a professional may be given the option of recording billable time for a particular document, service or task. A precursor request can be configured to appear prior to displaying the Timekeeper Entry Box™, requesting the professional whether the document, service or task should be billed. The professional has the option of billing time to the document, service or task session, whereupon the Timekeeper Entry Box™ is generated, or proceeding without activating the Timekeeper Entry Box™ so that no billable time will be recorded for such session.

The software program of the invention can also be configured to apply only to selected documents, services and/or tasks performed by a professional. For example, in the case of attorneys, the software program may only be configured to apply to the legal memoranda generated, edited and/or reviewed by an attorney as well as legal research sessions undertaken on LexisNexis®, WestLaw® or the like but will not be activated for e-mail use.

FIG. **4** is an embodiment of Timekeeper Entry Box™ **400** generated contemporaneous with a professional's generation of a Microsoft Word® LAN-based document **410**. The invention can be employed with any Internet-based or LAN-based documents or services or tasks performed by a professional using a computer device. Moreover, the invention is applicable to such documents, services or tasks generated, received or reviewed by a professional.

FIG. **5** is an exemplary configuration of Timekeeper Entry Box™ **500** that is generated by the software program of the invention contemporaneously with the initiation of any document, service or task using a computer. Timekeeper Entry Box™ **500** may be configured to include any user input information and/or automatically extracted information relating to the document, service or task for the purpose of generating a contemporaneous billable time report for an individual professional. Timekeeper Entry Box™ **500** may also include one or more command functions permitting the user to control aspects of the billable timekeeping mechanism, as well as a favorites function which may include present client matter information for incorporation in the timekeeper entry box.

Another feature of the Timekeeper Entry Box™ is the visual aspect of the box to a professional. The fact that the box will appear on a contemporaneous basis with each document, service and/or task performed by the professional will encourage the professional to account for billable time on a contemporaneous basis with services provided. Moreover, the box also provides a visual of billable time tracked by the invention for each document, service and/or task.

In this embodiment, Timekeeper Entry Box™ **500** incorporates the following information: Client Identifier **510**, Personal Code **520**, Start Time **530**, End Time **540**, Total Time **550**. The client identifier may include any number of letters, numerals and/or other characters to identify a specific client. The personal code may include any number of letters, numerals and/or characters to identify a specific professional individual. The start time may be the time the document, session and/or task commences; the end time may be the time the document, session and/or task concludes; and the total time is the time difference between the start time and the end time. The Timekeeper Entry Box™ may also include a running clock visual to the professional so that the professional is informed of the time spent on a particular service at any moment.

Timekeeper Entry Box™ **500** also includes Favorites button **555**, Minimize button **560**, Maximize button **570**, Pause button **580**, End button **590** and Erase button **595**. Command functions can be configured in any manner in the box and any number of commands may be utilized as suitable to a professional individual.

FIGS. **6** and **7** are further embodiments of the Timekeeper Entry Box™. The Timekeeper Entry BOX™ can be configured to require a professional's input of information in each of the fields contained therein, automatically extract information relating to a document, session or task for incorporation into the box and/or require a professional's input for certain information and automatically extract other information for incorporation into the box.

In FIG. **6**, Timekeeper Entry Box™ **600** requires a professional to input Date **610**, Client Identifier **620**, Personal Code **630**, Document Type **640**, document Author(s) **650**, document Recipient(s) **660**, Detailed Description **670** of document, service or task, Start Time **680**, End time **690** and Total Time **695**.

In FIG. **7**, certain information is required to be input by a professional and certain information has been automatically

extracted by the software program of the invention for incorporation in Timekeeper Entry Box™ **700**. Information to be input are Client Identifier **720** and Personal Code **730**. Extracted information are Date **710**, Document Type **740**, Author(s) **750**, Recipient(s) **760**, Detailed Description **770** and Start Time **780**. In addition, End Time **790** and Total Time **795** will be automatically extracted by the software program upon completion of the document, service or task.

FIG. **8** is an embodiment of a flow scheme of the invention. In Step **800**, the invention detects that a document is opened or the initiation of a service or task. In Step **805**, the invention generates a Timekeeper Entry Box™ contemporaneous with the opening of the document or initiation of service/task. In Step **810**, upon opening the timekeeper entry box, the invention automatically starts the time computation corresponding to the specific professional service undertaken by the individual professional. In Step **815**, the invention extracts and/or receives input information for incorporation in the timekeeper entry box to define the billable item for the service being performed. In Step **820**, the invention detects that the document has been closed, saved and/or sent, or the service/task has been completed or an end command. Upon detecting that the document has been closed, saved or sent, or the service/task has been completed or an end command, the invention ends the time computation, and stores the information generated in the timekeeper entry box in Step **825**.

Alternatively, during the service being performed, the invention may detect a pause command as in Step **830**. Upon detecting a pause command, the invention stops the time computation in Step **835**, and upon detecting a resume command **840**, the invention resumes the time computation relating to the specific document and/or service/task being performed by the individual professional.

