2023-1756

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

REALTIME TRACKER, INC.,
*Plaintiff-Appellant,*

v.

RELX, INC.,
*Defendant-Appellee.*

Appeal from the United States District Court for the Southern District of New York in Case No. 1:21-cv-8815-PAE, Judge Paul A. Engelmayer

_____

## BRIEF OF APPELLEE RELX, INC.

Oleg Khariton (*Counsel of Record*)
John D. Luken
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tele: 513.977.8200
oleg.khariton@dinsmore.com
john.luken@dinsmore.com
*Attorneys for Appellee RELX, Inc.*

# CERTIFICATE OF INTEREST

Counsel for Appellee RELX, Inc. certifies as follows:

1. **Represented Entities.**  Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

   RELX, Inc.

2. **Real Party in Interest.**  Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

   N/A.

3. **Parent Corporations and Stockholders.**  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. Fed. Cir. R. 47.4(a)(3).

   RELX, Inc. is a wholly owned subsidiary of RELX US Holdings, Inc.  The ultimate parent of RELX US Holdings Inc. is RELX Group plc.  RELX Group plc is owned by RELX PLC, a publicly traded company.

4. **Legal Representatives.**  List all law firms, partners, and associ-ates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   Ross A. Wilson, Dinsmore & Shohl LLP.

5. **Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir. R. 47.5(b).

   None.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated:  September 8, 2023                    */s/ Oleg Khariton*_____
                                            Oleg Khariton

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iv

TABLE OF ABBREVIATIONS ........................................................... ix

STATEMENT OF RELATED CASES .................................................. 1

INTRODUCTION ............................................................................ 1

STATEMENT OF THE ISSUES ......................................................... 3

STATEMENT OF THE CASE ............................................................ 3

I.      The '810 Patent ................................................................. 3

        A.      The Specification ..................................................... 3

        B.      The Asserted Claims ................................................ 6

II.     Proceedings Below ............................................................ 9

SUMMARY OF THE ARGUMENT ................................................... 11

STANDARD OF REVIEW ............................................................... 14

ARGUMENT ................................................................................ 15

I.      The Law of Patent Eligibility ............................................... 15

II.     *Alice* Step One: The Asserted Claims of the '810 Patent Are
        Directed to a Patent-Ineligible Abstract Idea. ......................... 17

        A.      The Asserted Claims Are Directed to the Age-Old Business
                Practice of Timekeeping for Compensation ..................... 17

        B.      Realtime's Step-One Arguments Are Meritless ................. 22

                1.      The District Court Did Not "Overgeneralize" the
                        Asserted Claims. ........................................... 22

                2.      The District Court Was Not Required to Accept the
                        Conclusory Allegations in the FAC That the Invention
                        Is Directed to an "Improvement in Computer
                        Technology." ................................................. 24

| | 3. | The Prosecution History Does Not Support Realtime's Contention That the Asserted Claims Are Directed to Non-Abstract Improvements in Technology. ......................... 30 |

| III. | *Alice* Step Two: The Asserted Claims of the '810 Patent Lack an Inventive Concept. ......................................................................... 32 |

| | A. | The Asserted Claims Do No More Than Automate Billable Timekeeping Using a Generic Computer. .......................................... 32 |

| | B. | Realtime's Step-Two Arguments Have Been Waived and, Regardless, Lack Any Merit. ............................................................. 35 |

| IV. | The District Court Properly Treated Claim 29 as Representative. .............. 40 |

| | CONCLUSION ...................................................................................... 42 |

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Accenture Glob. Servs. v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ...................................................... 20, 21, 27

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 153 (Fed. Cir. 2016) ............................................................ 16, 25

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ............................................................................ *passim*

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ................................................................... 17

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ........................................................... 14, 41

*Bldg. Indus. Elec. Contractors Ass'n v. City of New York*,
    678 F.3d 184 (2d Cir. 2012) ....................................................................... 15

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ................................................................. 39

*CardioNet, LLC v. InfoBionic, Inc.*,
    955 F.3d 1358 (Fed. Cir. 2020) ................................................................. 24

*Chamberlain Grp. v. Techtronic Indus. Co.*,
    935 F.3d 1341 (Fed. Cir. 2019) ........................................................... 38, 39

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ................................................................... 27

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) ................................................................. 29

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017) ................................................................. 21

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) ................................................................. 16

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ................................................................. 33

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) ............................................................ 26

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ................................................ 17, 22, 28, 33

*Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020) ................................................................ 14

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) .................................................... 23, 26, 28

*Finjan, Inc. v. Blue Coat System, Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ................................................................ 16

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) .......................................................... 36, 42

*Hernandez v. United States*,
939 F.3d 191 (2d Cir. 2019) ..................................................................... 15

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ................................................ 16, 19, 33, 34

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ................................................................ 21

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018) ................................................................ 27

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) .................................................................. 15, 16, 17, 34

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
811 F.3d 1314 (Fed. Cir. 2016) ................................................................ 40

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) ................................................................ 14

*Nielsen v. Rabin*,
746 F.3d 58 (2d Cir. 2014) ....................................................................... 15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ................................................................ 34

*Parker v. Flook*,
    437 U.S. 584 (1978)......................................................................... 32

*PersonalWeb Techs. LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) ....................................................... 21

*Sage Prods., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997) ..................................................... 36

*Sanderling Mgmt. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) ................................................. 25, 26

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ............................................... 14, 30

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) ....................................................... 25

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ..................................................... 26

*Singleton v. Wulff*,
    428 U.S. 106 (1976)......................................................................... 36

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019) ............................................... 16, 24

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ..................................................... 30

*TLI Communs. LLC v. AV Auto., L.L.C.*,
    823 F.3d 607 (Fed. Cir. 2016) ....................................................... 34

*Univ. of Fla. Research Found., Inc. v. GE Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) ................................................. 1, 21

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ..................................................... 27

*Weisner v. Google LLC*,
    51 F.4th 1073 (Fed. Cir. 2022) ............................... 2, 19, 21, 31

*WhitServe LLC v. Donuts Inc.*,
    809 F. App'x 929 (Fed. Cir. 2020) ....................................... 20, 21

**Statutes**

35 U.S.C. § 101 ............................................................. *passim*

35 U.S.C. § 102 ............................................................. 13, 31

35 U.S.C. § 103 ............................................................. 13, 31

## TABLE OF ABBREVIATIONS

| Realtime | Plaintiff-Appellant Realtime Tracker, Inc. |
|----------|--------------------------------------------|
| RELX | Defendant-Appellee RELX, Inc. |
| '810 Patent | U.S. Patent No. 8,229,810 B2 |
| USPTO | United States Patent and Trademark Office |

## STATEMENT OF RELATED CASES

No other appeal in or from this case has previously been before this or any other appellate court. Counsel for RELX is not aware of any cases pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this appeal.