In Step **845**, the invention may also detect an erase command, upon which the invention ends the process and deletes the timekeeper entry box in Step **850**. No information relating to this service is stored by the invention.

In addition, prior to generating a timekeeper entry box relating to a particular service, an individual professional may be requested in Step **855** whether the service should be billed and, consequently, a timekeeper entry box should be generated. If the individual professional requests that the service be billed, a timekeeper entry box is generated. If the individual professional chooses not to bill a client for a particular service, the timekeeping session is terminated in Step **860**, and no billable time is recorded for this particular service.

The software program of the invention further is capable of detecting the service or task being performed by the individual professional and extracting pertinent information relating to each type of search being performed for inclusion in the "Timekeeper Entry Box™". As such, the pertinent information extracted may differ depending upon the task being performed. FIG. **9** is a flow diagram setting forth the detection/extraction steps undertaken by an embodiment of the invention.

In FIG. **9**, the invention detects the task being performed by the professional in Step **900**. The task may comprise drafting, reviewing or editing a Internet-based document, such as an e-mail, drafting, reviewing or editing a LAN based document, a research session, making or receiving a telephone call or any other billable service undertaken by a professional. Depending upon the type of task detected, e.g., drafting, reviewing or editing an e-mail (Step **905**), drafting, reviewing or editing a newly generated LAN document (Step **910**), editing an existing LAN document (Step **915**), research session (Step **920**) or making or receiving a telephone call (Step **925**), the invention

is configured to extract particular information for inclusion in the "Timekeeper Entry Box™" depending upon the form of the task or service performed.

For example, in Step **930**, the invention detects a service being performed relating to an e-mail and extracts pertinent information from the e-mail headers or the harddrive or other source relating to the e-mail. The extracted information may be verified and/or used to look up matter identifying data in a database, address book, and/or the like. Such information may be the author(s), recipient(s), subject and/or date of the e-mail.

In Step **935**, the invention detects a new LAN document being generated by a professional individual and extracts pertinent information from the document's profile or harddrive or other source relating to the newly generated LAN document.

In Step **940**, the invention detects the editing of an existing LAN document and extracts pertinent information from the document's profile, metadata or harddrive or other source relating to the edited document.

In Step **945**, the invention detects a research session and extracts a client identifier, professional's code or other pertinent information from the search session.

In Step **950**, the invention detects a telephone call and extracts a caller ID, client identifier, professional's code, voice recognition information or other pertinent information relating to the telephone call. The extracted information may be verified and/or used to look up matter identifying data in a database, address book, and/or the like.

FIG. **10** is an embodiment of "Daily Report" **1000** on Date **1010** for attorney **1020** generated by the invention based on the billable services performed by the attorney. The report that is generated is specific to the attorney's billable services for that date and compiles all information stored from the timekeeper entry boxes generated on that date. As the report shows the information compiled for each billable service or task undertaken by the attorney for that date, includes for Document/Task Description **1030**, a Client Identifier **1050**, Document Type **1060**, Description **1070**, and for corresponding Time **1040**, a Start/End time **1080** and Total time **1090**.

The invention can be configured to generate a billable report for an individual professional for any length of time, and can categorize and/or subcategorize the billable time entries in any suitable manner, e.g., by client or service. The invention can also be configured such that the report is transmitted, received and incorporated into any LAN application program that generates a file for billing purposes.

Although illustrative preferred embodiments have been described herein in detail, it should be noted and will be appreciated by those skilled in the art that numerous variations may be made within the scope of this invention without departing from the principle of this invention and without sacrificing its chief advantages. The terms and expressions have been used as terms of description and not terms of limitation. There is no intention to use the terms or expressions to exclude any equivalents of features shown and described in portions thereof and this invention should be defined in accordance with the claims which follow.

The invention claimed is:

1. A method for individual realtime billable timekeeping using a computer, comprising a computer program for:
   detecting opening of at least one document; and
   generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one document wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal

code and said client identifier said document is in use to track time for an individual by client on a document by document basis using the computer.

2. The method of claim **1**, wherein said individual timekeeper entry box includes said personal code.

3. The method of claim **1**, further comprising receiving at least one of a document type, an author identifier, a recipient identifier and a subject description for entry within said individual timekeeper entry box.

4. The method claim **1**, wherein said individual timekeeper entry box includes at least one of the following functions: pause, end, erase, minimize, maximize and favorites.

5. The method, of claim **1**, further comprising storing information obtained from said individual timekeeper entry box.

6. The method of claim **1**, further comprising integrating information obtained from said individual timekeeper entry box into an accounting and billing system.

7. The method of claim **1**, further comprising displaying at least one of a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a recipient identifier, and a subject description within said individual timekeeper entry box.

8. The method of claim **1**, further comprising displaying a running clock within said individual timekeeper entry box.

9. The method of claim **1**, further comprising requesting permission to track time of said document.

10. A computing device for an individual realtime billable timekeeper, comprising:
   a storage device; and
   a processor connected to said storage device, said storage device storing a program for controlling said processor;
   said processor operative with said program to,
   detect opening of at least one document; and
   generate an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one document wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier said document is in use to track time for an individual by client on a document by document basis.