## INTRODUCTION

This Court should affirm the district court's judgment that the asserted claims of Realtime's '810 Patent are invalid under 35 U.S.C. § 101. At their core, the claims focus on the abstract idea of tracking and recording time spent by a professional on billable tasks—or, as the district court put it, "timekeeping for compensation." (Appx26.) This idea reflects a longstanding and routine practice for professionals in many industries, including lawyers. All the '810 Patent purports to do is computerize this age-old business practice. But it discloses no new and improved computer technology for doing so; instead, the asserted claims implement the concept of timekeeping for compensation with wholly generic computer components. The '810 Patent is, in other words, a "quintessential 'do it on a computer patent'"—precisely the type of patent this Court has time and again held invalid under § 101. *Univ. of Fla. Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

Realtime suggests the district court erred at step one of the *Alice* test by "overgeneralizing" the asserted claims, not accepting at face value Realtime's allegations that the claims are directed to an "improvement in computer technology," and overlooking the prosecution history of the '810 Patent. None of these criticisms has any merit.

First, the district court did not oversimplify the asserted claims. The claims are, in fact, exceedingly simple. The claimed software has three basic functions: "detecting" when a user initiates a computer-based task, "generating" a time entry window on the user's computer screen, and "contemporaneously track[ing] time" spent by the user on the task. As the district court explained, these functions mirror the process that professionals have historically used to track and record their billable time—the only difference being that the claims propose automating this process using a generic computer. And claims that merely "[a]utomat[e] or digitize[e]" a "conventional method of organizing human activity" are considered abstract at *Alice* step one. *Weisner v. Google LLC*, 51 F.4th 1073, 1083 (Fed. Cir. 2022). Second, the district court was not required to accept Realtime's allegations that the claims are directed to an "improvement in computer technology." Not only are these allegations entirely conclusory, they are also contradicted by the intrinsic record. Neither the claims nor the specification describes any improved hardware or software. Instead, the patent admittedly implements the abstract concept of

timekeeping for compensation with purely conventional computer technology, which it deploys in a purely conventional fashion. And third, Realtime's reliance on the patent's prosecution history wrongly conflates the requirements for patent-eligibility with those for novelty and obviousness.

Realtime also suggests that the district court erred at step two of *Alice*. However, Realtime has waived these arguments, since it did not make them below, where it limited its opposition to RELX's motion to dismiss to step one of *Alice*. In any case, Realtime's step-two arguments are equally meritless. The asserted claims contain no "inventive concept" but rather only add generic computer functionality to an otherwise abstract idea. As a result, they are invalid under § 101.

## STATEMENT OF THE ISSUES

Whether the district court correctly concluded that the asserted claims of the '810 Patent are ineligible under § 101 because they (a) are directed to an abstract idea and (b) contain no redeeming inventive concept.

## STATEMENT OF THE CASE

### I.     The '810 Patent

#### A.     The Specification

The '810 Patent observes the "increas[ing]" burden on attorneys and other professionals to "keep a running track record" of their billable time. (Appx89, 1:37-41.) It posits that "[m]any attorneys and other billing professionals do not record time expended for rendering professional services contemporaneous with the task or

service performed," which results in "time being lost and never billed due to the inability to remember the task performed or the amount of time spent for performing the task." (Appx89, 1:41-46.) The solution offered by the patent is a software program for "generating and tracking time expended by professionals in providing services to their clients on a realtime basis." (Appx78, Abstract.) This software replaces the "traditional time log manually recorded on blank sheets of paper or on pre-formatted paper forms." (Appx89, 1:21-24.)

The software works by "generat[ing] a timekeeper entry box" that appears on a professional's computer screen for "each document, task or other service (LAN or Internet-based) performed by the professional." (Appx89, 2:26-33.) This box includes fields for entry of a "client identifier (client name or billing number)" and other information like the "date, document type, description of task being performed and billing professional identifier." (Appx89, 2:33-38.) In this way, the timekeeper entry box resembles its acknowledged precursor—the "pre-formatted paper forms" "traditional[ly]" used by professionals for logging their billable time. (Appx89, 1:21-24.) Information may "either" be "automatically extract[ed]" into the timekeeper entry box by the software or be manually "input by the professional" (just as it would be in a traditional paper timesheet). (Appx89, 2:41-46.) In addition, the timekeeper entry box has a "time computation feature"—*i.e.*, a timer—which records how much time the user has spent on the task. (Appx89, 2:61-65.)

Figure 3 from the patent shows an example of the timekeeper entry box:



In Figure 3, the timekeeper entry box is generated, and the "Start Time" field automatically populated, "[c]ontemporaneous with the opening of e-mail 310." (Appx91, 6:1-8.) When the end user sends, saves, or closes out of the e-mail (or hits the "End" button), the "program records End Time 350 for the session and Total Time 360," and the timekeeper entry box "closes and the information generated in the box is stored by the program." (Appx91, 6:37-43.)

According to the specification, the invention can be implemented on "[a]ny computer device" with "any commonly available micro-processor" connected to a "random access memory (RAM)/read-only memory (ROM)," "clock," "input/output devices," and/or "memory." (Appx89, 2:58-61; Appx90, 4:50-55; Appx91, 5:55-57.) The specification describes these components in purely generic terms. (*See*

5

Appx90, 4:56-65 ("[t]he RAM portion of RAM/ROM 110 may be a suitable number of Single In-Line Memory Module (SIMM) chips" with sufficient "storage capacity"; "[t]he ROM portion of RAM/ROM 110 may be any permanent non-rewritable memory medium capable of storing and transferring, inter alia, processing instructions performed by processor 105"); Appx90-91, 4:66-5:3 ("Clock 115 may be an on-board component of processor 105 which dictates a clock speed . . . at which processor 105 performs and synchronizes, inter alia, communication between the internal components of computer device 100."); Appx91, 5:7-9 ("exemplary input devices may include a keyboard, a mouse, a voice recognition unit and the like for receiving operator inputs"); Appx91, 5:9-11 ("suitable output devices may include a display, a printer and a voice synthesizer connected to a speaker"); Appx91, 5:26-31 ("memory 125 may be . . . a floppy disk in conjunction with a floppy disk drive, hard disk drive, a CD-ROM disk and reader/writer, a DVD disk and reader/writer, a ZIP disk and a ZIP drive, and/or any other computer readable medium that may be encoded with processing instructions in a read-only or read-write format").)

## B. The Asserted Claims

The '810 Patent has 40 claims. At issue in this case are claims 1-8, 18-24, 26, 28, 29, 31-35, 37, 38, and 40. (Appx158, ¶ 40; Appx160, ¶ 45.) Of these, claims 1, 18, 26, 28, 29, and 31 are independent. Claims 1, 26, and 29 are method claims;

claims 18, 28, and 31 are computer-readable medium ("CRM") claims.  Each of these independent claims describes timekeeping software capable of performing the same basic functions: (1) "detecting" initiation of a new task, for example a telephone call, (2) "generating an individual timekeeper entry box" for entry of a "personal code" and "client identifier," and (3) "contemporaneously track[ing] time" spent by the user on the task.  (Appx93, 9:60-2:3; Appx94, 11:1-12, 11:42-52, 12:1-25, 12:41-53.)  Method claim 29 and computer-readable medium claim 31 are reproduced below side-by-side, with these common elements shown in bold red font:

| Claim 29 | Claim 31 |
|---|---|
| 29. A method for **individual realtime billable timekeeping** using a computer, comprising a computer program for: | 31.  A computer readable medium having computer executable software code stored thereon for an **individual realtime billable timekeeper**, comprising: |
| **detecting initiation of at least one telephone call**; and | code for **detecting initiation of at least one telephone call**; and |
| **generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one telephone call wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said telephone call to track time for an individual by client on a telephone call by telephone call basis** using the computer. | code for **generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one telephone call wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said telephone call to track time for an individual by client on a telephone call by telephone call basis**. |

The remaining four independent claims (claims 1, 18, 26, and 28) describe software with the same basic functions, except that claims 1 and 18 require detecting the "opening of at least one document" and claims 26 and 28 more broadly require detecting the "initiation of at least one client-service."