11. The computing device of claim **10**, wherein said individual timekeeper entry box includes said personal code.

12. The computing device of claim **10**, wherein said processor is further operative with said program to receive at least one of a document type, an author identifier, a recipient identifier and a subject description for entry within said individual timekeeper entry box.

13. The computing device of claim **10**, wherein said individual timekeeper entry box includes at least one of the following functions: pause, end, erase, minimize, maximize and favorites.

14. The computing device of claim **10**, wherein said processor is further operative with said program to store information obtained from said individual timekeeper entry box.

15. The computing device of claim **10**, wherein said processor is further operative with said program to display at least one of a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a recipient identifier, and a subject description within said individual timekeeper entry box.

16. The computing device of claim **10**, wherein said processor is further operative with said program to display a running clock within said individual timekeeper entry box.

17. The computing device of claim **10**, wherein said processor is further operative with said program to request permission to track time of said document.

**18**. A computer readable medium having computer executable software code stored thereon for an individual realtime billable timekeeper, comprising:

    code for detecting opening of at least one document;

    code for generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one document wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier said document is in use to track time for an individual by client on a document by document basis.

**19**. The computer readable medium of claim **18**, wherein said individual timekeeper entry box includes said personal code.

**20**. The computer readable medium of claim **18**, further comprising code for receiving at least one of a document type, an author identifier, a recipient identifier and a subject description for entry within said individual timekeeper entry box.

**21**. The computer readable medium of claim **18**, wherein said individual timekeeper entry box includes at least one of the following functions: pause, end, erase, minimize, maximize and favorites.

**22**. The computer readable medium of claim **18**, further comprising code for storing information obtained from said individual timekeeper entry box.

**23**. The computer readable medium of claim **18**, further comprising code for displaying at least one of a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a recipient identifier, and a subject description within said individual timekeeper entry box.

**24**. The computer readable medium of claim **18**, further comprising code for displaying a running clock within said individual timekeeper entry box.

**25**. The computer readable medium of claim **18**, further comprising code for requesting permission to track time of said document.

**26**. A method for individual realtime billable timekeeping using a computer, comprising a computer program for:

    detecting initiation of at least one client service; and

    generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one client-service wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said client-service to track time for an individual by client on a client-service by client-service basis using the computer.

**27**. A computing device for an individual realtime billable timekeeper, comprising:

    a storage device; and

    a processor connected to said storage device, said storage device storing a program for controlling said processor;

    said processor operative with said program to,

    detect initiation of at least one client-service; and

    generate an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one client-service wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said client-service to track time for an individual by client on a client-service by client-service basis.

**28**. A computer readable medium having computer executable software code stored thereon for an individual realtime billable timekeeper, comprising:

    code for detecting initiation of at least one client-service; and

    code for generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one client-service wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said client-service to track time for an individual by client on a client-service by client-service basis.

**29**. A method for individual realtime billable timekeeping using a computer, comprising a computer program for:

    detecting initiation of at least one telephone call; and

    generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one telephone call wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said telephone call to track time for an individual by client on a telephone call by telephone call basis using the computer.

**30**. A computing device for an individual realtime billable timekeeper, comprising:

    a storage device; and

    a processor connected to said storage device, said storage device storing a program for controlling said processor:

    said processor operative with said program to,

    detect initiation of at least one telephone call; and

    generate an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one telephone call wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said telephone call to track time for an individual by client on a telephone call by telephone call basis.

**31**. A computer readable medium having computer executable software code stored thereon for an individual realtime billable timekeeper, comprising:

    code for detecting initiation of at least one telephone call; and

    code for generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one telephone call wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said telephone call to track time for an individual by client on a telephone call by telephone call basis.

**32**. The method of claim **1**, further comprising simultaneously tracking time for said individual on said at least one document and at least one of a client-service and a telephone call.

**33**. The method of claim **26**, further comprising simultaneously tracking time for said individual on said at least one client-service and at least one of a document and a telephone call.

**34**. The method of claim **29**, further comprising simultaneously tracking time for said individual on said at least one telephone call and at least one of a document and a client-service.

**35**. The method of claim **26**, wherein said individual timekeeper entry box includes said personal code and upon receipt

of said client identifier contemporaneously tracks time associated with said personal code and said client identifier of said client-service.

**36**. The computing device of claim **27**, wherein said timekeeper entry box includes said personal code.

**37**. The computer readable medium of claim **28**, wherein said timekeeper entry box includes said personal code.

**38**. The method of claim **29**, wherein said timekeeper entry box includes said personal code.

**39**. The computing device of claim **30**, wherein said timekeeper entry box includes said personal code.

**40**. The computer readable medium of claim **31**, wherein said timekeeper entry box includes said personal code.

\* \* \* \* \*