The asserted dependent claims include a few additional, routine elements. For example, claims 2, 3, 7, 19, 20, 23, 37, 38, and 40 require certain information to be displayed or input into the timekeeper entry box. (*See, e.g.*, Appx93, 10:18-22 (claim 7 requiring "displaying at least one of a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a recipient identifier, and a subject description within said individual timekeeper entry box").) Claims 4, 8, 21, and 24 require the timekeeper entry box to have certain routine features. (*See, e.g.*, Appx93, 10:10-12 (requiring "includ[ing] at least one of the following functions: pause, end, erase, minimize, maximize and favorite"). Claims 5, 6, and 22 add the routine processing steps of "storing information obtained from said individual timekeeper entry box" (claims 5 and 22) and "integrating" it "into an accounting and billing system" (claim 6). (Appx93, 10:13-17; Appx94, 11:26-28.) Finally, dependent claims 32-35 require the software to "simultaneously track[] time" for two open tasks at once. (Appx94, 12:54-13:3.)

## II. Proceedings Below

Realtime filed this lawsuit in 2021, alleging that RELX, through its LexisNexis division, had infringed the asserted claims of the '810 Patent by making and selling the "Juris Suite" software. (Appx62-63, ¶ 20.) Juris Suite is a practice management software for law firms. (Appx21.) Among other things, it includes a "Time and Expenses" module, which provides timekeepers with a "time management platform for keeping detailed time records." (Appx21.)

RELX moved to dismiss Realtime's original complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Realtime had failed to plausibly allege infringement of the '810 Patent and that the asserted claims are invalid under § 101. (Appx113-14.) In response, Realtime filed a First Amended Complaint ("FAC"). (Appx139-66.) RELX then moved to dismiss the FAC on the same two grounds. (Appx203-04.)

In a thorough, 37-page opinion, the district court granted RELX's motion to dismiss, agreeing with RELX that the asserted claims are drawn to patent-ineligible subject matter. (Appx1-38.) Applying the two-step *Alice* test and using claim 29 as representative,[1] the court first determined that the asserted claims are directed to an

---

[1] The court noted that Realtime did not dispute RELX's argument that claim 29 was sufficiently representative. (Appx13.) In addition, it conducted an independent review of all remaining asserted claims to verify that none contained any additional material limitations. (Appx13-14.)

abstract idea. (Appx25-32.) As the court explained, the claims describe "tracking and recording, in real time, the time spent by an individual on billable tasks—that is, detecting the initiation of a task, generating a timekeeper entry box containing information about the task, and contemporaneously tracking time spent via a running clock." (Appx25-26.) "In essence," the court concluded, "the ['810 Patent] recites the abstract concept of timekeeping for compensation," familiar to "professionals in numerous fields in which client billing is commonly based on unit of time worked (for example, lawyers, accountants, and architects)." (Appx26.) Because the asserted claims implement this abstract concept "through the use of generic computer parts" only, the court rejected Reatime's argument that the claims' focus is on specific improvements in computer technology rather than the abstract idea itself. (Appx27-28.)

Turning to step two of *Alice*, the district court noted that Realtime "d[id] not distinctly address" step two in its brief, instead limiting its arguments to step one. (Appx32.) Nevertheless, the court carefully considered whether the asserted claims contain any "inventive concept" in addition to the abstract idea and found the answer to be no. It concluded that, instead, the claims "describe a generic timekeeping

process facilit[ated] by the mere application of generic computer components."

(Appx33.)  Accordingly, the court held the claims invalid under § 101.[2]  (Appx36.)

## SUMMARY OF THE ARGUMENT

The asserted claims are invalid under § 101.

I.  First, the district court correctly recognized that the claims are directed to an abstract idea.  At bottom, the claims focus on tracking and recording time spent by professionals on billable tasks.  Because this concept reflects a longstanding and conventional business practice, it amounts to a patent-ineligible abstract idea.  (*See infra* Section II.A.)

---

[2] Although the district court had no need to rule on RELX's argument that Realtime had failed to plausibly allege infringement—RELX's second argument in favor of dismissal—the court found it "persuasive."  (Appx37 n.5.)  All asserted claims require "detecting" the initiation of a task (depending on the claim, a telephone call, document-based task, or another "client-service").  (*See supra* at 6-7.)  RELX argued—with "much force," in the district court's view (Appx37 n.5)—that the claimed software must be capable of performing this "detecting" step on its own, since every asserted claim expressly recites either a "computer program for[] detecting" new user activity (claims 1, 26, and 29) or "computer executable software code" comprising "code for detecting" same (claims 18, 28, and 31). (Appx214-15.)  The "detecting" step is not satisfied if the *user* has to "detect" that they are starting a new task and then manually activate the software's timekeeping function.  That, however, is exactly how Juris Suite works, as aptly demonstrated by an informational video that Realtime itself cited several times in the FAC.  As explained by the district court, this video shows that, to use the timekeeping function in Juris Suite, the user has to manually click a button in the time entry window to activate the "Timer" feature.  (Appx10-11.)  Juris Suite thus plainly "requires a user command to signal the initiation of a task," rather than the *program* being able to detect it.  (Appx37 n.5.)  For this reason, the district court noted that, if it had not found the asserted claims to be invalid, it would have dismissed the FAC for failure to state a plausible claim of infringement.  (Appx37 n.5.)

Realtime incorrectly contends that the district court "overgeneralized" the asserted claims at *Alice* step one when it concluded that they are directed to the idea of timekeeping for compensation. The claims, however, *are* remarkably generic. They recite three basic functions: "detecting" when a user initiates a task, "generating" a timekeeping record, and "contemporaneously track[ing] time" spent by the user on the task. These are routine timekeeping tasks for lawyers and many other professionals, which the claims simply automate using generic computer technology. That is all there is to the claims. The district court thus correctly concluded that they are directed to an abstract idea. (*See infra* Section II.B.1.)

Realtime also suggests that the district court erred at *Alice* step one by declining to blindly accept Realtime's conclusory allegation that the asserted claims are directed to an "improvement in computer technology." A district court is not required to credit such allegations when deciding a motion to dismiss. And besides being conclusory, Realtime's assertion is flatly contradicted by the intrinsic record. Neither the claims nor the specification purports to describe any specific hardware or software that improves the functioning of computers. Instead, the claimed invention's focus is plainly on an abstract idea—tracking and recording billable time—for which a computer is used in its ordinary capacity. (*See infra* Section II.B.2.)

Lastly, Realtime suggests that, since the USPTO found the claims to be patentable under 35 U.S.C. §§ 102 and 103, the claims *must* be directed to a non-abstract solution to a technological problem. This argument, however, confuses the criteria for patent eligibility with those for novelty and non-obviousness. This Court has rejected the same argument on numerous occasions. (*See infra* Section II.B.3.)

II. The district court also did not err in concluding that the asserted claims fail at *Alice* step two. Apart from the abstract concept of timekeeping for compensation, the claims recite only generic computer functionality. However, *Alice* expressly holds that this type of wholly generic computer implementation does not supply an "inventive concept" sufficient to transform an abstract idea into a patent-eligible application. (*See infra* Section III.A.)

Though Realtime argues that the district court overlooked several inventive concepts, it has waived these arguments by failing to raise them below. In opposing RELX's motion to dismiss, Realtime contended only that the claims are not directed to an abstract idea at *Alice* step one, but it "d[id] not distinctly address" step two. (Appx32.) But if even Realtime had not waived its step-two arguments, they would not salvage the claims. None of the "inventive concepts" Realtime purports to identify in its brief is even remotely inventive; each one merely automates one or more aspects of the traditional timekeeping process using generic computer components. (*See infra* Section III.B.)

III. Realtime suggests that the district court erred by treating claim 29 of the '810 Patent as representative. But, below, Realtime failed to raise any opposition to RELX's argument that claim 29 is sufficiently representative. Therefore, it was more than proper for the district court to treat it as such. And even now, Realtime still fails to present any meaningful argument for the distinctiveness of any of the remaining claims. There is accordingly no basis for disturbing the district court's judgment as to any of the claims. (*See infra* Section IV.)

## STANDARD OF REVIEW

"Patent eligibility under 35 U.S.C. § 101 is ultimately an issue of law" that this Court "review[s] de novo." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). While "[t]he patent eligibility inquiry may contain underlying issues of fact," "patent eligibility has in many cases been resolved on motions to dismiss." *Id.* at 1365, 1368; *see also Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020) (acknowledging that "'we have repeatedly affirmed § 101 rejections at the motion to dismiss stage'"); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Like other legal questions based on underlying facts, this question [of eligibility under § 101] may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion[.]").

This Court reviews the grant of a motion to dismiss under the law of the regional circuit. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1346 (Fed. Cir.

2018).  The Second Circuit "review[s] a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*."  *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (citing *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012)).  The court "accept[s] as true all factual allegations and draw from them all reasonable inferences; but [the court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Id.* (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).

## ARGUMENT

### I.    The Law of Patent Eligibility

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, composition of matter, or any new and useful improvement thereof," may obtain a patent.  35 U.S.C. § 101.  But this provision "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  The "concern" underlying this exception is avoiding the "preemption" of "future use[s] of these building blocks of human ingenuity" by others. *Id.* (internal citations and quotation marks omitted).  In *Alice*, the Supreme Court set out a two-step framework for determining whether a patent claims eligible subject matter.  *Id.* at 217 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70-73 (2012)).

First, the court must determine whether the claims are "directed to" a law of nature, natural phenomena, or abstract idea. *Alice*, 573 U.S. at 217. This step one inquiry focuses on "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (quoting *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 153, 1257 (Fed. Cir. 2016)). In cases involving software patents, the step one inquiry "often turns on whether the claims focus on 'the specific asserted *improvement in computer capabilities* . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Customedia Techs., LLC v. Dish Network Corp.,* 951 F.3d 1359, 1365 (Fed. Cir. 2020) (emphasis added) (quoting *Finjan, Inc. v. Blue Coat System, Inc.,* 879 F.3d 1299, 1303 (Fed. Cir. 2018)). Patent-ineligible abstract ideas include "fundamental economic practice[s] long prevalent in our system of commerce," *Alice,* 573 U.S. at 219-20, and "methods of organizing human activity." *Intellectual Ventures I LLC v. Capital One Bank (USA),* 792 F.3d 1363, 1367 (Fed. Cir. 2015).

If the claims are directed to an abstract idea or another judicial exception, the court proceeds to *Alice* step two. Here, it "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 78-79). The Supreme

Court has described this step as the "search for an 'inventive concept.'" *Id.* (citing *Mayo*, 566 U.S. at 72). This inquiry overlaps with—and is "plainly related" to—the first step and "look[s] more precisely at what the claim elements add." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). An "inventive concept" describes a "specific, discrete implementation of the abstract idea." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). But the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

## II.  *Alice* Step One: The Asserted Claims of the '810 Patent Are Directed to a Patent-Ineligible Abstract Idea.

The district court correctly determined, at *Alice* step one, that the focus of the asserted claims is on the longstanding and routine business practice of timekeeping for compensation—a fundamentally abstract idea. (Appx25-32.) Realtime criticizes the district court's analysis from a number of angles, but none of its criticisms holds any water.

### A.  The Asserted Claims Are Directed to the Age-Old Business Practice of Timekeeping for Compensation.

Each asserted claim of the '810 Patent is drawn to the same abstract idea: keeping track of billable time or, to use the district court's formulation, "timekeeping for compensation." (Appx25-26.) This abstract idea is expressly captured by the claims' preambles. For example, the preamble of representative claim 29 describes

17

a "method for *individual real time billable timekeeping* using a computer." (Appx94, 12:15-16 (emphasis added).) And, as the district court recognized, the steps recited in the body of the claim—"detecting initiation of at least one telephone call," "generating an individual timekeeper entry box" for entry of a "personal code" and "client identifier," and "contemporaneously track[ing] time" spent on the call— are routine timekeeping tasks "familiar" to professionals in many industries, including "lawyers, accountants, and architects." (Appx25-26.) Realtime does not and *could* not take issue with the district court's unremarkable observation that, "whether by quill or by computer, humans have undertaken such timekeeping for client or customer benefit for centuries." (Appx26.)

Realtime, moreover, does not dispute that the basic timekeeping method of claim 29 could be performed entirely by a human using only a pen, paper, and watch. For example, an attorney might "detect" that she is receiving a call from a client, "generate" a timekeeping record by writing down the client's name on a piece of paper, and "contemporaneously track" the time she spends on the telephone call by checking her watch and noting the start and end times on the piece of paper. And this pen-and-paper method is, in fact, exactly how attorneys and other professionals have traditionally kept track of their billable time. The '810 Patent expressly acknowledges this reality when it notes that electronic timekeeping systems have

evolved from the "traditional time log manually recorded on blank sheets of paper or on pre-formatted paper forms."  (Appx89, 1:21-24.)

"[M]ethods of organizing human activity," however, are considered abstract ideas under *Alice* step one.  *Intellectual Ventures*, 792 F.3d at 1367.  In *Weisner*, for example, the patent concerned a method for electronically collecting and recording information about a person's movements and location history—in short, "creating a digital travel log."  51 F.4th at 1082.  One representative claim "describe[d] a generic process for achieving the goal of creating a digital travel log, such as 'maintaining a processing system' and using an 'application' to generate a user's 'location history entry' on their 'handheld mobile communication device.'"  *Id.*  Citing approvingly the district court's statement that "[h]umans have consistently kept records of a person's location and travel in the form of travel logs, diaries, journals, and calendars, which compile information such as time and location," this Court had little trouble concluding that the claims were directed to an abstract idea.  *Id.*  As the district court correctly recognized in this case, Realtime's claims are similarly "directed to the abstract idea of recording human activities"—*i.e.*, "keeping time as to billable tasks."  (Appx30.)

Indeed, this Court has repeatedly held that abstract "methods of organizing human activity" include standard business practices used by professionals to organize their daily work activities.  For example, even before *Alice*, this Court held

as invalid claims for an automated system for "generating tasks to be performed in an insurance organization." *Accenture Glob. Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338-39 (Fed. Cir. 2013). The system stored information on insurance transactions in a database. *Id.* Upon the occurrence of certain events related to a transaction, the system determined what tasks needed to be accomplished for that transaction and assigned those tasks to appropriate individuals. *Id.* This Court concluded that the concept "at the heart" of the claims—"generating tasks [based on] rules . . . to be completed upon the occurrence of an event"—was an abstract idea. *Id.* at 1344.

Similarly, in *WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 931 (Fed. Cir. 2020) (non-precedential), the patents concerned software that helped professionals, such as attorneys, keep track of deadlines. *Id.* The representative claim described software capable of querying a database of client reminders; sending, via the Internet, reminders to clients with approaching deadlines; including within those reminders a form for clients to give approval or further instructions regarding a deadline; and receiving back the client's response. *Id.* Once again, this Court concluded that the claims' "focus"—"keeping track of deadlines for clients and carrying out two-way communications with clients relevant to meeting those deadlines, using computers and networks to do so"—was an abstract idea. *Id.* at 933.

As the district court correctly observed here, the concept of recording time spent on billable tasks is a routine business practice for many professionals, no less so than, say, generating task lists or keeping track of client deadlines—activities held to be abstract ideas in *Accenture* and *WhitServe*, respectively. (Appx26.)

That the asserted claims implements the concept of billable timekeeping on a computer does not save them at *Alice* step one. Mere "[a]utomation or digitization of a conventional method of organizing human activity . . . does not bring the claims out of the realm of abstractness." *Weisner*, 51 F.4th at 1083. Here, in fact, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016). This is a "telltale sign of abstraction." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021); *see also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) (explaining that "mere automation of manual processes using generic computers" is an abstract idea). The '810 Patent thus falls squarely in the category of "quintessential 'do it on a computer patent[s].'" *Univ. of Fla.*, 916 F.3d at 1367. It takes a process—tracking a professional's billable time—that has historically been done mentally or manually, or some combination of both, and "simply proposes doing [it] with a computer." *Id.*

While automating the process may have some utility, "it does not render it any less abstract." *Id.*

## B. Realtime's Step-One Arguments Are Meritless.

### 1. The District Court Did Not "Overgeneralize" the Asserted Claims.

Realtime complains that the district court "overgeneralize[d]" the asserted claims and failed to consider the "actual claim language and limitations" at *Alice* step one when it concluded that the claims are "directed to" the abstract concept of timekeeping for compensation. (Realtime Br. 42.) The district court made no such error.

The claims, Realtime says, are directed not to "any" form of billable timekeeping, but specifically to:

> [m]ethods and computer readable medium which implement a unique computer generated individual timekeeper entry box configured for inputting a personal code and a client identifier and with an automatic timer on a task-by-task basis (e.g., each document is in use and each service and/or telephone call is in session), comprising: (a) detecting opening of a document, initiation of a client service or initiation of a telephone call; (b) generating an "individual timekeeper entry box" configured with "an entry for personal code" and "a second entry for a client identifier," and (c) contemporaneously tracking time associated with the personal code and the client identifier of the document in use, the client-service or the telephone call on task-by-task and client-by-client bases.

(*Id.* at 43 (quoting Appx141-42, ¶¶ 11-13).) All this formulation does, however, is regurgitate the claim language from start to finish. It fails to meaningfully grapple with what the "focus" of the claims, or their "character as a whole," is. *Elec. Power*,

830 F.3d at 1353 (internal citations and quotations marks omitted).  But, regardless, it still does nothing to shift the focus of the claims away from the abstract idea of timekeeping for compensation.  As the district court recognized, the individual claim limitations highlighted by Realtime ("detecting" a new client task, "generating" a timekeeping record that captures relevant information about the task, and "contemporaneously tracking time" spent) describe the *specific steps* that professionals in many industries have traditionally used to track their billable time. (Appx25-26.)  That is to say, Realtime's chosen formulation of what the asserted claims are "directed to" is simply another, and only lengthier, way of describing the same longstanding business practice.  The sole difference is that, in the asserted claims, this practice is automated using a generic computer.  This, however, is not a difference that makes the claims any less abstract.  (*See supra* at 21-22.)

In support of its argument that the district court has "overgeneralize[d]" the claims, Realtime cites *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).  (Realtime Br. 43.)  But *Enfish* actually underscores the way in which Realtime's claims are abstract.  There, the claims described a "specific type of data structure designed to improve the way a computer stores and retrieves data in memory," including a four-step algorithm for configuring a self-referential table for storing information in a database.  *Id.* at 1338-39.  Here, representative claim 29

23

contains nothing even approaching that degree of specificity. The district court did not "oversimplify" the claims; the claims lacked any specificity to begin with.

### 2. The District Court Was Not Required to Accept the Conclusory Allegations in the FAC That the Invention Is Directed to an "Improvement in Computer Technology."

Realtime faults the district court for not crediting the "factual" allegations in the FAC that the alleged invention is a "technological improvement[] in computer technology and capability, and not an abstract idea." (Realtime Br. 32; *see also id.* at 36-42.) It specifically cites the FAC's allegation that the asserted claims "require a specific, structured front end user interface combined with a backend computer processing functionality that employs a significant improvement to the capability of the computer system as a whole and resolves a specifically identified problem in the prior state of the art." (*Id.* at 36-37 (citing Appx142-43, ¶ 12).) The district court, Realtime says, was obligated to accept this and similar allegations as true. Not so.

As an initial matter, Realtime misunderstands the nature of the "directed to" inquiry at *Alice* step one. This step "presents a *legal* question that can be answered based on the intrinsic evidence." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020) (emphasis added). Thus, "[i]n determining what the claims are directed to and whether they are directed to an abstract idea," a court consults the "plain claim language, written description, and prosecution history." *Id.* at 1372-72. The question is "what the *patent* asserts to be the 'focus of the claimed advance

24

over the prior art.'" *Solutran*, 931 F.3d at 1168 (emphasis added) (quoting *Affinity Labs*, 838 F.3d at 1257). There is no need for the court to look outside the intrinsic record—for example, to the factual allegations in the complaint—at this step of the *Alice* framework.

Regardless, even if the patentee's allegations mattered at *Alice* step one, a district court deciding patent eligibility at the motion-to-dismiss stage is not required to accept allegations that are "conclusory," *Sanderling Mgmt. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) (internal citation omitted), or "contradict[ed by] matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal citation and quotation marks omitted). Here, the allegations in the FAC were both.

To start, Realtime provided no support for its naked assertion that the alleged invention "employs a significant improvement to the capability of the computer system as a whole." (Appx143, ¶ 12.) The FAC did not explain the nature of this alleged improvement (better speed, better efficiency, etc.) or *how* the invention supposedly achieves it. Tellingly, though it repeats the phrase "improvement in computer technology," or words to that effect, almost *ad nauseam*, Realtime's appeal brief still does not attempt to answer those questions. But "[a] statement that a feature 'improves the functioning and operations of the computer' is, by itself,

conclusory" and need not be accepted as true. *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *see also Sanderling*, 65 F.4th at 706.

Further, the district court correctly concluded that, contrary to the FAC's conclusory allegations, the intrinsic record makes clear that, in fact, the "'focus of the claims' is not on the 'specific asserted improvement in computer capabilities,' but rather the abstract idea of timekeeping through the use of generic computer parts." (Appx27 (quoting *Enfish*, 822 F.3d at 1336).)

Beginning with the claims themselves, none even purports to describe any specific (much less *improved*) software or hardware. For example, the asserted method claims, including representative claim 29, implement their "method for realtime billable timekeeping" using a generic "computer." (Appx94, 12:15-16.) This "computer" is a "black box" whose inclusion does nothing to "modify the focus of the claims" away from the abstract idea" of timekeeping for compensation. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020) (non-precedential).[3] As summed up by the district court, "[b]ecause the ['810 Patent's claims 'are recited only at the broadest, functional level, without explaining how [each function] is accomplished, let alone providing a technical means for

---

[3] Similarly, the asserted CRM claims describe no hardware other than a generic "computer readable medium having computer executable software code stored thereon." (*See, e.g.*, Appx94, 11:1-3 (claim 18).)

performing that function,' they lack 'sufficient specificity to constitute an improvement to computer functionality itself.'" (Appx28 (quoting *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1346 (Fed. Cir. 2018), and *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021).)

The patent's specification is also "helpful in illuminating what a claim is 'directed to.'" *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) (internal citations omitted).) To be sure, "when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *Id.*; *see also Accenture Glob. Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("[T]he important inquiry for a § 101 analysis is to look to the claim."). In any event, here the specification only confirms that the focus of the alleged invention is simply on automating the practice of billable timekeeping using a generic, all-purpose computer, rather than on "improv[ing] the functioning of the computer itself." *Alice*, 573 U.S. at 225 (internal citation omitted).

The problem the specification identifies is that many professionals "do not record time expended for rendering professional services contemporaneous with the task or service performed," which results in "time being lost and never billed." (Appx89, 1:41-46.) The solution it posits is a "realtime billable timekeeper program" for "track[ing] the billable time spent by an individual professional . . . contemporaneous with the service being performed." (Appx90, 4:27-35.) As the

district court pointed out, the specification explicitly states that this program can be implemented on "*any* computer device." (Appx27-28 (emphasis added) (quoting Appx90-91).) This "computer device" includes any generic "commonly available micro-processor" connected to one or more generic "input devices" (*e.g.*, a "keyboard" and "mouse"), "output devices" (*e.g.*, a "display" and "printer"), and "memory" devices (*e.g.*, "floppy disk," "hard disk drive," "CD-ROM disk," or "DVD disk"). (*See supra* at 5-6.) The specification thus shows that the inventors' "focus[]" was on an "asserted advance[]" in the type of "uses to which *existing* computer capabilities could be put" and *not* on a "specific improvement . . . in how computers could carry out one of their basic functions." *Elec. Power*, 830 F.3d at 1354 (emphasis added) (citing *Enfish*, 822 F.3d at 1335-36).

The cases cited by Realtime are easily distinguishable. In *Enfish*, for example, the specification explained that the self-referential database structure improved the way computers stored and retrieved data, leading to faster search times, smaller memory requirements, and other tangible improvements in a computer's underlying capabilities. 822 F.3d at 1337-39. Because the claims thus provided a "specific implementation of a solution to a problem in the software arts," they were not directed to an abstract idea at *Alice* step one. *Id.* By contrast, the '810 Patent does not purport to describe any similar improvements in the way computers are able to perform their functions. It does not describe any improved software or hardware

that would enable a computer to perform functions like "detecting" an outgoing or incoming phone call or "generating" a time entry window faster or more efficiently than pre-existing computer systems. Instead, its "plain focus" is on "economic or other tasks"—tracking and recording billable time—"for which a computer is used in its ordinary capacity." *Id.*

In *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018), this Court upheld the eligibility of claims directed to specific improvements in graphical user interfaces. The patents' specification explained that, by contrast to prior art interfaces that required users to drill down through many layers to get to desired data or functionality, the patented user interface displayed information and user commands in a unique, unconventional way that enhanced the speed with which a user could navigate through various views and windows and thereby improved the efficiency of using the electronic device. *Id.* Because the inventors tackled a problem unique to computing devices—making graphical user interfaces easier to navigate—and offered a specific solution, this Court concluded at *Alice* step one that the claims were not directed to an abstract idea. *Id.* Here, by contrast, there is no suggestion in the specification that the primitive user interface of representative claim 29—consisting of a single window (an "individual timekeeper entry box") with a pair of input fields for entry of a "personal code" and "client identifier" and an electronic timer for "contemporaneously track[ing] time"

spent on the client task—makes computers faster or more efficient to use. Instead, it merely employs existing computer technology to allow the user to perform routine timekeeping tasks on a computer screen in lieu of using a paper timesheet.

3. **The Prosecution History Does Not Support Realtime's Contention That the Asserted Claims Are Directed to Non-Abstract Improvements in Technology.**

Realtime suggests that, because the asserted claims were considered novel and non-obvious by the USPTO, this means they are not directed to an abstract idea. (Realtime Br. 37-38.) This argument is meritless. For one, whether a claim is novel and non-obvious is not the same question as whether it describes patent-eligible subject matter. *See, e.g.*, *SAP*, 898 F.3d at 1163 (explaining that it is not "enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art"). "[A] claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (emphasis in original).

Furthermore, a review of the examiner's actual reasons for allowance lends no support to Realtime's suggestion that the asserted claims are directed to a specific technological improvement and not an abstract idea. The examiner specifically discussed only two prior art references: "Goykhman" and "Collado." (Appx188-189.) The examiner stated that Goykhman's system was different from the inventors' because it did not monitor an individual's computer activity based on their

"personal code." (Appx188.) And he distinguished Collado because it required a user to enter information into a digital "timecard" manually instead of the information being extracted "automatically" by the system. (Appx188.) Putting aside whether the examiner's characterization of the invention was even correct,[4] the differences he identified with the prior art do not point to any non-abstract improvements in existing computer technology or timekeeping methods.

For example, it is standard for law-firm and other professionals to be assigned a "personal code" (*e.g.*, an employee number) and to track and record their billable time using this personal code. The examiner's reasons for allowance did not suggest otherwise (and neither does Realtime's brief on appeal). The inventors' computerization of this routine aspect of timekeeping may have been enough (at least in the examiner's eyes) to distinguish their claims from Goykhman's system for purposes of §§ 102 and 103, but it still amounts to an abstract idea for purposes of § 101. *Weisner*, 51 F.4th at 1083. And requiring the computer to enter

---

[4] For example, not all claims in the '810 Patent appear to require that data be "automatically" extracted into the timekeeper entry box. Representative claim 29, for instance, requires "generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier"; by contrast, claim 38 (dependent on claim 29) requires "said individual time keeper entry box [to] include[] said personal code." Thus, whereas claim 38 seems to require the personal code to be pre-populated (*i.e.*, "include[d]") into the appropriate data entry field when the timekeeper box when is generated, the broader claim 29 apparently does not. (*See also* Appx89, 2:41-46 (the specification explaining that "[t]he information included in the fields in the timekeeper entry box" may "either" be "automatically extract[ed]" by the software or "be input by the professional").)

information into a user's digital timesheet "automatically," rather than relying on the user to do it (as was apparently done in Collado), also amounts to mere automation of a routine timekeeping step.

The district court acknowledged that the '810 Patent may "imagine[] 'a new and presumably better method' for the timekeeping of billable tasks." (Appx32 (quoting *Parker v. Flook*, 437 U.S. 584, 594 (1978)).) But it also correctly recognized that, despite the patent's asserted novelty, its claims are still directed to a patent-ineligible abstract idea. (Appx32.) Accordingly, the claims fail at *Alice* step one.

## III. *Alice* Step Two: The Asserted Claims of the '810 Patent Lack an Inventive Concept.

The district court correctly concluded that the asserted claims fail at *Alice* step two. Although Realtime now suggests that the district court erred in its step-two analysis, Realtime has waived those arguments by not raising them below. And even if not waived, Realtime's step-two arguments still fail.

### A. The Asserted Claims Do No More Than Automate Billable Timekeeping Using a Generic Computer.

For a patent claim to "transform" an abstract idea into a patent-eligible application of that idea at *Alice* step two, it must do more than automate a routine practice using a generic computer. Thus, "[s]tating an abstract idea while adding the words 'apply it with a computer'" is not enough to salvage a claim at step two of

*Alice*, either.  573 U.S. at 223.  "[A]fter *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent eligible."  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014).

Here, the asserted claims fail at *Alice* step two because they merely describe, at a high level of generality, the steps that professionals have long used to track and record their billable time ("detecting" new client tasks, "generating" timekeeping records, and "contemporaneously track[ing] time" spent) while "provid[ing] no additional limitation beyond applying [this] abstract idea . . . on a generic computer." *Intellectual Ventures*, 792 F.3d at 1371 (Fed. Cir. 2015).  As the district court put it, the claims "describe a generic timekeeping process facilit[ated] by the mere application of generic computer components"; they "neither 'invoke any assertedly inventive programming,' nor 'require any nonconventional computer, network, or display components, or even a non-conventional and non-generic arrangement of known, conventional pieces.'" (Appx33; Appx34 (quoting *Elec. Power*, 830 F.3d at 1355).)  Having thus considered the claims both "individually and as an ordered combination," the district court rightly recognized that the "claimed sequence of steps does not constitute an 'inventive concept.'" (Appx33 (quoting *Alice*, 573 U.S. at 217).)

It is true that using a computer to assist professionals in keeping track of their time may be more efficient than the traditional pen-and-paper method. However, "[this Court's] precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea" at *Alice* step two. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."). This case is no exception.

Ultimately, Realtime's claims "do nothing more than spell out *what* it means to 'apply [the abstract idea] on a computer,'" *id.* at 1370 (emphasis added), without providing any "technical explanation as to *how* to implement the invention." *TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (same). The claims say nothing about how the computer "detects" the user's commencement of a new task, how it "generates" a time entry window on the user's screen, or how it "contemporaneously tracks time" spent by the user. The claims, in short, contain no "practical assurance that the [claimed] process is more than a drafting effort designed to monopolize the [abstract idea] itself." *Mayo*, 566 U.S. at 77. Therefore, they are patent-ineligible.

**B.** **Realtime's Step-Two Arguments Have Been Waived and, Regardless, Lack Any Merit.**

As the district court pointed out, below Realtime "d[id] not distinctly address" step two of *Alice*, instead arguing only that the asserted claims survived at step one. (Appx32.) The only time Realtime even mentioned step two in its response to RELX's motion to dismiss was in a section discussing the general law of § 101. (Appx255.) However, in the substantive section of the response, Realtime limited its arguments to step one. (*See, e.g.*, Appx254 ("[T]he claimed invention in the '810 Patent is a technological improvement in computer technology and capability, and is not an abstract idea."); Appx257 ("[A] software invention such as alleged in the FAC here that fixes a prior art deficiency is not an abstract idea."); Appx258 ("[T]he claimed invention of the '810 Patent is patentable subject matter under Section 101 and not an abstract idea.").) Even so, the district court carefully considered the asserted claims at step two but, for the reasons discussed above, found them to contain no inventive concept. On appeal, Realtime changes tack—though it still devotes the bulk of its brief to disputing the district court's step-one determination, it now contends for the first time that, if the asserted claims fail at step one, they should survive at step two. (Realtime Br. 49-52.) The Court should reject this contention.

First, Realtime has waived its step-two arguments by failing to clearly raise them below. "[I]t is the general rule . . . that a federal appellate court does not

consider an issue not passed upon below." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).) "No matter how independent an appellate court's review of an issue may be, it is still no more than that—a review." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997). Because Realtime "d[id] not distinctly address" step two of *Alice* before the district court, this Court should disregard any step-two arguments it tries to raise on appeal.

Second, even if not waived, Realtime's step-two arguments are without merit. On appeal, Realtime purports to identify the following "inventive concepts": "(1) [a] front end user interface, i.e., 'an individual timekeeper entry box including an entry of a personal code and second entry for a client identifier,' (2) back end computer processing for automatically 'detecting initiation' of a task, 'generating' timekeeper entry box and 'contemporaneously tracks time associated with said personal code and said client identifier' in real time, (3) on a task-by-task basis, (4) while automatically extracting or accepting data points from each document, email or task, (5) for *in seriatim* tasks or simultaneous multitasking tasking [*sic*]." (Realtime Br. 50.) Some of these "concepts"—*i.e.*, "automatically extracting" data into the time entry window and tracking time "simultaneous[ly]" for multiple tasks—are not even found in representative claim 29 and appear only in a handful of the asserted dependent claims. (*See, e.g.*, Appx95, 14:1-2 (claim 38 requiring "said timekeeper

entry box [to] include[] said personal code" upon generation); Appx94, 12:62-65 (claim 34 requiring "simultaneously tracking time for said individual on said at least one telephone call and at least one of a document and a client-service").) Regardless, each "concept" merely (a) restates an aspect of the traditional pen-and-paper timekeeping process practiced by many professionals and (b) layers generic computer functionality on top of it.

For example, the claimed invention's "front end user interface" (the first of the supposedly "inventive concepts" touted by Realtime) is a computerized version of the traditional paper timesheet for recording standard information like the billing professional's and the client's names. The invention's "back end computer processing" ("inventive concept" number two) *on its face* does nothing more than "automat[e]" routine timekeeping functions than traditionally have been performed by humans manually or mentally, such as "detecting" a new task, tracking the time spent on the task, and filling out a timesheet. The invention's capacity to track time on a "task-by-task" basis ("inventive concept" number three) simply replicates how many professionals have always tracked their time using manual methods. The idea of "automatically extracting or accepting data" into the timesheet ("inventive concept" number four) merely requires the data to be entered either by the individual—in which case it is not even qualitatively different from the traditional

pen-and-paper method—or by the computer—in which case it simply automates the traditional method.

Finally, the idea of tracking time for multiple open tasks simultaneously ("inventive concept" number five) is not enough to save those claims that embody it, either. As the district court explained, it also amounts to nothing more than a "computerized means of the conventional, quotidian labor of keeping a record of the time spent on tasks." (Appx31.) Indeed, there is no reason "why such timekeeping could not be performed by a human being (or two) using his or her mind or basic tools such as a pen, paper, and basic timer or clock." (Appx31.)

Realtime suggests that the USPTO's decision to grant the '810 Patent raises a plausible factual basis for inferring that the subject matter of the asserted claims was not "well understood, routine and conventional" and means the district court erred when it concluded otherwise. (Realtime Br. 51-52.) But Realtime does not even attempt to tie any of the so-called "inventive concepts" it identifies in its brief to the examiner's specific reasons for allowance. More fundamentally, Realtime again wrongly conflates the requirements for patent eligibility with those for novelty and anticipation.

Thus, step two of the eligibility inquiry does not turn on whether "the entire claim as a whole was 'well-understood, routine [and] conventional' to a skilled artisan (*i.e.*, whether it lacks novelty)." *Chamberlain Grp. v. Techtronic Indus. Co.*,

935 F.3d 1341, 1348-49 (Fed. Cir. 2019). The question, then, is not whether it was well-understood, routine, and conventional to track and record billable time using a computer. Instead, it is whether "the claim limitations *other than the invention's use of the ineligible concept to which it was directed*"—here, the abstract idea of timekeeping for compensation—"were well-understood, routine and conventional." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (emphasis added) (quoting *Alice*, 573 U.S. at 225); *see also Chamberlain*, 935 F.3d at 1348-49. And here, the district court's finding that the asserted claims implement their abstract idea using only conventional computer technology is unassailable in view of the claims' language as well as the inventors' explicit admissions in the specification. (*See, e.g.*, Appx33 (quoting the specification's admission that the invention can be implemented on "[a]ny generic computer" with a processor, RAM, ROM, clock, and input/output devices).)

Other than its misguided reliance on the USPTO's reasons for allowance, Realtime offers no support for its argument that the asserted claims contain an inventive concept. Ultimately, it shows no error in the district court's analysis at either step one or step two of *Alice*. Because the asserted claims are directed to an abstract idea and lack any additional inventive elements, they are patent-ineligible under § 101.

## IV. The District Court Properly Treated Claim 29 as Representative.

Realtime complains that the district court wrongly used claim 29 as representative for purposes of its analysis. (Realtime Br. 53.) However, this complaint comes too late. Below, RELX expressly argued in its motion to dismiss that claim 29 is representative, explaining that the other asserted claims add no meaningful limitations. (Appx218-19.) Realtime did not challenge this point in its opposition. (*See generally* Appx254-60.) The district court noted Realtime's silence in its decision and further noted that, based on its own independent review of all asserted claims, it agreed with RELX that claim 29 is sufficiently representative. (Appx13-14.) The other claims, the court explained, "d[id] not 'differ in any manner that is material to the patent-eligibility inquiry.'" (Appx14 (quoting *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016)).) Therefore, it was proper for the court to treat claim 29 as representative.

Realtime's appeal brief suggests that its opposition to RELX's motion to dismiss separately "addressed the inventive concepts" of dependent claims 32-34, which require tracking time "simultaneously" for multiple open tasks. (Realtime Br. 53.) In reality, as the district court pointed out, Realtime "d[id] not distinctly address" step two of *Alice* for *any* asserted claim, including even representative claim 29. (Appx32.) The only reference to claims 32-34 in Realtime's district court brief was a passing statement that "simultaneous multitasking for a single client or

multiple clients could not be performed by a single individual or by numerous individuals in a professional workplace environment in the absence of the claimed invention." (Appx260.) This single conclusory statement, however, does not amount to a "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*, 881 F.3d at 1365. And, regardless, the district court specifically addressed this "argument" in its decision, explaining that, contrary to Realtime's bald assertion, there is no reason why a "human being (or two)" could not track time for multiple open tasks simultaneously using "his or her mind" or a "pen, paper, and basic timer or clock." (Appx31; *see also supra* at 38.) Realtime points to no error in the district court's analysis.

On appeal, Realtime also suggests for the first time that there are "inventive concepts" present in additional dependent claims: claims 3 and 20, requiring "receiving" certain information (for example, a "document type" or "author identifier") "for entry within said individual timekeeper box"; claims 7 and 23, requiring "displaying" certain information (for example, a "start time," "end time," and "total time") in the timekeeper entry box; claim 6, requiring "integrating" information obtained from the timekeeper entry box into an "accounting and billing system"; and claims 8 and 24, requiring "displaying a running clock" in the timekeeper entry box. (Realtime Br. 53.) Because Realtime did not argue for the

distinctiveness of these dependent claims below, it has waived the argument. *Golden Bridge*, 527 F.3d at 1322. In any case, other than its say-so, Realtime offers nothing to support its assertion that the additional features found in claims 3, 6-8, 20, 23, and 24 qualify as "inventive concepts." And, in fact, these features are not at all inventive; at most, they layer additional, purely generic computer functionality onto the same abstract idea of timekeeping for compensation. The district court made no error in holding all claims invalid.

## CONCLUSION

This Court should affirm the district court's judgment.

Dated: September 8, 2023

Respectfully submitted,

*/s/ Oleg Khariton*

Oleg Khariton
John D. Luken
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tele: 513.977.8200
oleg.khariton@dinsmore.com
john.luken@dinsmore.com
*Attorneys for Appellee RELX, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(g)(1), I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Circuit Rule 32(a).

1.  The brief complies with the type-volume limitation of Federal Circuit Rule 32(a) because it contains 9,867 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2.  The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  September 8, 2023                  */s/ Oleg Khariton*
                                       Oleg Khariton


## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit using the Court's CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

Dated:  September 8, 2023                  */s/ Oleg Khariton*
                                       Oleg Khariton